**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APOLLO GROUP, INC. SECURITIES LITIGATION** | ) |
| | ) |
| | ) |
| | ) |
| | ) 06-MC-0558 (CKK) |
| | ) |
| | ) |
| | ) |
| **This Document Relates To: Subpoena Action** | ) |
| **(D. Ariz., Case No. CV-04-2147-PHX-JAT)** | ) |
| | ) |

## RESPONDENT'S REPLY AND MOTION TO SUPPLEMENT CROSS-MOTION TO QUASH

_____Respondent, the Department of Education (DOE /Department), hereby requests

permission to supplement its Motion to Quash the Petitioner's subpoena for documents directed

to the DOE with an additional argument pertaining to the standard of review for subpoena

actions as they apply to federal agencies. Plaintiff consents to the filing of this motion. In

support of this motion, respondent respectfully refers the Court to the attached Memorandum of

Points and Authorities.

Respectfully Submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APOLLO GROUP, INC. SECURITIES LITIGATION**<br><br><br><br><br><br><br><br>**This Document Relates To: Subpoena Action (D. Ariz., Case No. CV-04-2147-PHX-JAT)** | )<br>)<br>)<br>)<br>) 06-MC-0558 (CKK)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
REPLY AND MOTION TO SUPPLEMENT CROSS-MOTION TO QUASH**

## INTRODUCTION

The subpoenaed records involve documents that the Department withheld as a result of a previous Freedom of Information Act (FOIA), 5 U.S.C. § 552, request.  Apollo's FOIA request sent via e-mail and dated October 25, 2004, was received by the Department of Education (DOE/Education) on October 26, 2004.  The Request was for information that related to the Department's Program Review of the Apollo Group Inc., and its subsidiary, the University of Phoenix's (Apollo/University), compliance with section 487(a)(20) of Title IV of the Higher Education Act of 1965, as amended (HEA), 20 U.S.C. § 1094 (a)(20), which prohibits the payment of any commission, bonus, or other incentive based directly or indirectly on success in securing student enrollments.  Specifically, Apollo requested "full and complete access to all underlying work papers associated with, related to, or otherwise regarding, the Interim Report, including, but not limited to, any and all:

- Draft versions of the Interim report;

- Internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees);

- All notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

- Analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by and the salaries and salary adjustments paid to, Apollo enrollment counselors, including, but not limited to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well as all work papers generated during and documents used or relied upon in performing such analyses;

- Correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any *qui tam* relators that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connection with the preparation, revision, review or defense of such interim Report;

- Copies of all Departmental internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was used, relied upon, or transmitted in connection with the Interim Report, the Department's examination leading up to the Interim report, or the sanctions demanded during the negotiation process; [and]

- Copies of any delegation of authority that authorized or purported to authorize Ms. Donna Wittman to issue the Interim Report."

See Exhibit 1. The Department's response was comprised of five transmissions in all- four

interim responses and one final response.[1] See Respondent's Exhibits 1, 2, 3, 4, and 5.

---

[1] The first interim response was dated December 29, 2004 and 45 pages were released. It also provided requested information on Regulatory and Department policy guidance; the second interim response was dated February 18, 2005 in which 243 pages were released in whole or part; the third interim release was dated February 28, 2005, releasing 222 pages of records in whole or in part; the fourth interim release was dated April 8, 2005 where an indexed CD producing 2874 pages of records in whole or in part were released; and the final release was made on May 3, 2005 in which 1868 pages of the requested documents were released in whole or in part. At that time, Apollo was also advised of its right to file an administrative appeal. See Exhibits 1, 2, 3, 4, and 5. On June 15, 2005, Apollo appealed the Department's decision. Thereafter, on October 31, 2005, the Department issued its decision regarding Apollo's appeal of the Department's May 3, 2005 final decision. Exhibit 6 .

2

In its October 31, 2005, appeal decision, the Department clearly articulated the "records to which access was denied in whole or in part pursuant to Exemption 5." See Exhibit 6, p. 7-9. Those documents were:

- Communications between attorneys for the qui tam relators and Department lawyers (and their clients) regarding the lawsuit, and sharing with Department lawyers information from informants for use in both the regulatory enforcement action and the qui tam case [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges];

- Documents containing legal analysis and advice among Department, DOJ, and qui tam attorneys, and related notes, regarding and antecedent to the decision on whether to intervene in the qui tam suit;

- Documents containing legal analysis and advice among Department lawyers , and related notes, regarding and antecedent to the decision on whether to intervene in the qui tam suit;

- Drafts of the decision memorandum and letters prepared and/or edited by the Department and DOJ lawyers regarding and antecedent to the decisions on whether to intervene in the qui tam suit and/or to investigate allegations as an administrative enforcement matter.

II.    Records related to Deliberations, Legal Advice, and Legal Preparation During the Investigation and Antecedent to the Issuance of the Report on February 5, 2004:

- Investigatory Team (i.e., Federal Student Aid (FSA) program staff and Office of General Counsel (OGC) lawyers) communications and notes

3

concerning investigation strategy (e.g., questions as to who to interview, when to interview, order and location of interviews, what kinds of questions to ask, and other general strategy questions);

• Investigatory Team communications and notes concerning witness statements (i.e., compilations of documents provided by witnesses, summaries of witness testimony, and other documents and notes related to the witness statements);

• Drafts of (1) interview questionnaire, (2) the Report, and (3) program and legal advice memoranda concerning issuance of the Report;

• Communications between Department lawyers and senior officers regarding the analysis in the Report ) e.g., discussions and legal advise regarding what was a violation of the regulation; what information justified a finding of violation; and whether the Department, as a policy matter, should seek to enforce this regulation at this time and in this manner)

• Communications from attorneys for the qui tam relators sharing advice and information from informants with Department lawyers;

III.    Records related to deliberations, legal advice, and legal preparation antecedent to the September 7, 2004 settlement agreement between the Department and Apollo:

• Analysis created Donna Wittman to identify percentages and frequencies of violations of the regulation, considered by the Department in determining the number of violations that had occurred, the seriousness of said violations and in projecting the dollar amount of fines correlating to

4

> the number of violations for the purpose of calculating the amount of the
> final settlement;

- Communications and notes among FSA staff and department lawyers regarding information submitted by Apollo to rebut the findings in the Report, regarding policy decisions concerning whether to engage in settlement negotiations and on what terms to settle;

- Drafts of charts and presentations used to aid in settlement regarding the Department's calculations of the number of violations, potential amount of fines, and other supporting evidence of violations, prepared and edited by FSA staff and Department lawyers;

- Drafts of settlement agreement;

The Department withheld the foregoing documents pursuant to the deliberative process privilege, the attorney work-product privilege and the attorney-client privilege. See Exhibit 6, p. 7-9. Thereafter, Apollo was silent until the summer of 2006.

On June 5, 2006, Apollo sent the Department its first subpoena. Upon receipt of Apollo's subpoena, the Department examined Apollo's request as a demand made on Department officers, agents or employees for the production of records and determined that the request was subject to the Department's Touhy regulations, which are located at 34 C.F.R Part 8.[2] Apollo was informed by the Department that the subpoena did not comply with the Department's Touhy regulations. Exhibit 7. The Department explicitly noted that where a

---

[2] The regulation is so named after Touhy v. Ragan, 340 U.S. 642 (1951), where the Court confirmed the validity of government regulations advising Agency officials how to make centralized decisions when responding to third party subpoenas.

demand for records does not comport with the requirements of 34 CFR Part 8, the Department considers it to be a request for access to Department records made under FOIA.  43 CFR § 8.5(a)(2).  It was noted that Apollo had previously sought access under FOIA and that there was no requirement to reprocess the subpoena under the FOIA.  Id.  Subsequently, Apollo sent an amended subpoena to the Department dated July 3, 2006.  See Exhibit 8.  That request included a request for three (3) categories of documents but again failed to comply with the Department's Touhy regulations.  Id.  Those three categories were:

> (1) Unredacted versions of any redacted documents the Department produced pursuant to the FOIA request;
>
> (2) The 4,083 pages of documents that the Department withheld from its FOIA production; and
>
> (3) Various documents pertaining to the Program Review, the Report, or the qui tam action, to the extent they are not covered by categories 1 and 2.

Id.  In its July 13, 2006, response, the Department made a number of points including that "while the Department considers a demand for records that does not comport with the requirements of 34 C.F.R Part 8 to be a request for access to Department records made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (see 34 C.F.R § 8.5 (a)(2)), it is our position, inasmuch as the Department has previously responded to all aspects of your demand for production of documents, that 34 C.F.R Part 8 does not require us to reprocess your subpoena as a request made under FOIA."  Id., at p. 3.  The Department had over a period of seven months, already released approximately 5,252 pages of documents in whole or in part and had determined that other responsive documents were exempt from public disclosure in whole or in part under the

applicable FOIA exemptions.  The Department thoroughly explained and asserted such

exemptions in its October 31, 2005 final determination letter.  <u>See</u> Exhibit 6.  The Department

has already responded to Apollo's request for records.  Apollo should not be allowed to

circumvent the statutory scheme created by Congress, when it enacted the FOIA, for protecting

privileged and otherwise sensitive government records, nor should the Department be compelled

to act contrary to its stated interest in protecting the human and financial resources of the United

States.  <u>See</u> Exhibits 7 and 8.

<u>**ARGUMENT**</u>

<u>**THE TOUHY APPLICATION**</u>

On October 31, 2005, the Department issued a detailed final agency decision to Apollo,

advising, <u>inter alia</u>, of the right to seek judicial review of the decision.  For reasons unknown to

the Department, Apollo declined for over 15 months to exercise its judicial remedy.  And even

now, Apollo seeks to bypass the FOIA and <u>Touhy</u> - the mechanisms governing public disclosure

of federal records in response to third party requests - by asking this Court to compel, pursuant to

Fed. R. Civ. P. 45, whatever was not disclosed under the FOIA release.

Although, the Department is not asserting that it is not a "person" under Rule 45, it does

maintain that Apollo's insistence that Rule 45 may be used to bypass established mechanisms

such as the Department's <u>Touhy</u> regulations is misplaced.  <u>Yousef v. Samantar</u>, 451 F.3d 248,

257 (D.C. Cir. 2006).[3]  On the contrary, courts have held that <u>Touhy</u> is the means through which

---

[3]  In <u>Yousuf v. Samantar</u>, 451 F.3d 248, 257 (D.C. Cir. 2006), it was determined that a
federal agency was a person subject to a subpoena under Rule 45.  In so doing, the court
reasoned:

We do know, however, that the Supreme Court in <u>Touhy</u>, assumed a federal

a federal agency should respond to a subpoena.  As such, the Department's regulations require

that the Department process the request for documents under the FOIA when the requester fails

to comply with the Department's <u>Touhy</u> regulations.  34 C.F.R § 8.5(a)(2).

Just four months ago, Judge Collyer issued a decision on facts virtually identical to those

presented here.  Specifically, in <u>Santini v. Herman</u>, 456 F. Supp. 2d 69 (D.D.C. October 17,

2006), a third-party subpoena was served on the Office of the United States Attorney for the

District of Columbia.  As a jurisdictional matter, Judge Collyer held:

> Moreover, a court cannot enforce a subpoena against a federal agency employee when
> the agency has enacted valid *Touhy* regulations. *Id.* (citing *Touhy*, 340 U.S. at 467-69).
> When an agency has enacted *Touhy* regulations, the litigant must proceed under the
> Administrative Procedure Act, 5 U.S.C. § § 701 *et seq*. ("APA"), and the federal court
> will review any agency decision not to permit its employee to testify under an arbitrary
> and capricious standard. *Houston Business Journal*, 86 F.3d at 1212 n. 4; *accord Ho v.
> United States*, 374 F. Supp. 2d 82, 83 (D.D.C. 2005), *appeal dismissed*, No. 05-5319,
> 2006 WL 1675318 (D.C. Cir. June 12, 2006). Whether a plaintiff seeks testimony or the
> production of documents from an agency, she must comply with the agency's *Touhy*
> regulations. *Yousuf v. Samantar*, 2005 U.S. Dist. LEXIS 8488, No. 05-ms-110, 2005 WL
> 1523385, n. 9 (D.D.C. May 3, 2005), *rev'd and remanded on other grounds*, 371 U.S.
> App. D.C. 329, 451 F.3d 248 (D.C. Cir. 2006).

456 F. Supp. 2d 69, 70-71.

As a persuasive roadmap to how the present matter should be handled, <u>Santini</u> first

instructs that Apollo's Motion to Compel must be quashed because, while the Department is a

person for the purposes of Rule 45, having enacted <u>Touhy</u> regulations, Apollo's subpoena can be

processed only in accordance with those regulations.  Secondly, <u>Santini</u> instructs that the only

---

> agency could be subject to a third-party subpoena duces tecum, for otherwise the
> agency would not need to promulgate regulations for centralizing its response to
> such a subpoena.

451 F.3d at 257.

review of the Department's decision not to produce the requested records is under the APA:

> The Department of Justice, of which the U.S. Attorney's Office is a constituent part, has published *Touhy* regulations at 28 C.F.R. § § 16.21 *et seq*. Thus, Ms. Santini must proceed under the APA and the court will review any agency decision not to permit employee testimony under the arbitrary and capricious standard.

Id at 71, 72. Significantly, such review cannot obtain in the present action. Specifically, Judge

Collyer held that because APA review obtains only incident to a properly filed *complaint,* the

District Court lacks jurisdiction to conduct an APA review in the context of cross motions to

quash and to compel – and that the action could not be converted into such a proceeding, even

for a *pro se* litigant:

> Instructed by the motion to quash her subpoena, Ms. Santini attempts to cure any defects in her pleadings by filing a Motion to Compel Production of Documents, in asserted reliance on the APA, and a Response to Motion to Quash Subpoena framed as an appeal of the denial of her request for the same documents under FOIA and the Privacy Act, 5 U.S.C. § 552(a). The Court is unable to oblige. This matter was not initiated by a complaint which could be amended to advance new or different causes of action. Like other federal litigation, review of a FOIA case requires in the first instance that a complaint be filed. 5 U.S.C. § 552(a)(4)(B). Ms. Santini has not filed a complaint under either FOIA, the Privacy Act, or the APA, and she cannot bootstrap such a lawsuit into this proceeding.

Id at 72. The roadmap could not be clearer: Apollo cannot obtain review of the Department's

declination to provide records under its Touhy regulations in the present proceeding. Rather, it

may do so only pursuant to a complaint filed under the APA.

This Court has held similarly in Aloha Care, Inc., v. Haw. Dep't of Human Services,

2005 U.S. Dist LEXIS 41202 (D.D.C. 2005). Before the Court in AlohaCare were three

subpoenas duces tecum, filed, pursuant to Rule 45(e), by AlohaCare, Inc., seeking information

from the United States Department of Health and Human Services (HHS). The Court held that:

> When an agency is not a party to an action, its choice of whether or not to comply

9

with a third-party subpoena is essentially a policy decision about the best use of the agency's resources. In the context of an agency's response to a third-party subpoena, the proper method for review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act. . .

Id., at *22-23. See also, Puerto Rico v. USA, 2006 U.S. Dist. LEXIS 70236, *37-38

(D.P.R. 2006).

Additionally, Apollo has mischaracterized the Department's actions in responding to its subpoena for documents. At one point, Apollo quotes a Department letter making available the program review report - and then tries to argue that the interim program review report should be considered as a predecisional document because, according to Apollo, it was not a final report[4] and; therefore, the Department is trying to have it both ways. Apollo is mis-informed. First, there is no such thing as an "interim" program review report. The Department released the Program Review to Apollo but the deliberations and confidential information leading up to it are protected.

Moreover, as to Apollo's assertion that a privilege log was not provided under Rule 45, in this case, an index was voluntarily provided to Apollo when the Department responded to its FOIA request. This index was provided on a CD and describes the documents released and whether each document released was withheld in full or in part. In addition, the electronic documents on the CD identify the applicable FOIA exemption that provided the basis for withholding. Furthermore, the Department's 17 page appeal determination letter discusses in detail the applicable privileges and its justifications for asserting the Exemption 5 privileges with

---

[4] This is a misnomer. The Department does not issue "interim" program review reports. See Declaration of Jennifer Woodward attached to Respondent's Opposition and Motion to Quash and Exhibit 6, n.1.

respect to each category of documents withheld.  Together this information has provided Apollo

with the requisite amount of information regarding the types of documents and exemptions

claimed to pursue its appropriate judicial remedy.

### CONCLUSION

Because the Department appropriately processed the subpoena as a FOIA request under

its Touhy regulations, Apollo's course of action to challenge this final agency action is under the

Administrative Procedure Act.  Apollo has a meaningful and adequate means of vindicating its

rights, through the APA.  Moreover, as a jurisdictional matter, Apollo cannot obtain APA review

in the present proceeding before this Court.  Therefore, the Court should deny Apollo's motion

to compel the production of documents and grant the Department's Motion to Quash.


Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/

_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
 (202) 305-1334

11

**Exhibit No. 1**
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



## UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE CHIEF INFORMATION OFFICER

Andrew S. Boutros                                                                December 29, 2004
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306

RE: FOIA Request No. 05-00093-F

Dear Mr. Boutros:

This is an interim response to Douglas R. Cox's letter, sent via e-mail, dated October 25, 2004,
requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The
request was received in this office on October 26, 2004 and was forwarded to the following
offices within the Department to search for documents that may be responsive to your request:
Office of Federal Student Aid (FSA) and Office of the General Counsel (OGC). In the letter,
Mr. Cox asked for information relating to the Department's Interim Review of the University of
Phoenix (UOP).

Specifically, Mr. Cox requested: "full and complete access to all underlying work papers
associated with, relating to, or otherwise regarding, the Interim Report, including, but not limited
to, any and all:

> Draft versions of the Interim Report;

> Internal notes (including but not limited to, all notes from interviews conducted with
  any and all current and former Apollo employees);

> All notes and other documents relating to the debriefing provided to Apollo at the
  conclusion of the Department's field work in August 2003;

> Analyses, statistical or otherwise, performed by or on behalf of the Department
  involving the documentation and/or records Apollo produced to the Department
  relating to the number of enrollments achieved by, and the salaries and salary
  adjustments paid to, Apollo enrollment counselors, including, but not limited to,
  analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions
  with KPMG in August 2004 as well as all work papers generated during and
  documents used or relied upon in performing such analyses; and

> Correspondence the Department has had with outside parties, including, but not
> limited to, correspondence between the Department and any *qui tam* relators that have
> filed suit against Apollo, and correspondence relating to the solicitation of witnesses
> or experts in connection with the preparation, revision, review or defense of such
> Interim Report."

Mr. Cox also requested the following:

> "Copies of all Department internal guidance, policy memoranda, or other
> information, whether generic or specific to Apollo, that was used, relied upon, or
> transmitted in connection with the Interim Report, the Department's examination
> leading up to the Interim Report, or the sanctions demanded during the negotiation
> process; [and]

> Copies of any delegation of authority that authorized or purported to authorize Ms.
> Donna Wittman to issue the Interim Report."

Enclosed are 45 pages of documents responsive to portions of this request, as described below.
These documents fulfill or partially fulfill the fourth, sixth and seventh bullet point of Mr. Cox's
initial request. Please see the attached inventory for a list of the responsive documents provided
in this interim response.

> Thirty-nine (39) pages of documents are responsive to the "analyses, statistical or
> otherwise, performed by or on behalf of the Department involving the documentation
> and/or records Apollo produced to the Department relating to the number of
> enrollments achieved by, and the salaries and salary adjustments paid to, Apollo
> enrollment counselors, including, but not limited to, analysis described by Ms. Donna
> Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004"
> portion of the request (fourth bullet point).

> Please note that the Department is continuing to process the specific part of this
> specific request that seeks "all work papers generated during and documents used or
> relied upon in performing such analyses."

> The "copies of all Department internal guidance, policy memoranda, or other
> information, whether generic or specific to Apollo, that was used, relied upon, or
> transmitted in connection with the Interim Report, the Department's examination
> leading up to the Interim Report, or the sanctions demanded during the negotiation
> process" portion of the request (sixth bullet point) can be fulfilled as follows:

>> a. The Department has concluded that FSA's Program Review Guide responds
>> to this portion of your request. You may access FSA's Program Review
>> Guide at the following web address:
>> http://www.ifap.ed.gov/IFAPWebApp/currentIposGuidanceTitle2Pag.jsp?p1=
>> Program+Review+Guide&p2=c [Please note: an e-mail page citing this link
>> is also enclosed as a responsive document to this Interim Response];

    b.  In addition, the February 5, 2004 Program Review Report to the University of Phoenix cites to the relevant regulatory authority(ies) relied upon by the Department. Throughout the Program Review Report the Department specifically cites to 34 C.F.R. § 668.14(b)(22), among other regulatory and statutory provisions. Your client already possesses the February 5, 2004 Program Review Report, and the regulatory citations notes within the Program Review Report are publicly available. However, for your convenience, we have provided you with one of several web sites from which this information can be retrieved:
http://www.dtae.org/adminservices/WAISDocumentRetrieval.htm.

    c.  Enclosed find an additional 2 pages of documents responsive to this portion of your request [in addition to the 1 page noted in a].

➢  Lastly, three (3) pages of documents are responsive to the "copies of any delegation of authority that authorized or purported to authorize Ms. Donna Wittman to issue the Interim Report" portion of the request (seventh bullet point).

As we agreed during our conference call of November 5, 2004, we will continue processing your request and provide you with additional information as it becomes available from the respective program offices. Consequently, your FOIA request case file remains open. You will have the right to appeal this decision by writing within 30 days after this FOIA case closes. See 34 CFR § 5.81. It will not close until the Department provides you with a response regarding all outstanding responsive documents.

As of December 10, you have incurred costs totaling $522.08 associated with processing this Interim Response. We continue our research and will tabulate the costs on a monthly basis as we produce responsive records and process this request.

If you have any questions, please feel free to contact me at (202) 245-6651 or OCIO FOIA@ed.gov.

Sincerely,

Jeanne Van Vlandren
Director, Regulatory Information Management Services
Freedom of Information Act Officer

Enclosures

Interim Log #1

| Folder Name | Description | No. of Pages | |
|---|---|---|---|
| Print-out of San Francisco Team's website re Authority to Issue Program Review Reports [Cox] | 3 pages of material responsive to: "copies of any delegation of Authority that authorized Ms. Donna Whitman to issue the Interim Report." | 3 | |
| Analyses regarding Apollo enrollments - salaries paid to enrollment counselors [Cox] | 39 pages of documents responsive to the "analysis, statistical, or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselors, including, but not limited to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004." | 39 | |
| Website link for FSA's Program Review Guide and 10-30-02 Memo from Bill Hansen to Terri Shaw [Cox] | 3 pages of material responsive to: "copies of all Departmental internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was used, relied upon, or transmitted in connection with the Interim Report, the Department's examination leading up to the Interim Report, or sanctions demanded during the negotiation process". The Department concluded that FSA's Program Review Guide responds to this portion of the request (accessible via the web). Also Feb. 5, 2004 Program Review Report cites relevant regulatory authority. | 3 | |

.

**Exhibit No. 2**
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE CHIEF INFORMATION OFFICER

Andrew S. Boutros                                                    February 18, 2005
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306

RE: FOIA Request No. 05-00093-F

Dear Mr. Boutros:

This is second interim response to Douglas R. Cox's letter, sent via a e-mail, dated October 25, 2004, requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The request was received in this office on October 26, 2004 and was forwarded to the following offices within the Department to search for documents that may be responsive to your request: Office of Federal Student Aid (FSA) and Office of the General Counsel (OGC). In the letter, Mr. Cox asked for information relating to the Department's Interim Review of the University of Phoenix (UOP).

Specifically, Mr. Cox requested: "full and complete access to all underlying work papers associated with, relating to, or otherwise regarding, the Interim Report, including, but not limited to, any and all:

  ➤  Draft versions of the Interim Report;

  ➤  Internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees);

  ➤  All notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

  ➤  Analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselor's including, but not limit to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well as all work papers generated during and documents used or relied upon in performing such analyses; and

  ➤  Correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any qui tam relaters that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connection with the preparation, revision, review or defense of such Interim Report."

Mr. Cox also requested the following:

  ➤  "Copies of all Department internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was used, relied upon, or transmitted in connection with the Interim Report, the Department's examination leading up to the Interim Report, or the sanctions demanded during the negotiation process; [and]

Page – 2 Gibson, Dunn & Crutcher
05-00093-F

February 18, 2005

> Copies of any delegation of authority that authorized or purported to authorize Ms. Donna Wittman to issue the Interim Report."

On December 29, 2004, we sent you an interim response with 45 pages responsive to portions of the request.

Enclosed are 243 pages of documents responsive to portions of this request as described below.

> Program Participation Agreements (PPA)
> Correspondence and documents related to UOP

However, certain information has been withheld according to the FOIA exemptions specified below:

a. Applicant's assigned D-U-N-S number because the Department has concluded that this information is exempt from disclosure under the FOIA, 5 U.S.C. § 552(b)(2). This provision exempts from disclosure predominantly internal matters of a substantial nature, the disclosure of which would risk the circumvention of a statute or Department regulation

b. Personal information on individuals has been withheld under exemption (b)(6) of the FOIA, 5 U.S.C. § 552(b)(6) and Departmental regulation 34 CFR § 5.71(a). Disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.

As we agreed during our conference call of November 5, 2004, we will continue processing your request and provide you with additional information as it becomes available from the respective program offices. Consequently, your FOIA request case file remains open. You will have the right to appeal this decision by writing within 30 days after this FOIA case closes. See 34 CFR § 5.81. It will not close until the Department provides you with a response regarding all outstanding responsive documents.

We will continue our research and will tabulate the costs on a monthly basis as we produce responsive records and process this request.

If you have any questions, please contact the FOIA Office at 202-245-6651 or OCIO_FOIA@ed.gov

Sincerely,

Jeanne Van Vlandren
Director, Regulatory Information Management Services
Freedom of Information Act Officer

Enclosures

FOIA 05-00093-F

Second Interim Response
February 18, 2005

| | | |
|---|---|---|
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Appendix A: Timeline for Student | Pages 1 – 3 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Appendix B: Students Completed the Financial Aid paperwork electronically throught the Financial Aid Web (11/1/03) | Pages 4 -10 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Appendix C: Apollo's Corporation Accounting on when the funds were uploaded from ELM's website (1/23/04) | Pages 1 - 19 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Documentation that shows when the access funds check was requested by Apollo Financial Services (1/29/04) | Page 20 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Documentation from Apollo's Corporation Accounting indicating when the initial excess funds check was printed and mailed to student (1/30/04) | Pages 21 - 23 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Documentation from Apollo's Corporation Accounting indicating the wire transfer directly in the student's personal bank account (2/17/04) | Pages 24 - 29 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Student's account History (Oracle Financials) indicating when disbursements were released on to her account and when the access funds check was requested. | Pages 30 -31 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Appendix D: University of Phoenix Disbursement Policies | Pages 32 - 48 |
| OPE ID #02098800 other paper work | Correspondence and Documents related to UOP: Checks to Students "Job Aid" from ACS Client Centered Services: Learning Objectives<br>Project Overview<br>Timeline<br>Receipts Report<br>Accessing the electronic flat file for Receipts Report<br>Opening an ACS help tickets<br>Receipt calculation View<br>Requesting Check Stop Payments<br>(11/4/03) | Pages 49 - 70 |
| | | |
| | | |
| | | |
| | | |

**Exhibit No. 3**
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF THE CHIEF INFORMATION OFFICER

Andrew S. Boutros                                                    February 28, 2005
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306

RE: FOIA Request No. 05-00093-F

Dear Mr. Boutros:

This is third interim response to Douglas R. Cox's letter, sent via a e-mail, dated October 25, 2004, requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The request was received in this office on October 26, 2004 and was forwarded to the following offices within the Department to search for documents that may be responsive to your request: Office of Federal Student Aid (FSA) and Office of the General Counsel (OGC). In the letter, Mr. Cox asked for information relating to the Department's Interim Review of the University of Phoenix (UOP).

Specifically, Mr. Cox requested: "full and complete access to all underlying work papers associated with, relating to, or otherwise regarding, the Interim Report, including, but not limited to, any and all:

- ➢ Draft versions of the Interim Report;

- ➢ Internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees);

- ➢ All notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

- ➢ Analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselor's including, but not limit to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well as all work papers generated during and documents used or relied upon in performing such analyses; and

- ➢ Correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any *qui tam* relaters that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connection with the preparation, revision, review or defense of such Interim Report."

Mr. Cox also requested the following:

- ➢ "Copies of all Department internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was used, relied upon, or transmitted in connection with the Interim Report, the Department's examination leading up to the Interim Report, or the sanctions demanded during the negotiation process; [and]

Page – 2 Gibson, Dunn & Crutcher                                    February 28, 2005
05-00093-F

> Copies of any delegation of authority that authorized or purported to authorize Ms. Donna
> Wittman to issue the Interim Report."

On December 29, 2004, we sent you an interim response with 45 pages responsive to portions of the
request.

On February 18, 2005, we sent you second interim response with 234 pages responsive to portions of the
request.

Enclosed are 222 pages of documents responsive to portions of this request as described below.

> Student Complaints

However, certain information has been withheld according to the FOIA exemptions specified below:

a. Personal information on individuals has been withheld under exemption (b)(6) of the FOIA, 5
   U.S.C. § 552(b)(6) and Departmental regulation 34 CFR § 5.71(a). Disclosure of this information
   would constitute a clearly unwarranted invasion of personal privacy.

As we agreed during our conference call of November 5, 2004, we will continue processing your request and
provide you with additional information as it becomes available from the respective program offices.
Consequently, your FOIA request case file remains open. You will have the right to appeal this decision by
writing within 30 days after this FOIA case closes. See 34 CFR § 5.81. It will not close until the Department
provides you with a response regarding all outstanding responsive documents.

We will continue our research and will tabulate the costs on a monthly basis as we produce responsive records
and process this request.

If you have any questions, please contact the FOIA Office at 202-245-6651 or **OCIO_FOIA@ed.gov**

Sincerely,

*Angela Arrington for*

Jeanne Van Vlandren
Director, Regulatory Information Management Services
Freedom of Information Act Officer

Enclosures

FOIA 05-00093-F

*Third Interim Responce*
*February 28, 2005*

| Folder Name | Description | No. of Pages |
|---|---|---|
| Student Complaints | Student Complaints | 222 |

# Exhibit No. 4
## IN RE APOLLO GROUP, INC
## CIVIL NO. 06-MC-0558 (CKK)



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF THE CHIEF INFORMATION OFFICER

Mr. Douglas Cox                                                      April 8, 2005
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306

Re: <u>FOIA Request No. 05-00093-F</u>

Dear Mr. Cox:

This is a fourth interim response to your letter, sent via e-mail, dated October 25, 2004, requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The Department of Education is responding to your request and providing responsive documents as described in this letter on a compact disc (CD). The CD contains the actual responsive documents and also includes a "Read Me" file that provides guidance for use of the CD, to include a catalog of all the responsive documents.

Your request was received in this office on October 6, 2004 and was forwarded to the following offices within the Department of Education (Department) to search for documents that may be responsive to your request: Office of Federal Student Aid (FSA) and the Office of the General Counsel (OGC). In the letter, Mr. Cox asked for information relating to the Department's Interim Review of the University of Phoenix (UOP).

Specifically, Mr. Cox requested: "full and complete access to all underlying work papers associated with, relating to, or otherwise regarding, the Interim Report, including but not limited to, any and all:

❖ Draft versions of the Interim Report;

❖ Internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees);

❖ All notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

❖ Analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo provided the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselors, including but not limited to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well

2 of 3 -- Gibson, Dunn & Crutcher LLP                                    April 8, 2005
05-00093-F

as all work papers generated during and documents used or relied upon in performing such analyses, and

❖ Correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any *qui tam* relators that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connection with the preparation revision review or defense of such Interim Report."

Mr. Cox also requested the following:

❖ "Copies of all Department internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was issued, relied upon or transmitted in connection with the Interim Report, the Department's examination leading up to the Interim Report, or the sanctions demanded during the negotiation process; [and]

❖ Copies of any delegation of authority that authorized or purported to authorize Ms. Donna Wittman to issue the Interim Report."

Enclosed is a CD that contains documents responsive to portions of this request, with a catalogue Table listing the documents. In all there are 2874 pages responsive to this portion of your request. The documents are organized into three PDF files as described below:

1. Notes and Other Documents Related to the Debriefing

❖ Documents responsive to "all notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

2. Analyses Performed by or on Behalf of the Department

❖ Documents responsive to "analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselors, including but not limited to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well as all work papers generated during and documents used or relied upon in performing such analyses"; and

3. Correspondence with Outside Parties

❖ Documents relating to "correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any *qui tam* relators that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connections with the preparation revision review or defense of such Interim Report."

2

3 of 3 – Gibson, Dunn & Crutcher LLP                          April 8, 2005
05-00093-F

However, certain information has been withheld under each of these categories, and under, "internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees)," according to the FOIA exemptions specified below:

❖ Any and all inter-agency or intra-agency memoranda and correspondence as well as drafts of letters, memoranda, and correspondence reflecting the Department's deliberative process, attorney-client communications, and attorney-work product, have been withheld pursuant to 5 U.S.C. § 552 (b)(5).

❖ Pursuant to 5 U.S.C. § 552 (b)(6), any and all personal information (including, but not limited to, home telephone numbers, personal cell phone numbers, home email addresses, and home addresses) in which an individual has a privacy right has been withheld, where disclosure would constitute a clearly unwarranted invasion of personal privacy.

❖ In accordance with 5 U.S.C. § 552 (b)(7)(C), information that could reasonably be expected to constitute an unwarranted invasion of personal privacy in the law enforcement context (including but not limited to witness information and statements) has been withheld.

As agreed during a conference call with Mr. Cox on March 21, 2005, we will continue processing your request and provide you with all additional information by May 1, 2005. Consequently, your FOIA request file remains open. You will have the right to appeal this decision by writing within 30 days after this FOIA case closes. *See* 34 CFR § 5.81. It will not close until the Department provides you with a response regarding all outstanding responsive documents.

We will continue our research and tabulate the costs as we produce responsive records and process this request.

If you have any questions, please contact the FOIA office at (202) 245-6651 or OCIO_FOIA@ed.gov.

Sincerely,

Jeanne Van Vlandren
Director, Regulatory Information Management Services
Freedom of Information Act Officer

Enclosures:

1 CD "FOIA # 05-00093-F, U.S. Department of Education
Catalogue of Documents
"Read Me" File

3

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | **3 - Correspondence with Outside Parties** | | |
| 1 | August 26, 2003 Email internal ED Re:UOP telephone call | 1 | 0 |
| 2 | August 26, 2003 Email internal OGC and other ED re: con call and next steps for UOP. | 1 | 0 |
| 3 | August 26, 2003 Email internal ED re: UOP interview notes | 1 | 6 pages |
| 4 | August 26, 2003 Email OGC re: U.S. ex rel Hendow v. UOP documents | 1 | 2 pages |
| 5 | August 26, 2003 Email OGC re: U.S. ex rel Hendow v. UOP documents | 1 | 2 pages |
| 6 | August 26, 2003 Email internal ED re: Developments in UOP case | | |
| 7 | August 26, 2003 Email internal ED re: UOP Emails and interview notes | 1 | 2 documents and 25 attached emails (see below) |
| 7a | August 20, 2003 Telephone Memo Witness Statement | 5 | 0 |
| 7b | August 20, 2003 Telephone Memo Witness Statement | 3 | 0 |
| 7c | August 25, 2003 email (Witness) re: UOP enrollment practices | 4 | 0 |
| 7d | August 24, 2003 email re: UOP enrollment practices | 2 | 0 |
| 7e | August 24, 2003 email re: UOP lead practices | 1 | 0 |
| 7f | August 24, 2003 email re: Go-time and goals | 2 | 0 |
| 7g | August 25, 2003 email re: resignation | 1 | 0 |
| 7h | August 25, 2003 email re: mailing of package | 1 | 0 |
| 7i | August 25, 2003 email re: daily results tracker | 2 | 0 |
| 7j | August 25, 2003 email re: performance enrolling students | 2 | 0 |
| 7k | Duplicate of 7j:  August 25, 2003 email performance enrolling students | 2 | 0 |
| 7l | August 25, 2003 email re: discrimination complaint | 3 | 0 |
| 7m | August 25, 2003 email re: discrimination complaint | 3 | 0 |
| 7n | August 25, 2003 email re: leads | 1 | 0 |
| 7o | August 25, 2003 email re: letter to employee relations | 1 | 0 |
| 7p | August 25, 2003 email re: filing a complaint of discrimination | 2 | 0 |
| 7q | August 25, 2003 email re: filing a complaint of discrimination | 2 | 0 |
| 7r | August 25, 2003 email re: filing a complaint of discrimination | 1 | 0 |
| 7s | August 25, 2003 email re: about May enrollment numbers | 1 | 67 |
| 7t | August 25, 2003 email re: redistribution of leads | 2 | 0 |
| 7u | August 25, 2003 email re: question about leads | 2 | 0 |
| 7v | August 25, 2003 email re: resignation | 2 | 0 |
| 7w | August 25, 2003 email re: resignation | 2 | 0 |
| 7x | August 26, 2003 email re: Phone and team list at UOP | 1 | 0 |
| 7y | August 26, 2003 email re: procedures for students filing FAFSA information | 2 | 0 |
| 7z | August 26, 2003 email re: admissions and ADA at UOP | 2 | 1 |
| 7aa | August 26, 2003 email re: Lead policy at UOP | 2 | 5 |
| 7bb | August 26, 2003 email re: application process at UOP | 3 | 0 |
| 8 | August 26 Email internal ED forwarding email from witness | 1 | 0 |
| 9 | August 26, 2003 Email internal ED re: Interview notes for 8/20 | 1 | 10 |
| 10 | August 26, 2003 Email internal ED re: Interview notes for 8/19 | 1 | 10 |
| 11 | June 25, 2003 email internal ED re: deposition transcripts | 5 | 0 |
| 12 | May 7, 2003 Email OGC and internal ED re: UP allegations | 1 | 0 |
| 13 | June 11, 2003 email internal OGC re: UP travel authorization | 1 | 0 |
| 14 | June 20, 2003 email internal OGC and ED re: Incentive | 3 | 0 |

FOIA 05-00093-F

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | Compensation of IPD | | |
| 15 | June 20, 2003 email from re: Case | 1 | 0 |
| 16 | August 15, 2003 email re: FCA case | 1 | 0 |
| | 1 – Notes & documents on debriefing | | |
| 500 | August 2, 2004 email to OGC re: UOP data | 2 | 0 |
| 501 | August 2, 2004 email internal ED re: UOP letter requesting materials | 1 | 0 |
| 502 | August 2, 2004 email re: UOP letter and fine letter | 1 | 0 |
| 503 | August 2, 2004 email internal ED and OGC re: UOP letters and analysis | 1 | 0 |
| 504 | August 3, 2004 email re: UOP charts | 1 | 1 |
| 505 | August 3, 2004 email re: contests and incentives | 1 | 0 |
| 506 | August 3, 2004 email re: contests and incentives | 1 | 3 |
| 507 | August 3, 2004 email re: UOP Employee Esquivel emails | 1 | 4 email attachments totaling 6 pages |
| 508 | August 3, 2004 email re: UOP -- employee emails question on clean starts | 1 | 0 |
| 509 | August 3, 2004 email internal ED re: UOP charts | 1 | 0 |
| 510 | August 3, 2004 email to OGC re: UOP charts | 1 | 0 |
| 511 | August 3, 2004 email to OGC re: UOP charts | 1 | 0 |
| 512 | August 3, 2004 email to internal ED re: UOP charts | 1 | 0 |
| 513 | August 3, 2004 email re: question on clean starts | 1 | 0 |
| 514 | August 3, 2004 email re: question on clean starts | 1 | 0 |
| 515 | August 3, 2004 email to internal ED re: UOP charts | 1 | 0 |
| 516 | August 4, 2004 email re: question on clean starts | 1 | 0 |
| 517 | August 4, 2004 email re: question on clean starts | 1 | 0 |
| 518 | August 4, 2004 email re: UOP Report | 1 | 0 |
| 519 | August 4, 2004 email re: enrollment contests question | 2 | 0 |
| 520 | August 4, 2004 email re: UOP answers to numbers question | 1 | 0 |
| 521 | August 4, 2004 email internal ED re: UOP Scatter Charts – all recruiters | 1 | 0 |
| 522 | August 4, 2004 email forwarding emails from relator re: trip | 1 | 2 |
| 523 | August 4, 2004 email re: enrollment contest questions | 2 | 0 |
| 524 | August 4, 2004 email re: Goals | 2 | 0 |
| 525 | August 4, 2004 email internal ED re: UOP charts per our discussion | 1 | 0 |
| 526 | August 4, 2004 email re: enrollment contests question | 3 | 0 |
| 527 | August 4, 2004 email re: UOP Charts | 1 | 71 pages |
| 527 | August 4, 2004 email re: UOP Charts | 1 | 71 pages |
| 528 | August 4, 2004 email re: Revised Violations charts | 1 | 4 |
| 529 | August 4, 2004 email re: team scoring directions | 1 | 2 |
| 530 | August 4, 2004 email internal ED re: UOP anomalies | | |
| 531 | August 4, 2004 email internal ED re: notes from meeting with ED officials on UOP | 1 | 0 |
| 532 | August 5, 2004 email internal ED re: changes to UOP charts | 1 | 0 |
| 534 | August 5, 2004 email internal ED re: UOP briefing | 1 | 0 |
| 535 | August 5, 2004 email internal ED re: UOP anomaly feedback | 1 | 0 |
| 536 | August 5, 2004 email re: information from relator on contests | 1 | 0 |
| 537 | August 5, 2004 email re: enrollment contests question | 2 | 0 |
| 538 | August 5, 2004 email internal ED re: preparations for UOP meeting. | 2 | 0 |

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| 539 | August 5, 2004 email internal ED re: preparations for UOP meeting. | 2 | 0 |
| 540 | August 5, 2004 email re: enrollment contests question | 2 | 0 |
| 542 | August 6, 2004 email re: documents for UOP briefing | 1 | 0 |
| 543 | August 6, 2004 email re: documents for UOP briefing | 1 | 0 |
| 544 | August 6, 2004 email internal ED re: UOP Briefing Shell | 1 | 0 |
| 545 | August 6, 2004 email re: shell | 1 | 0 |
| 546 | August 6, 2004 email re: interviews not in database | 1 | 0 |
| 547 | August 6, 2004 email re: UOP contests | 2 | 0 |
| 548 | August 6, 2004 email re: results of conference call | 2 | 0 |
| 549 | August 6, 2004 email re: results of conference call | 2 | 0 |
| 550 | August 6, 2004 email re: UOP interview summary | 1 | 12 |
| 551 | August 6, 2004 email re: results of conference call | 2 | 0 |
| 552 | August 8, 2004 email internal ED and OGC re: UOP violations | 2 | 0 |
| 553 | August 8, 2004 email internal ED and OGC re: conversation | 1 | 2 |
| 554 | August 8, 2004 email to internal ED and OGC re: Performance Matrix | 2 | 2 |
| 555 | August 8, 2004 email to OGC and internal ED re: Farewell UOP. | 3 | 0 |
| 556 | August 9, 2004 email to OGC and internal ED re: UOP Briefing | 1 | 0 – although 1 icon there |
| 557 | August 9, 2004 email to internal ED and OGC re: witness interviews | 1 | 5 |
| 558 | August 9, 2004 email to internal ED and OGC re: Weekly OT qualifications for August | 2 | 0 |
| 559 | August 9, 2004 email to internal ED and OGC re: end of FY frenzy at UOP | 3 | 0 |
| 560 | August 9, 2004 email re: UOP contests | 2 | 0 |
| 561 | August 9, 2004 email to OGC and internal ED re: Corrected data for chart of violations | 1 | 0 – although 1 icon on email |
| 562 | August 9, 2004 email re: briefing of corrective actions | 1 | 1 |
| 564 | August 9, 2004 email to internal ED and OGC re: UOP information | 1 | 0 (1 icon but no attachment) |
| 566 | August 10, 2004 email to internal ED and OGC re: UOP con-call follow-up | 1 | 0 |
| 568 | August 10, 2004 email | 2 | 0 (1 icon but no attachment) |
| 569 | August 10, 2004 email re: UOP recruiter questions | 1 | 0 (1 icon but no attachment) |
| 570 | August 10, 2004 email re: UOP interviews | 1 | 0 (6 icons but no attachment) |
| 571 | August 10, 2004 email re: UOP interviews | 1 | 0 (2 icons but no attachment) |
| 572 | August 10, 2004 email re: UOP chart changes | 1 | 0 |
| 573 | August 10, 2004 email re: UOP chart changes | 1 | 0 |
| 574 | August 11, 2004 email re: UOP information | 2 | 0 |
| 575 | August 11, 2004 email re: UOP meeting | 1 | 0 |
| 576 | August 11, 2004 email re: UOP information | 3 | 0 |

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | **3 - Correspondence with Outside Parties** | | |
| 1000 | August 18, 2003 Email to internal ED re: witness interviews | 4 | 1 @4 pages |
| 1001 | August 19, 2003 Email to internal ED re: summary of witness interviews | 1 | 1 @3 pages |
| 1002 | August 19, 2003 Email to internal ED re: Witness interviews | 2 | 2 attachments 4 pages total |
| 1003 | August 19, 2003 Email to OGC and re: Witness interviews | 1 | 0 |
| 1004 | August 19, 2003 Email to OGC, and two others re: potential witnesses | 1 | 0 |
| 1005 | August 19, 2003 Email to OGC, and two others re: witness interview | 1 | 0 |
| 1006 | August 19, 2003 Email to OGC re: potential witnesses | 2 | 0 |
| 1007 | August 20, 2003 Email to OGC and CMT re: Witness interviews | 2 | 0 |
| 1008 | August 20, 2003 Email to OGC and CMT re: Witness interviews | 2 | 0 |
| 1009 | August 20, 2003 Email to OGC and CMT re: Witness interviews | 1 | 6 attachments 10 pages total |
| 1010 | August 19, 2003 Email to OGC and re: potential witnesses | 1 | 0 |
| 1011 | August 20, 2003 Email and CMT re: interviewing of witnesses | 1 | 0 |
| 1012 | August 20, 2003 Email and CMT re: feedback on interviewing of witnesses | 2 | 0 |
| 1013 | August 20, 2003 Email re: relation of information by relator/witness | 1 | 0 |
| 1014 | August 20, 2003 Email re: Opinion of UofP managers | 1 | 0 |
| 1015 | August 21, 2003 Email re: witness statements, potential witness | 1 | 0 |
| 1016 | August 21, 2003 Email OGC, CMT re: witness interviews | 2 | 0 |
| 1017 | August 21, 2003 Email OGC re: witness interviews | 1 | 0 |
| 1018 | August 21, 2003 Email CMT re: Witness interviews | 1 | 0 |
| 1019 | August 21, 2003 Email from CMT re: Witness interviews | 1 | 0 |
| 1020 | August 21, 2003 Email OGC re: Witness interview | 2 | 0 |
| 1021 | August 21, 2003 Email OGC re: Witness interviews | 2 | 0 |
| 1022 | August 21, 2003 Email OGC, and two others re: investigation | 1 | 0 |
| 1023 | August 21, 2003 Email to OGC re: witness statement | 1 | 0 |
| 1024 | August 21, 2003 Email re: Witness interviews | 3 | 0 |
| 1025 | August 22, 2003 Email OGC, CMT re: Witness interviews | 2 | 0 |
| 1026 | August 22, 2003 Email OGCre: Witness interviews, potential witness | 2 | 0 |
| 1027 | August 22,2003 Email OGC re: Witness contact information | 1 | 0 |
| 1028 | August 21, 2003 Email re: Witness contact information | 2 | 0 |
| 1029 | August 21, 2003 Email re: potential witness and contact information | 2 | 0 |
| 1030 | August 22, 2003 Email re: Witness | 1 | 0 |
| 1031 | August 22, 2003 Email re: investigation | 1 | 0 |
| 1032 | August 24, 2003 Email re: Witness interviews | 2 | 0 |
| 1033 | August 24, 2003 Email re: witness interviews | 1 | 0 |
| 1034 | August 25, 2003 Email re: Witness interviews and scheduling discussion phone call. | 1 | 16 attachments 36 pages total |
| 1035 | August 25, 2003 Email re: interview notes | 1 | 0 |
| 1036 | August 25, 2003 Email re: case organization/strategy | 2 | 0 |

4

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| 1037 | August 25, 2003 Email OGC re: Witness interview and UofP top sellers retreat | 2 | 0 |
| 1038 | August 25, 2003 Email OGC re: Enroller Rankings | 2 | 1 attachment 1 page total |
| 1039 | August 25, 2003 Email OGC re: Enroller Rankings | 1 | 1 attachment 2 page total |
| 1040 | August 25, 2003 Email re: Scheduling conference call (1042, 1043, 1046, 1047) | 1 | 0 |
| 1041 | August 25, 2003 Email re: Witness interviews | 1 | 0 |
| 1042 | August 25, 2003 Email re: Scheduling conference call, witness interviews (1040, 1043, 1046, 1047) | 1 | 0 |
| 1043 | August 25, 2003 Email re: Scheduling conference call (1040, 1042, 1046, 1047) | 1 | 0 |
| 1044 | August 25, 2003 Email OGC, CMT re: Scheduling conference call and case strategy | 1 | 0 |
| 1045 | August 25, 2003 Email OGC re: witness interviews, investigation | 1 | 0 |
| 1046 | August 25, 2003 Email re: Scheduling of conference call (1040, 1042, 1043, 1047) | 1 | 0 |
| 1047 | August 225, 2003 Email re: Scheduling of conference call (1040, 1042, 1043, 1046) | 1 | 0 |
| 1048 | August 25, 2003 Email re: investigation | 4 | 0 |
| 1049 | August 25, 2003 Email CMT re: Witness interviews, potential witness | 2 | 0 |
| 1050 | August 25, 2003 Email re: Witness interviews, potential witness | 2 | 0 |
| 1051 | August 25, 2003 Email re: Witness interview | 1 | 0 |
| 1052 | March 10, 2004 Email re: presentation by UofP | 1 | 0 |
| 1053 | March 11, 2004 Email re: draft of letter to UofP | 2 | 0 |
| 1054 | March 11, 2004 Email OGC, CMT, internal ED re: UofP Response Letter redraft | 2 | 1 attachment 5 pages total |
| 1055 | March 12, 2004 Email re: draft of letter to UofP | 2 | 0 |
| 1056 | March 15, 2004 Email re: strategy and timing of meeting with UofP | 2 | 0 |
| 1057 | March 16, 2004 Email re: time and attendees to Uof P presentation | 1 | 0 |
| 1058 | March 17, 2004 Email re: time and attendees to Uof P presentation | 1 | 0 |
| 1059 | March 21, 2004 Email re: UofP presentation | 1 | 0 |
| 1060 | March 22, 2004 Email re: UofP presentation, KPMG analysis | 2 | 0 |
| 1061 | March 22, 2004 Email re: prior e-mail and conference call | 1 | 0 |
| 1062 | March 22, 2004 Email re: Meeting with UofP | 1 | 0 |
| 1063 | March 22, 2004 Email Internal ED, OGC re: UofP presentation, KPMG analysis | 1 | 0 |
| 1064 | March 22, 2004 Email re: UofP presentation, KPMG analysis | 1 | 0 |
|  | 2 - Analyses |  |  |
| 1065 | March 26, 2004 Email re: additional information from UofP | 1 | 1 file attachment containing 2 spreadsheets of 8 pages each or 16 pages total |
| 1066 | March 30, 2004 Email re: KPMG analysis | 1 | 1 attachment 6 pages |

5

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | | | total |
| | **3 - Correspondence with Outside Parties** | | |
| 1067 | March 30, 2004 Email re: case preparation | 1 | 0 |
| | **2 - Analyses** | | |
| 1068 | April 1, 2004 Email Internal ED and OGC re: case preparation/progress | 1 | 0 |
| 1069 | April 7, 2004 Email CMT, and internal ED re: draft response to UofP | 1 | 1 attachment 7 pages total |
| 1070 | April 8, 2004 Email re: contact information and draft response to UofP | 1 | 0 |
| 1071 | April 11, 2004 Email CMT re: preliminary data analysis and recommendations | 1 | 1 attachment 6 pages total |
| | **3 - Correspondence with Outside Parties** | | |
| 1072 | April 16, 2004 Email re: draft of response letter to UofP | 2 | 0 |
| 1073 | April 16, 2004 Email re: draft of response letter to UofP | 2 | 0 |
| | **2 - Analyses** | | |
| 1074 | April 19, 2004 Email re: preliminary data analysis | 1 | 0 |
| | **3 - Correspondence with Outside Parties** | | |
| 1075 | April 25, 2004 Email from re: witness information | 1 | 0 |
| 1076 | April 22, 2004 Email re: internal UofP meeting | 1 | 0 |
| 1077 | April 26, 2004 Email re: UofP internal information | 1 | 0 |
| 1078 | April 30, 2004 Email internal ED, OGC re: UofP follow-up letter | 1 | 1 attachment 6 pages total |
| 1079 | May 20, 2004 Email re: case progress/strategy | 2 | 0 |
| 1080 | July 8, 2004 Email re:E-mails | 1 | 1 attachment 2 pages total |
| | **2 - Analyses** | | |
| 1081 | July 9, 2004 Email re: possible meeting | 1 | 0 |
| 1082 | July 12, 2004 Email re: planning meeting | 1 | 0 |
| | **3 - Correspondence with Outside Parties** | | |
| 1083 | July 14, 2004 Email re: forward of internal UofP e-mail | 2 | 0 |
| | **2 - Analyses** | | |
| 1084 | July 14, 2004 Email re: meeting preparation and travel arrangements | 2 | 0 |
| 1085 | July 14, 2004 Email re: Recruiter Data | 1 | 0 |
| | **3 - Correspondence with Outside Parties** | | |
| 1086 | July 21, 2004 Email re: letter to UofP – follow up to July meeting | 1 | 1 attachment 2 pages total |
| 1087 | July 22, 2004 Email internal ED re: case progress/strategy | 1 | 0 |
| | **1 - Notes & documents on debriefing** | | |
| 1088 | September 1, 2004 Email re: WSJ news column | 2 | 0 |
| 1089 | August 20, 2004 email re: UofP negotiations | 2 | 0 |
| 1090 | August 20, 2004 Email re: UofP negotiations | 1 | 0 |
| 1091 | August 20, 2004 Email re: UofP negotiations | 1 | 0 |
| 1092 | August 24, 2004 Email re: UOPSucks.com and recruiter complaints | 1 | 0 |
| | **3 - Correspondence with Outside Parties** | | |
| 1093 | August 23, 2004 Email re: Relator FOIA request in qui tam case (1159) | 1 | 0 |
| | **1 - Notes & documents on debriefing** | | |
| 1094 | August 23, 2004 Email re: UofP interviewees | 1 | 0 |

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| 1095 | August 24, 2004 Email re: UofP attys interviewing ED interviewees | 1 | 0 |
|  | 3 - Correspondence with Outside Parties | | |
| 1096 | August 24, 2004 Email re: UofP attys interviewing ED interviewees | 1 | 0 |
|  | 2 - Analyses | | |
| 1097 | August 24, 2004 Email CMT re: recruiter rankings | 7 | 0 |
| 1098 | August 25, 2004 Email re: UofP negotiations | 1 | 0 |
| 1099 | August 25, 2004 Email re: discussion w/KPMG and UofP attys interviewing ED interviewees | 2 | 0 |
| 1100 | August 25, 2004 Email re: discussion w/KPMG and UofP attys interviewing ED interviewees | 2 | 0 |
| 1101 | August 31, 2004 Email OGC re: UofP and other agency investigations | 1 | 0 |
| 1102 | August 20, 2004 Email J toOGC re: UofP negotiations | 1 | 1 attachment 1 page total |
| 1103 | August 20, 2004 Email R toOGC re: UofP negotiations | 1 | 0 |
| 1104 | August 25, 2004 Email OGC re: UofP negotiations (also on 1098) | 1 | 0 |
| 1105 | September 7, 2004 Email OGC re: Final settlement | 1 | 0 |
| 1106 | August 24, 2004 email OGC, CMT re: UofP attys interviewing ED interviewees, New Witness | 1 | 1 attachment 2 pages total |
| 1107 | August 24, 2004 Email OGC, CMT re: witness interview | 1 | 1 attachment 2 pages total |
| 1108 | August 24, 2004 Email OGC, CMT re: witness interview | 1 | 0 |
|  | 2 - Analyses | | |
| 1109 | August 25, 2004 Email OGC, CMT re: discussion w/KPMG | 2 | 0 |
|  | 3 - Correspondence with Outside Parties | | |
| 1110 | August 25, 2004 Email re: witness interview | 1 | 1 attachment 4 pages |
| 1111 | August 25, 2004 Email re: witness interview | 1 | 0 |
| 1112 | August 25, 2004 Email re: UofP attys interviewing ED interviewees | 1 | 0 |
| 1113 | August 30 2004 Email OGC, CMT re: new witness interview | 1 | 1 attachment 3 pages total |
| 1114 | August 26, 2004 Email re: Matrices | 1 | 0 – 3 pdf file icons but no attachments |
| 1115 | August 30, 2004 Email OGC, CMT re: new witness interview | 1 | 1 attachment 3 pages |
| 1116 | September 1, 2004 Email re: UofP starts and WSJ article (see 1088) | 2 | 0 |
|  | 3 - Correspondence with Outside Parties | | |
| 1117 | September 2, 2004 Email re: UofP attys interviewing ED interviewees | 2 | 0 |
| 1118 | September 1, 2004 Email re: UofP attys interviewing ED interviewees | 1 | 0 |
|  | 1 - Notes & documents on debriefing | | |
| 1119 | March 11, 2004 Email OGC re: draft letter to UofP (1120) | 1 | 0 |
| 1120 | March 11, 2004 Email OGC re: draft letter to UofP (1119) | 2 | 0 |
| 1121 | April 6, 2004 Email re: scheduling of meeting, data | 1 | 0 |
| 1122 | April 9, 2004 Email OGC re: UofP update – investigation status | 2 | 0 |
| 1123 | April 12, 2004 Email OGC re: Draft response letter to UofP | 1 | 1 attachment 7 pages |

7

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | (1124) | | total |
| 1124 | April 13, 2004 Email OGC re: Draft response letter to UofP (1123) | 1 | 1 attachment 7 pages total |
| 1125 | April 16, 2004 Email re: gift letter applicability to draft response letter to UofP (1126) | 1 | 0 |
| 1126 | April 16, 2004 Email re: draft response letter to UofP (1125) | 1 | 1 attachment 7 pages total |
| 1127 | April 27, 2004 Email re: Draft response letter to UofP | 1 | 1 attachment 6 pages total |
| 1128 | June 15, 2004 Email re: UofP update – investigation status (1130) | 1 | 0 |
| 1129 | June 18, 2004 Email re: qui tam case appeal | 1 | 0 |
| 1130 | June 21, 2004 Email re: UofP investigation status, priorities and OGC internal presentation scheduling (1128) | 2 | 0 |
| 1131 | June 29, 2004 Email re: copies of UofP response to ED's Feb 2004 program review report, | 1 | 0 |
| | 3 - Correspondence with Outside Parties | | |
| 1132 | July 8, 2004 Email OGC re: Draft letter to Cox re release of PRR to FOIA requesters (1133) | 1 | 1 attachment 14 pages total |
| 1133 | July 8, 2004 Email OGC re: Draft letter to Cox re release of PRR to FOIA requesters (1132) | 1 | 1 attachment 15 pages total |
| | 1 - Notes & documents on debriefing | | |
| 1134 | July 12, 2004 Email re: UofP letter | 1 | 0 |
| 1135 | July 13, 2004 Email re: UofP and mystery message | 1 | 0 |
| 1136 | July 19, 2004 Email re: UofP internal OGC meeting | 1 | 0 |
| 1137 | August 2, 2004 Email re: Draft letter [re UofP?] | 1 | 0 |
| 1138 | August 3, 2004 Email re: upcoming UofP case status meeting (1140, 1141) | 1 | 0 |
| 1139 | July 22, 2004 Email OGCinternal ED re: UofP action items | 1 | 0 |
| 1140 | August 3, 2004 Email re: gifts issue, upcoming status meeting (1138, 1141) | 2 | 0 |
| 1141 | August 3, 2004 Email re: gifts issue, upcoming status meeting (1138, 1140) | 2 | 0 |
| 1142 | August 9, 2004 Email re: UofP meeting | 1 | 0 |
| | 1 - Notes & documents on debriefing | | |
| 1143 | August 11, 2004 Email re: UofP case strategy (1144, 1145) | 1 | 0 |
| 1144 | August 11, 20004 re: UofP case strategy (1143,1145) | 1 | 0 |
| 1145 | August 11, 2004 Email re: case/settlement strategy (1143,1144) | 1 | 0 |
| 1146 | August 13, 2004 Email re: Draft UofP settlement agreement | 1 | 1 attachment 3 pages total |
| 1147 | August 13, 2004 Email re: forwarded internal UofP email | 4 | 0 |
| 1148 | August 19, 2004 Email re: UofP negotiations | 1 | 0 |
| 1149 | August 20, 2004 Email re: UofP negotiations | 1 | 0 |
| 1150 | August 20, 2004 Email re: UofP negotiations | 1 | 0 |

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | 2 – Analyses | | |
| 1151 | August 11, 2004 Email re: data (1153, 1154, 1155) | 3 | 0 |
| | 1 – Notes & documents on debriefing | | |
| 1152 | August 11, 2004 Email re: handling of information, specifically witness interviews | 1 | 0 |
| | 2 – Analyses | | |
| 1153 | August 11, 2004 Email re: data (1151, 1154, 1155) | 3 | 0 |
| 1154 | August 11, 20004 Email re: data (1151, 1153, 1155) | 4 | 0 |
| 1155 | August 11, 2004 Email re: data (1151,1153,1154) | 3 | 0 |
| | 1 – Notes & documents on debriefing | | |
| 1156 | August 11, 2004 Email OGC, FSA, CMT re: case status | 1 | 0 |
| | 3 – Correspondence with Outside Parties | | |
| 1157 | August 16, 2004 Email re: Relator FOIA request in qui tam case (1158) | 3 | 0 |
| 1158 | August 16, 2004 Fax re: Relator FOIA request in qui tam case (1157) | 4 | 0 |
| | 1 – Notes & documents on debriefing | | |
| 1159 | August 18, 2004 Email re: Relator FOIA request in qui tam case (1093) | 1 | 0 |
| | 3 – Correspondence with Outside Parties | | |
| 1160 | August 19, 2004 Email re: Apollo Group's Q3 '04 earnings conference call | 2 | 1 attachment 17 pages total |
| | 1 – Notes & documents on debriefing | | |
| 1161 | August 19, 2004 Email re: forward of UOP On Line email | 2 | 0 |
| 1162 | August 19, 2004 Email re: UofP interviews (1163, 1164) | 1 | 0 |
| 1163 | August 19, 2004 Email re: UofP interviews (1162, 1164) | 1 | 0 |
| 1164 | August 19, 2004 Email re: UofP interviews (1162, 1163) | 1 | 0 |
| 1165 | August 19, 2004 Email re: witness count | 1 | 0 |
| | 2 – Analyses | | |
| 1166 | August 19, 2004 Email re: data | 1 | 0 |
| | 1 – Notes & documents on debriefing | | |
| 1167 | August 19, 2004 Email OGC, CMT re data | 1 | 0 |

9

FOIA 05-00093-F                                    Fourth Interim Response
                                                   4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | **1 - Notes & documents on debriefing** | | |
| 2000 | 8/13/04 e-mail OGC, re: Draft UOP settlement agreement | 1 | 3 |
| 2001 | 5/27/04 Memo re: Weekly activity report | 1 | 0 |
| 2002 | UoP Interviews Grouping by Location | 4 | 0 |
| 2003 | UofP Interview Notes | 2 | 0 |
| 2004 | 174 Ed. Law Rep. 257 | 6 | 0 |
| 2005 | 5/21/04 email OGC re FSA Pin access | 1 | 2 icons –not attached to email |
| 2006 | 5/21/04 Fax OGC, UofP response to letter of 4/29/04 | 1 | 6 |
| 2007 | 3/03/04 email internal ED re: UOP Response Memo | 1 | 1 (3pgs) UOP Response Memo |
| 2008 | 8/5/04 Letter re: Info response to draft program | 3 | 2 (folder 1.0, folder 1.1) |
| 2008a | Sperling Club Events Chart | 1 | 0 |
| 2008b | Folder 1.0 cover page | 1 | 0 |
| 2008c | Folder 1.1 cover page | 1 | 0 |
| 2008d | 5/4/04 email re: Sperling Club 2 | 2 | 0 |
| 2008e | 5/4/04 email re: Sperling Club 2 | 2 | 0 |
| 2008f | 5/4/04 email re: Turtle Bay, HI | 1 | 0 |
| 2008g | 5/4/04 email re: Hawaii, Waikoloa | 1 | 0 |
| 2008h | 9/10/03 email from Western Region re: Sperling Club Announc. 2 | 1 | 0 |
| 2008i | 5/6/04 email re: SanFrancisco | 2 | 0 |
| 2008j | 5/6/04 email re: Casino Night LAX | 2 | 0 |
| 2008k | Hawaii Campus Sperling Club Members | 1 | |
| 2008l | 8/21/02 email from Western Region re: Sperling Club Announcement | 2 | 0 |
| 2008 m | 3/12/02 email from Western Region re: Sperling Club Winners | 3 | 0 |
| 2008n | 5/4/04 email re: Monterey & Palm Springs | 3 | 0 |
| 2008o | 4/5/01 email from Western Region re: Golden Nugget Sperling Club | 3 | 0 |
| 2008p | Sheraton Universal Group Arrival Report | 3 | 0 |
| 2008q | Casino Night Award Winners | 4 | 0 |
| 2008r | FY99 Sperling Club Official Guest List | 2 | 0 |
| 2008s | List Sperling Club 4 | 1 | 0 |
| 2008t | Folder 1.2 cover | 1 | 0 |
| 2008u | 8/4/04 email Western Region re: Sperling Club top performers | 1 | 0 |
| 2008v | 8/4/04 email Western Region re: Sperling Club Info Pkts. | 1 | 0 |
| 2008 w | 8/4/04 email Western Region re: Sperling Packets | 1 | 0 |
| 2008x | 5/6/04 email re: San Diego Sperling Announcement | 1 | 0 |
| 2008y | 5/6/04 email re: Yosemite Sperling Club | 1 | 0 |
| 2008z | 8/4/04 email Western Region re: Sperling Mileage Allowance | 1 | 0 |
| 2008a a | 8/4/04 email Western Region re: Sperling Club SF Menu | 1 | 0 |
| 2008 | 8/4/04 email Western Region re: Sperling Club SF Info | 1 | 0 |

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| bb | | | |
| 2008c c | 5/6/04 email re: Sperling Club SF Info | 1 | 0 |
| 2008d d | 6/4/03 email from Western Region re: Mileage Allowance for 5/16 Sperling Club | 2 | 0 |
| 2009 | 3/2/04 Fax to OGC | 1 | 1 (9 pgs.) UOP response memo |
| 2010 | Top O'The Hill FY 1999 info for all enrollment counselors. | 11 | |
| 2011 | (no date) List of names | 1 | |
| 2012 | 4/14/04 Letter re: 4/12 letter and program review report on incentive compensation | 6 | |
| 2013 | (no date) handwritten notes "Chart by Campus" (note back of p.2 "Harold FOIA Letter") | 2 | |
| 2014 | (no date) To do list | 2 | |
| 2015 | 6/16/04 Yahoo finance news re: Apollo agreement with Labor | 1 | |
| 2016 | 6/30/04 Travel Itinerary | 3 | |
| 2017 | 3/19, 3/22? Actual enrollments by Counselor, FY, Salary | 16 | |
| 2018 | 7/1/04 Fax OGC re: UoP Initial Salary History Report | 1 | 20 |
| 2019 | (no date) Six Month Performance Expectations | 1 | |
| 2020 | 8/7/04 Letter re: Response to 7/22/04 letter | 3 | |
| 2021 | Email Internal Ed | 4 | |
| 2022 | 3/1/04 Email, internal ED Re: Interview Notes | 1 | |
| 2023 | 2/9/04 email Internal ED re: How specifically did UOP mislead? | 1 | 0 |
| 2024 | 2/9/04 email Internal ED re: UOP Report in PDF Format | 1 | 1 |
| 2025 | 2/10/04 email OGC, Internal ED re: UOP Exit 8/22 | 3 | |
| 2026 | 2/10/04 email internal ED re: | 6 | |
| 2027 | 2/10/04 email re: IPD Questions | 2 | 1 (2 pgs) |
| 2028 | 2/12/04 email re: Con Call | 2 | 0 |
| 2029 | 2/15/04 email re: Con Call | 3 | |
| 2030 | 2/18/04 email re: UOP Investors and Insider Trading Concerns | 2 | 2 •UOP Stock Data spreadsheet •UOP Exit Interview Doc |
| 2031 | 2/20/04 email | | |
| 2032 | 2/26/04 email | 1 | |
| 2033 | 2/27/04 email | 1 | |
| 2034 | 2/26/04 email | 1 | |
| 2035 | 3/1/04 email | 3 | |
| 2036 | 3/3/04 email Internal ED | 1 | 1 (3pgs) UOP Response Memo |
| 2037 | 3/3/04 email Internal ED re: UoP response assessment memo | 2 | |
| 2038 | 3/3/04 email OGC | 2 | |
| 2039 | 3/4/04 email re: UOP | 1 | |
| 2040 | 3/4/04 email Follow-up | 1 | |
| 2041 | 3/8/04 email Internal ED re: Follow up letter to UOP response | 1 | 1-4pgs |
| 2042 | 3/8/04 email OGC re: UOP Meeting | 1 | 1 (4pgs) Draft letter |

FOIA 05-00093-F

Fourth Interim Response<br>4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---------|-------------|--------------|-------------|
| | | | re: missing Documents |
| 2043 | 3/9/04 email re: UOP follow up letter response | 2 | 4 |
| 2044 | 2/24/04 email Internal ED | 1 | 1 (5 pgs) interview memo |
| 2045 | 2/25/04 email Internal ED re: 2/24/04 witness interview | 1 | 1 (3 pgs. Witness interview) |
| 2046 | 2/25/04 email Internal ED re: email from online employee | 2 | 0 |
| 2047 | 2/26/04 email OGC re: Promise of Response this week | 1 | 0 |
| 2048 | 2/27/04 email Internal ED re: UoP Big Picture Considerations | 4 | 0 |
| 2049 | 2/27/04 email OGC re: qui tam suit | 1 | |
| 2050 | 3/1/04 email Internal ED | 1 | |
| 2051 | 2/9/04 email Internal ED re:UOP report in PDF format | 1 | |
| 2052 | 7/8/04 email re: emails | 1 | 1 (2 pgs) " additional emails" |
| 2053 | 7/8/04 email re: Interview Information | 1 | 1 (5 pgs) Analysis of Interview Support Post it "Interviews Salary Raises" |
| 2054 | 8/4/04 email Internal ED re: UOP | 1 | 1 UOP Mgmt Summary |
| 2055 | 9/30/04 email re: Another Witness | 1 | |
| 2056 | (no date) Draft powerpoint of UOP Briefing for 8/10/04 | 9 | 0 |
| 2057 | (no date) Chart "My favorite chart" re: summary of violations | 1 | |
| 2058 | (no date) Original Draft of UOP Briefing for 8/10/04 | | |
| 2059 | (no date) Handwritten notes (red pen) | 3 | |
| 2060a | Notes re: UOP Phone Interview 9/8/03 | 1 | |
| 2060b | Phone memo | 5 | |
| 2060c | Phone Memo | 2 | |
| 2061 | 6/20/04 email re: Document Request | 1 | 1 (5 pgs) Phoenixcontestresults .doc Marginalia on back of last page |
| 2062 | (no date) Handwritten notes on yellow paper  1 (both sides) | 1 | |
| 2063 | (no date) Handwritten notes on white paper | 3 | |

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| 2064 | (no date)<br>Handwritten notes "Gifts"<br><br>both sides | 1 | |
| 2065 | (no date)<br>Handwritten notes on yellow paper "Sperling" | 1 | includes post it "would it be helpful to….." |
| 2066 | (no date)<br>Handwritten notes<br>"Salaries" | 2 | |
| 2069 | 8/5/98 email re: FW Contest Results | 2 | |
| 2070 | (no date)<br>business card of Michael Schwartz, KPMG | | |
| 2071 | 2/13/04 Letter (KPMG) re: Apollo Group | 4 | 1 (4 pgs)<br>Terms and Conditions --<br>Advisory Services |
| 2072 | 5/7/04 Letter (KPMG) to (Apollo)<br>re: Matters related to ED preliminary program review report | 4 | 1 (2 pgs)<br>Description of Information Collected |
| 2073 | 3/22/04 meeting notes<br>Handwritten notes<br>"UOP Pre meeting" | 1 | 1 (6 pgs) |
| 2074 | 3/19/04 email<br>re: Employee statement of Responsibility | 1 | 1 (2 pgs) |
| 2075 | (no date)<br>Corrective Action Plan | 2 | |
| 2075a | 9.1.13<br>Reporting a Violation<br>Apollo Group Employee Manual | 1 | |
| 2075b | 9.9<br>Integrity, Security and Confidentiality…<br><br>Apollo Group Employee Manual | 2 | |
| 2075c | 9.13<br>Fiscal Misconduct Policy<br>Apollo Group Employee Manual | 1 | |
| 2075d | Apollo Accounting/Fraud Hotline | 2 | |
| 2075e | 9.1.13 Reporting a Violation or Suspected Violation<br>Apollo Group Employee Manual | 1 | |
| 2075f | Apollo Accounting/Fraud Hotline | 2 | |
| 2075g | 12/1/00 Memorandum to Employee Relations Administrators | 1 | |
| 2075h | Overview of the Admissions Counselor Salary Admin. Program | 3 | |
| 2076 | 3/22/04<br>Apollo Group Presentation to ED, handout with notes | | |

13

FOIA 05-00093-F

| Doc No. | Description | No. of Pages | Attachments |
|---------|-------------|--------------|-------------|
| 2077 | 3/26/04 email OGC re: Additional Information provided by UOP | 1 | 2 (16 pgs) DOE Request 032504 by enrollments DOE request032504 by % change |
| 2078 | (no date) Depo Digest, ver. 2 | 24 | |
| 2079 | UOP Interview Notes 8/20/03 | 2 | |
| 2080 | UOP Interview Notes 8/20/03 | 2 | 0 |
| 2081 | UOP Interview Notes 8/25/03 | 1 | 0 |
| 2082 | UOP Interview Notes 8/27/03 | 3 | 0 |
| 2083 | UOP Interview Notes 8/20/03 | 3 | 0 |
| 2084 | UOP Interview Notes 8/18/03 | 3 | 0 |
| 2085 | UOP Interview Notes 8/22/03 | 3 | 0 |
| 2086 | UOP Interview Notes 8/22/03 | 2 | |
| 2087 | UOP Interview Notes 8/18/03 | 1 | |
| 2088 | UOP Interview Notes 8/18/03 | 2 | |
| 2089 | UOP Interview Notes 8/19/03 | 2 | |
| 2090 | UOP Interview Notes 8/18/03 | 3 | |
| 2091 | UOP Interview Notes 8/21/03 | 4 | |
| 2092 | UOP Interview Notes 8/21/03 | 4 | |
| 2093 | UOP Interview Notes | 3 | |

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---------|-------------|--------------|-------------|
|  | 8/22/03 |  |  |
| 2094 | UOP Interview Notes 8/21/03 | 2 |  |
| 2095 | UOP Interview Notes 8/26/03 | 2 |  |

15

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | 3 - Correspondence with Outside Parties | | |
| 2400 | H&A v. UoP<br>UoP memo in support of motion to dismiss | | |
| 2401 | H&A v. UoP<br><br>Second Amended Complaint<br>Rec'd 3/8/04 | | |
| 2402 | H&A v. UoP<br>UoP Motion to Dismiss<br>Rec'd 10/28/03 | | |
| 2403 | H&A v. UoP<br>11/29/04<br>Appellants Appeal of 12(b)(6) "excerpts of the record" | | |
| 2404 | (No date) Notes from discussion | | |
| 2405 | 8/29/03 Letter UoP counsel re: H&A v. UoP<br>(rec'd 9/8/03)<br>Corrected Proof of Service of First Amended Complaint for Damages with demand for jury trial. | | |
| 2406 | Fax 5/5/03<br>Complaint for damages, demand for jury trial<br>Filed 3/7/04 | 13 | |
| 2407 | 5/22/03 NCAL OSIRA Meeting Guidelines | 13 | |
| 2408 | 2/25/03 Email re: Are You Focused | 2 | |
| 2409 | 1/31/03 Email re: Enrollment Leaderboard | 1 | |
| 2410 | 1/17/03 email NCAL Enroll re: making progress | 2 | |
| 2411 | September Contest App Tracking Log | 2 | |
| 2412 | 1/10/03 email NCAL enrollment re: sperling | 1 | |
| 2413 | 3/1/04 Fax re: Court order in UoP Case | 6 | |
| 2414 | 2/10/04 Routing Sheet<br>Relators sur-reply to reply memo of Defendant regarding D's motion to dismiss under 12(b)(6) | 6 | |
| 2415 | USHA.....v uop<br>Request to take judicial notice of ED Admin Findings, with supporting declaration | 7 | 2<br><br>•Proof of Service,<br>•Exhibit 1 |
| 2416 | 9ᵗʰ Cir Ct. of Appeals<br>Appellants Opening Brief on 12b6 motion | 58 | 1 (Pos) |
| 2417 | H&A v. UoP<br>Confidential transcript of deposition of Mary Hendow, 6.10.03 | | |
| 2418 | UofP AC Policies FY 2002 | 9 | |
| 2419 | UofP EC Policies FY 1999 | 8 | |
| 2420 | UofP EC Policies May 1999 | 8 | |
| 2421 | UoP Enrollment Counselor Policies Dec 1997-May 1998 | 7 | |
| 2422 | UoP Enrollment Counselor Policies June 1997-Nov 1997 | 7 | |
| 2423 | UoP Enrollment Counselor Policies Dec 1996-May 1997 | | |
| 2424 | UoP Enrollment Counselor Policies October 2002 | 11 | |
| 2425 | UoP Enrollment Counselor Policies December 2000 | 9 | |
| 2426 | Hendow....<br>Relators Memo in Opp to D's motion to dismiss Filed 1/20/04, rec'd 1/28/04 | 30 | 1 proof of service |

16

FOIA 05-00093-F                                          Fourth Interim Response
                                                                   4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| 2427 | Declaration of NK in support of Relators Memo of Points and Authorities in Opp to D's motion to dismiss<br>Filed 1/20/04, rec'd 1/28/04 | 23 | |
| 2428 | Joint Status Report of Relators/Plaintiffs and Defendant UoP 1/20/04, rec'd 1/12/04 | 8 | |
| 2429 | 5/10/04<br>Routing Defendant's opposition to relators request to submit a sur-reply re defendant's motion to dismiss relators second amended complaint | 5 | |
| 2430 | 5/10/04<br>Relators sur-reply memo of points and author in response to reply memo of defendants re d's motion to dismiss | 9 | 1 pos |
| 2431 | 5/4/04<br>D's reply brief in support of its motion to dismiss relators second amended complaint pursuant to FRCP 12b6 | 21 | 1 pos |
| 2432 | 5/10/04 email OGC Article from Chronicle on scrutiny of for-profit school chains (5/14/04 issue) | 4 | |
| 2433 | Declaration in support of Relators memo of points and authorities in opp to d's motion to dismiss pursuant to frcp 12b6 | 23 | 1<br>•ExhibitB:<br>Amicus Curae memo in conn. w/D's motion for Summary Judgment (8pgs) |
| 2434 | 4/20/04<br>Relators Memo of Points and Authorities in opposition to defendant's motion to dismiss pursuant to frcp12(b)(6) | 29 | 1 pos |
| 2435 | 5/3/04 Request to take judicial notice in support of relators opposi9tion to rd's motion to dismiss pursuant to frcp 12(b)(6) | 2 | 2<br>•Exhibit A •Order re Motion for Reconsideration and motion to continue trial date, entered/filed 12/4-5/03 |
| 2436 | 3/7/03 H & A v. UoP<br>Disclosure Statement of Hendow & Albertson, Relator | | |
| 2437 | Request to take Judicial Notice in Support of Defendant University of Phoenix/s Motion to Dismiss pursuant to FRCP 12(b)(6) | 2 | 4 attach:<br>•Gay v. Lincoln Tech (12 pgs)<br>•POS (1 pg)<br>•Bowman v. Ed. America (8 pgs)<br>•POS (2 pgs) |
| 2438 | Defendant's Notice of Motion and Motion to Dismiss Relators Second Amended complaint pursuant to FRCP 12(b)(6) | 5 | |
| 2439 | Defendant's memorandum of points and authorities in support of its motion to dismiss relators second amended complaint pursuant to FRCP 12(b)(6) | 21 | |
| 2440 | Declaration of Robert T. Collins in support of ...... | 2 | 3<br>• 15 pgs. |

17

FOIA 05-00093-F

Fourth Interim Response
4/8/2005

| Doc No. | Description | No. of Pages | Attachments |
|---|---|---|---|
| | | | • 10 pgs<br>• 8 pgs |
| 2441 | 8/28/03<br>Letter to Court Clerk<br>Re: duplicate originals of second amended complaint for filing. | 1 | 0 |
| 2442 | Routing Sheet<br><br>H&A vUoP<br><br>Relators response to defendant UoP request for clarification regarding the courts 1/8/04 scheduling order | 1 | 2, 3 pgs<br>Response<br>POS |
| 2443 | Routing Sheet<br><br>H&A vUoP<br><br>Change of Address for Relators Attorney<br>10/27/03 | 1 | 2 (3pgs)<br>• COA<br>P • OS |
| 2444 | Starts Report<br>Downloaded 7/26 | 24 | 0 |
| 2445 | Apollo Performance Evaluation | 67 | 0 |
| 2446 | 7/25/03 email to UoP personnel re: June 9th CRF results | 1 | 0 |
| 2447 | 7/11/03 email to NCAL Enrollment | 1 | 0 |
| 2448 | 6/25/03 email to NCAL Enrollment, NCAL Directors re: July/August | 2 | 0 |
| 2449 | 6/30/03 email to NCAL Enrollment re: Do you like music? | 1 | 0 |
| 2450 | UoP/WICU/CFP/Apollo<br>Quick Reference Listing: Marketing and Enrollment | 12 | 0 |
| 2451 | 7/15/03 email NCAL enrollment, NCAL directors re: July/August Stack Ranking | 1 | 0 |
| 2452 | 7/30/03 OGC Routing Doc. Re: A/H Matter | 1 | 1 (20 pgs) |
| 2453 | 8/29/03 letter UoP re: H&A v. UoP, first amended complaint | 2 | 1 (16 pgs)<br>First Amended<br>Complaint |
| 2454 | H&A v. UoP<br>Re: Add'l Papers to be served... | 9 | 0 |
| 2455 | 8/27/03 letter H&A v. UoP | 1 | 0 |
| 2456 | 5/26/04<br><br>Re: dismissal order | 1 1pg | 2 (6 pgs total)<br>• 1 pg<br>• 5 pgs |
| 2457 | 5/20/04 Fax, | 4 | |
| 2458 | Appellants notice re no reporters transcripts ordered for appeal | 1 | 1 (POS) |
| 2459 | H&A v. UoP<br>Disclosure Stmt. Of H&A pursuant to the Fed False Claims Act | 21 | 1<br>packet of exhibits |
| 2460 | UoP "AC Self Success Recap" | | |
| 2461 | 7/25/03 email witness re: weekly referrals for July 18. | 1 | |

# Exhibit No. 5
## IN RE APOLLO GROUP, INC
## CIVIL NO. 06-MC-0558 (CKK)



## UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE CHIEF INFORMATION OFFICER

**MAY 0 3 2005**

Mr. Douglas R. Cox
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306

Re: **FOIA Request No. 05-00093-F**

Dear Mr. Cox:

This letter and accompanying documents represent the fifth and final response to Douglas R. Cox's letter, sent via e-mail, dated October 25, 2004, requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The Department of Education is responding to your request and providing responsive documents as described in this letter on a compact disc (CD). The CD contains the actual responsive documents and also includes a "Read Me" file that provides guidance for use of the CD, including a catalog of all the responsive documents.

The request was received in this office on October 6, 2004 and was forwarded to the following offices within the Department of Education (Department) to search for documents that may be responsive to your request: Office of Federal Student Aid (FSA) and the Office of the General Counsel (OGC). In the letter, Mr. Cox asked for information relating to the Department's Interim Review of the University of Phoenix (UOP).

Specifically, you requested: "full and complete access to all underlying work papers associated with, relating to, or otherwise regarding, the Interim Report, including but not limited to, any and all:

❖ Draft versions of the Interim Report;

❖ Internal notes (including but not limited to, all notes from interviews conducted with any and all current and former Apollo employees);

❖ All notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003;

❖ Analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselors, including but not limited to, analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions

Page 2 of 4 – Gibson, Dunn & Crutcher LLP                    May 3, 2005
FOIA Request No. 05-00093-F

with KPMG in August 2004 as well as all work papers generated during and
documents used or relied upon in performing such analyses, and

❖ Correspondence the Department has had with outside parties, including, but not
limited to, correspondence between the Department and any *qui tam* relators that
have filed suit against Apollo, and correspondence relating to the solicitation of
witnesses or experts in connection with the preparation revision review or defense
of such Interim Report."

You also requested the following:

❖ "Copies of all Department internal guidance, policy memoranda, or other
information, whether generic or specific to Apollo, that was issued, relied upon or
transmitted in connection with the Interim Report, the Department's examination
leading up to the Interim Report, or the sanctions demanded during the
negotiation process; [and]

❖ Copies of any delegation of authority that authorized or purported to authorize
Ms. Donna Wittman to issue the Interim Report."

We have previously sent you four interim responses dated December 29, 2004, February
18, 2005, February 28, 2005, and April 8, 2005.

Enclosed is a CD that contains documents responsive to portions of this request, with a
catalogue Table listing the documents. In all, there are 1,868 pages responsive to this
portion of your request. The Department has withheld 2,171 additional pages of
responsive materials in their entirety pursuant to FOIA exemption (b)(5). The 1,868
pages of documents provided are organized into four PDF files as described below:

1. Notes and Other Documents related to the Interim Report (164 Pages)

    ❖ Documents relating to the "[d]raft versions of the Interim Report;

2. Notes and Other Documents related to the Debriefing (804 Pages)

    ❖ Documents responsive to "[a]ll notes and other documents relating to the
    debriefing provided to Apollo at the conclusion of the Department's field work in
    August 2003;

3. Analyses Performed by or on Behalf of the Department (22 Pages)

    ❖ Documents responsive to "[a]nalyses, statistical or otherwise, performed by or on
    behalf of the Department involving the documentation and/or records Apollo
    produced to the Department relating to the number of enrollments achieved by,
    and the salaries and salary adjustments paid to, Apollo enrollment counselors,
    including but not limited to, analysis described by Ms. Donna Wittman and Ms.

Page 3 of 4 – Gibson, Dunn & Crutcher LLP                                    May 3, 2005
FOIA Request No. 05-00093-F

Katie Crowley in their discussions with KPMG in August 2004 as well as all
work papers generated during and documents used or relied upon in performing
such analyses"; and

4.  Correspondence with Outside Parties (878 Pages)

❖ Documents relating to "[c]orrespondence the Department has had with outside
parties, including, but not limited to, correspondence between the Department and
any *qui tam* relators that have filed suit against Apollo, and correspondence
relating to the solicitation of witnesses or experts in connections with the
preparation revision review or defense of such Interim Report."

However, certain information has been withheld under each of these categories, and
under, "[i]nternal notes (including but not limited to, all notes from interviews conducted
with any and all current and former Apollo employees)", according to the FOIA
exemptions specified below:

❖ Any and all inter-agency or intra-agency memoranda and correspondence as well
as drafts of letters, memoranda, and correspondence reflecting the Department's
deliberative process, attorney-client communications, and attorney-work product,
have been withheld pursuant to 5 U.S.C. § 552 (b)(5) and the Department
regulation 34 C.F.R § 5.73(a).  These provisions exempt from disclosure
information that is part of the deliberative process, and allow Department
employees to engage in frank and open discussions of issues, and to express their
views, opinions and recommendations without fear of outside pressures.

❖ Pursuant to 5 U.S.C. § 552 (b)(6), any and all personal information (including, but
not limited to, home telephone numbers, personal cell phone numbers, home
email addresses, and home addresses) in which an individual has a privacy right
has been withheld, where disclosure would constitute a clearly unwarranted
invasion of personal privacy.

❖ In accordance with 5 U.S.C. § 552 (b)(7)(C), information that could reasonably be
expected to constitute an unwarranted invasion of personal privacy in the law
enforcement context (including but not limited to witness information and
statements) has been withheld.

Provisions of the FOIA allow us to recover the costs pertaining to your request.  You
have advance to the Department $5,000.  As a commercial use requester, the fee for
processing your request totals $8,063.05.  The breakdown for this cost is as follows:  The
cost of search and review time of 310 hours totaled $6,498.15 plus a 16 percent
administrative costs of $1,039.70; duplication costs for 5,252 pages at $0.10 (cents) per
photocopied/imaged pages = $525.20.

3

Page 4 of 4 -- Gibson, Dunn & Crutcher LLP                          May 3, 2005
FOIA Request No. 05-00093-F

A check for the amount of $ 3,063.05 should be made payable to U.S. Department of
Education (please include the FOIA number) and sent to the below address. Please note
that if payment is not received promptly, future FOIA request you may have will require
payment in advance.

**Payment Address:**

U.S. Department of Education
Office of the Chief Information Officer
400 Maryland Avenue, SW, PCP, 9th Floor
ATTN: FOIA Officer
Washington, DC 20202-4700

We now consider your case closed.  You have the right to appeal this decision by writing,
within 30 days of your receipt of this letter.  Your appeal should be **received by** the
FOIA office on or before June 8, 2005 to the following address:

**Appeals Address:**

Chief Information Officer
US Department of Education
400 Maryland Avenue, SW
FOB-6-2W31, ATTN: FOIA Appeals
Washington, DC 20202-4500

Your appeal should be accompanied by a copy of your initial letter of request and this
partial denial letter, and your response should contain any evidence of argument you wish
the Department to consider in making an administrative determination on your appeal.

If you have any questions, please contact the FOIA office at (202) 245-6651 or
OCIO_FOIA@ed.gov.

Sincerely,

Jeanne Van Vlandren
Director, Regulatory Information Management Services
Freedom of Information Act Officer

Enclosures:
1 CD "FOIA # 05-00093-F, U.S. Department of Education
Catalogue of Documents
"Read Me" file

4

OCIO / RIMS          **Control Log for Delivery of Documents**

Date                 04/27/05

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | x |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq # by Category | IFO Numbering System or Betcha / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachment | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 2067 | 1 | 08/04/98 | 1 | | 1 | 8/4/98 email re: May't certificate winner |
| 2 | 2 | 2068 | 2 | 08/04/98 | 1 | | 1 | 8/4/98 email re: Fwd We have a winner!!! |
| 3 | 3 | 2201 | 3 | 10/07/03 | 2 | | 1 | email re: FW NCALFFL Clarification |
| 4 | 4 | 2203 | 5 | 09/25/03 | 1 | 5 | 1 | fax re: Stipulation extending time of D to respond to complaint |
| 5 | 5 | 2214 | 11 | 07/23/03 | 1 | 25 | 1 | Fax to OGC re: UoP AC Policy Guide |
| 6 | 6 | 2216 | 37 | 08/25/03 | 1 | 10 | 1 | email Internal ED re: Interview Notes Summary of interviews on Tuesday, 8/19 |
| 7 | 7 | 2218 | 48 | 08/25/03 | 1 | 10 | 1 | email to Internal ED re: Interview Notes:Summary of interviews on Tuesday, 8/19 |
| 8 | 8 | 2219 | 59 | 08/25/03 | 1 | | 1 | 8/25/03 email re: Interview Notes |
| 9 | 9 | 172 | 60 | 12/09/03 | 4 | 0 | 1,2 | Email from NK to OGC and relatives re: Sporting Club |
| 10 | 10 | 78 | 64 | 08/08/03 | 1 | 0 | 1,4 | Email OGC re: Protections for inforgeant |
| 11 | 11 | 82 | 65 | 08/08/03 | 1 | 0 | 1,4 | Email OGC re: meeting date and numbers |
| 12 | 12 | 85 | 66 | 08/12/03 | 1 | 3 | 1,4 | Email OGC re: movie incentive email |
| 13 | 13 | 95 | 70 | 08/14/03 | 1 | 0 | 1,4 | Email re: List of UoP Locations |
| 14 | 14 | 102 | 71 | 08/14/03 | 1 | 92 | 1,4 | Email from SD to internal ED re: List of UOP Locations |
| 15 | 15 | 79 | 164 | 08/03/03 | 1 | 0 | 1,4 | Email from re: protections for informants |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | 6 | 1305 | | | | | | |
| | 7 | | | | | | | |
| 23 | 8 | 1273 | | | 2 | | | |
| 24 | 9 | 1275 | 21 | 09/01/05 | 1 | | 2 | |

1                                              5/3/2005

**OCIO / RIMS**          Control Log for Delivery of Documents

Date                04/27/05

CASE 05-00093

| CAT 1 | |
|---|---|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

(table of document delivery log — largely illegible due to scan quality)

5/3/2005

**OCIO / RIMS**    **Control Log for Delivery of Documents**

Date                04/27/06

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Bates Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Page Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | 295 | | | | 2 | |
| | | | 297 | | | | 2 | |
| | | 240 | 299 | | | | 2 | |
| | | 338 | 304 | | | | 2 | |
| 59 | | 353 | 309 | | | | 2 | |

OCIO / RIMS                  Control Log for Delivery of Documents

Date                04/27/05

CASE 05-00053

| | | CAT 1 | |
|---|---|---|---|
| | | CAT 2 | |
| | | CAT 3 | |
| | | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

**OCIO / RIMS**    **Control Log for Delivery of Documents**

Date                04/27/06

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

5                                                                        5/3/2006

## OCIO / RIMS

**Control Log for Delivery of Documents**

Date          04/27/05

CASE 05-00093

| CAT 1 | |
|-------|--|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Bates / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Descriptive for release |
|--------|--------------------|----------------------------------------|--------------------------------------|-----------|--------------|--------------------------|-------------------|-------------------------|
| | | | | | | | | |

6                                          5/3/2005

OCIO / RIMS          Control Log for Delivery of Documents

Date                04/27/05

CASE 05-00093

| CAT 1 | |
|-------|--|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages of Attachments | Document Category | Description for release |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| | | | | | | | | |

**OCIO / RIMS**　　　**Control Log for Delivery of Documents**

Date　　　　04/27/05

CASE 05-00093

| CAT 1 | |
|-------|--|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachment | Document Category | Description for release |
|--------|------|------|------|------|------|------|------|------|
| 251 | 1 | 177 | 1 | 12/10/03 | 4 | 0 | 3 | Email re: Sperling Club |
| 252 | 2 | 189 | 5 | 12/18/03 | 1 | 0 | 3 | Email re: UOP Program Review Draft |
| 253 | 3 | 202 | 6 | 01/07/04 | 3 | 0 | 3 | Email internal ED and OGC re: UOP employee complaints |
| 254 | 4 | 207 | 9 | 01/15/04 | 3 | 0 | 3 | Email internal ED and OGC re: Employee Statement of responsibility |
| 255 | 5 | 224 | 12 | 02/05/04 | 1 | 0 | 3 | Email internal ED re: 2nd heads up UOP Report |
| 256 | 6 | 225 | 13 | 02/05/04 | 1 | 0 | 3 | Email internal ED re: 2nd heads up UOP Report |
| 257 | 7 | 226 | 14 | 02/05/04 | 2 | 0 | 3 | Email re: 2nd heads up UOP Report |
| 258 | 8 | 227 | 16 | 02/05/04 | 2 | 0 | 3 | Email re: 2nd heads up UOP Report |
| 259 | 9 | 230 | 18 | 02/05/04 | 1 | 0 | 3 | Email internal ED re: UOP report mailed |
| 260 | 10 | 231 | 19 | 02/05/04 | 1 | 0 | 3 | Email re: 2nd Heads Up |
| 261 | 11 | 232 | 20 | 02/05/04 | 1 | 0 | 3 | Email OGC and DOJ re: Relator's sur-reply brief |
| 262 | 12 | 235 | 21 | 02/06/04 | 1 | 0 | 3 | Email re: UOP Program Review Report |
| 263 | 13 | 240 | 22 | n/a | 1 | 0 | 3 | Chart on gift cards |
| 264 | 1 | 1176 | 1 | 08/29/03 | 3 | 0 | 4 | Email re: qui tam service |
| 265 | 2 | 1182 | 4 | 08/29/03 | 1 | 1 | 4 | Email re: qui tam amended complaint |
| 266 | 3 | 1185 | 6 | 08/29/03 | 1 | 0 | 4 | Email re: qui tam amended complaint |
| 267 | 4 | 1192 | 7 | 09/04/03 | 2 | 0 | 4 | Email CMT re: UofP personnel changes |
| 268 | 5 | 1195 | 9 | 09/04/03 | 1 | 2 | 4 | Email re: UoP internal email - Sperling Club |

**OCIO / RIMS**        **Control Log for Delivery of Documents**

Date                04/27/06

CASE 06-00098

| CAT 1 | |
|---|---|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq.# by Category | PO Numbering System or Brades<br>Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 269 | 6 | 1196 | 12 | 09/04/03 | 1 | 3 | 4 | Email re: UofP internal email - personnel changes (1187, 1188, 1191, 1192, 1193, 1194, 1199, 1204) |
| 270 | 7 | 1199 | 16 | 09/04/03 | 2 | 0 | 4 | Email re: UofP internal email - personnel changes |
| 271 | 8 | 1202 | 18 | 09/05/03 | 1 | 0 | 4 | Email re: UofP press release |
| 272 | 9 | 1203 | 19 | 09/05/03 | 1 | 0 | 4 | Email re: UofP personnel changes |
| 273 | 10 | 1204 | 20 | 09/05/03 | 2 | 0 | 4 | Email re: UofP personnel changes (1187, 1188, 1191, 1192, 1193, 1194, 1196, 1199) |
| 274 | 11 | 1207 | 22 | 09/05/03 | 2 | 0 | 4 | Email re: UofP press release |
| 275 | 12 | 1210 | 24 | 09/05/03 | 1 | 0 | 4 | Email CMT re: Rolater emails |
| 276 | 13 | 1233 | 25 | 10/07/03 | 2 | 0 | 4 | Email re: enrollment contest |
| 277 | 14 | 1223 | 27 | 09/10/03 | 1 | 2 | 4 | Email re: qui tam case |
| 278 | 15 | 1254 | 30 | 10/01/03 | 2 | 0 | 4 | Email re: enrollment contest (1253) |
| 279 | 16 | 1255 | 32 | 10/04/03 | 1 | 5 | 4 | Email CMT re: enrollment contest results for week #1 |
| 280 | 17 | 1257 | 38 | 10/09/03 | 2 | 0 | 4 | Email re: enrollment contest clarification |
| 281 | 18 | 1266 | 40 | 10/17/03 | 1 | 6 | 4 | Email re: AR article on Apollo |
| 282 | 19 | 1268 | 47 | 10/19/03 | 1 | 1 | 4 | Email CMT re: Interesting reading re: UofP |
| 283 | 20 | 2463 | 49 | 7/26/03 downl | 24 | 0 | 4 | Starts Report for Marketing Support Coordinators |
| 284 | 21 | 2464<br>see also:<br>2560 | 73 | 05/22/03 | 1 | 3 | 4 | email re: Weekly Recap Spreadsheet |
| 285 | 22 | 2465<br>see also:<br>2561 | 77 | 06/04/03 | 1 | 3 | 4 | email re: SF May '03 |
| 286 | 23 | 2466<br>see also:<br>2473<br>2562<br>2569 | 81 | 05/16/03 | 1 | | 4 | email re: Phone Count this week |
| 287 | 24 | 2467<br>see also:<br>2563 | 82 | 06/05/03 | 1 | | 4 | email re: Going for the Gold |
| 288 | 25 | 2468<br>see also:<br>2564<br>2470<br>2566 | 83 | 06/06/03 | 1 | 0 | 4 | email re: FW: Jane Gloom? No Way!! |
| 289 | 26 | 2469<br>see also:<br>2567 | 84 | 05/27/03 | 1 | 0 | 4 | email re:FW: Hitting the numbers... |

OCIO / RIMS

**Control Log for Delivery of Documents**

Date                04/27/06

CASE 05-00093

| | |
|---|---|
| CAT 1 | |
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Page Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 290 | 27 | 2470 | 85 | 06/06/03 | 1 | 0 | 4 | email re: FW: June Gloom? No Way!!! |
| 291 | 28 | 2471 see also: 2565 | 86 | 05/27/03 | 1 | 0 | 4 | re: FW: Hitting the numbers |
| 292 | 29 | 2472 see also: 2568 | 87 | 05/28/03 | 1 | 0 | 4 | email re: FW: Yesterdays' final numbers |
| 293 | 30 | 2473 see also: 2466 2562 2569 | 88 | 05/20/03 | 1 | 0 | 4 | email re: FW Phone Count this week |
| 294 | 31 | 2477 see also: 2482 2532 2537 | 89 | October | 1 | | 4 | Approval of Deferred Commissionable starts |
| 295 | 32 | 2478 see also: 2534 | 90 | April | 1 | | 4 | Approval of Deferred Commissionable starts |
| 296 | 33 | 2479 see also: 2535 | 91 | 06/15/01 | 1 | | 4 | Enrollments by Rep: 5/1/01 - 5/31/01 |
| 297 | 34 | 2480 See also: 2536 | 92 | December | 1 | | 4 | Approval of Deferred Commissionable starts |
| 298 | 35 | 2481 | 93 | October | 1 | | 4 | Approval of Deferred Commissionable starts |
| 299 | 36 | 2482 see also: 2540 | 94 | November | 1 | | 4 | Approval of Deferred Commissionable starts |
| 300 | 37 | 2483 | 95 | November, 2004 | 2 | | 4 | Noel Rep Log |
| 301 | 38 | 2484 see also: 2542 | 97 | June | 1 | | 4 | Approval of Deferred Commissionable starts |
| 302 | 39 | 2485 see also: 2543 | 98 | August | 1 | | 4 | Approval of Deferred Commissionable starts |
| 303 | 40 | 2486 see also: 2546 | 99 | FY 03 | 1 | | 4 | Enrollment Manager Actual vs. Plan OnCampus FY 03 |
| 304 | 41 | 2487 | 100 | FY 2002 | 1 | | 4 | Online FY 2002 |
| 305 | 42 | 2488 | 101 | FY 2003 | 1 | | 4 | DOE/ADOE Actual vs. Plan FY 2003 |
| 306 | 43 | 2489 see also: 2549 2548 2488 | 102 | FY 2003 | 1 | 0 | 4 | DOE/ADOE Actual versus Plan FY 2003 |
| 307 | 44 | 2490 see also: 2533 | 103 | 05/31/03 | 9 | | 4 | Gross New Enrollments On Campus Area, FY 03 |
| 308 | 45 | 2491 see also: 2556 | 112 | (no date) | 2 | | 4 | Walk of Fame |

10                                                    5/3/2005

OCIO / RIMS          Control Log for Delivery of Documents

Date                    04/27/05

CASE 05-0096

| CAT 1 | |
|---|---|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 309 | 46 | 2492 see also: 2573 | 114 | 06/23/05 | 1 | | 4 | Enrollments: San Jose Campus |
| 310 | 47 | 2493 see also: 2496 2574 2577 | 115 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 311 | 48 | 2494 | 116 | 06/24/05 | 1 | | 4 | Enrollments: San Jose Campus 2002 |
| 312 | 49 | 2495 | 117 | 05/13/02 | 1 | | 4 | Enrollments by Rep: 4/1/02 - 4/30/02 |
| 313 | 50 | 2496 | 118 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 314 | 51 | 2497 see also: 2578 | 119 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02 - 4/30/02 |
| 315 | 52 | 2498 see also: 2580 | 120 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 316 | 53 | 2499 see also: 2579 | 121 | 05/13/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 317 | 54 | 2500 see also: 2581 | 122 | 06/24/05 | 1 | | 4 | Enrollments: San Jose Campus |
| 318 | 55 | 2501 see also: 2582 | 123 | 05/13/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 319 | 56 | 2502 see also: 2502 | 124 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 320 | 57 | 2503 see also: 2513 2584 2594 | 125 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus Annual |
| 321 | 58 | 2504 see also: 2585 2593 | 126 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 322 | 59 | 2505 see also: 2586 | 127 | 07/01/01 | 1 | | 4 | Cover Page New Enrollments, July 2001 Neal |
| 323 | 60 | 2506 2587 | 128 | 09/07/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 324 | 61 | 2588 see also: 2516 2589 2597 | 129 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 325 | 62 | 2509 2590 | 130 | 09/07/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 326 | 63 | 2510 2591 | 131 | 09/09/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 327 | 64 | 2511 see also: 2592 | 132 | 08/01/01 | 1 | | 4 | Cover Page New Enrollments, August 2001 Neal, SJ |
| 328 | 65 | 2512 | 133 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |

6/3/2005

**OCIO / RIMS**     **Control Log for Delivery of Documents**

Date     04/27/05

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System re Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attach- ments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 329 | 66 | 2513 | 134 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus Annual |
| 330 | 67 | 2514 see also: 2595 | 135 | 10/09/01 | 1 | | 4 | Enrollments by Rep: 8/1/01-8/31/01 |
| 331 | 68 | 2515 see also: 2596 | 136 | 09/12/01 | 1 | | 4 | Enrollments by Rep: 8/1/01-8/31/01 |
| 332 | 69 | 2516 | 137 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 333 | 70 | 2517 | 138 | 7/27/01 | 1 | | 4 | Enrollments by Rep: 8/1/01-8/31/01 |
| 334 | 71 | 2518 see also: 2599 | 139 | June FY 2002 | 1 | | 4 | Cover Page New Enrollments, June 2002 Neal, SJ |
| 335 | 72 | 2519 see also: 2608 | 140 | 12/10/01 | 1 | | 4 | Enrollments by Rep: 11/1/01-11/30/01 |
| 336 | 73 | 2520 2601 | 141 | 7/2/01 | 1 | | 4 | Enrollments by Rep: 10/1/01-10/31/01 |
| 337 | 74 | 2521 see also: 2602 | 142 | 11/14/01 | 1 | | 1 | Enrollments by Rep: 10/1/01-10/31/01 |
| 338 | 75 | 2523 see also: 2576 2604 | 143 | 05/07/02 | 1 | | 4 | Enrollments by Rep: 3/1/02 - 3/31/02 |
| 339 | 76 | 2524 see also: 2606 | 144 | 10/11/02 | 1 | | 4 | Enrollments by Rep: 9/1/02-9/30/02 |
| 340 | 77 | 2525 see also: 2607 | 145 | 07/15/02 | 1 | | 4 | Enrollments by Rep: 6/1/02 - 6/30/02 |
| 341 | 78 | 2526 see also: 2608 | 146 | 09/12/02 | 1 | | 4 | Enrollments by Rep: 6/1/02 - 6/30/02 |
| 342 | 79 | 2527 see also: 2609 | 147 | 06/24/05 | 1 | | 4 | Enrollments: SJ Campus |
| 343 | 80 | 2528 see also: 2610 | 148 | 11/08/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 344 | 81 | 2529 see also: 2611 | 149 | 10/10/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 345 | 82 | 2530 see also: 2612 | 150 | 7/9/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 346 | 83 | 2531 see also 2463 | 151 | 06/11/03 | 24 | | 4 | Starts Report for Marketing Support Coordinators Downloaded 7/26 |
| 347 | 84 | 2532 | 175 | October | 1 | | 4 | Approval of Deferred Commissionable starts |
| 348 | 85 | 2533 | 176 | FY 2003 | 9 | | 4 | Gross New Enrollments On Campus Aaa, FY 03 |
| 349 | 86 | 2534 | 185 | April | 1 | | 4 | Approval of Deferred Commissionable starts |
| 350 | 87 | 2535 | 186 | 06/15/01 | 1 | | 4 | Enrollments by Rep 5/1/01 - 5/31/01 |

OCIO / RIMS          Control Log for Delivery of Documents

Date          04/27/05

CASE 05-00093

| | | | | | |
|---|---|---|---|
| CAT 1 | |
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Bates/Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 351 | 88 | 2536 | 187 | December | 1 | | 4 | Approval of Deferred Commissionable starts |
| 352 | 89 | 2537 | 188 | October | 1 | | 4 | Approval of Deferred Commissionable starts |
| 353 | 90 | 2538 see also: 2550 2553 | 189 | 11/10/00 | 1 | | 4 | Starts by Rep 10/1/00 - 10/31/00 |
| 354 | 91 | 2539 see also: 2552 | 190 | 12/12/00 | 1 | | 4 | Starts by Rep 11/1/00 - 11/30/00 |
| 355 | 92 | 2540 | 191 | November | 1 | | 4 | Approval of Deferred Commissionable starts |
| 356 | 93 | 2541 | 192 | 12/06/00 | 2 | | 4 | Starts by Rep November 2000 |
| 357 | 94 | 2542 | 194 | June | 1 | | 4 | Approval of Deferred Commissionable starts |
| 358 | 95 | 2543 | 195 | August | 1 | | 4 | Approval of Deferred Commissionable starts |
| 359 | 96 | 2544 | 196 | 09/12/01 | 1 | | 4 | Enrollments by Rep 8/1/01 - 8/31/01 |
| 360 | 97 | 2545 | 197 | (no date) | 3 | | 4 | UoP, N.Cal BC/ABC Expectations |
| 361 | 98 | 2546 see also: 2-186 | 200 | FY 2003 | 1 | | 4 | Enrollment Manager Actual vs. Plan OnCampus FY 03 |
| 362 | 99 | 2547 | 201 | FY 2002 | 1 | | 4 | Enrollment Manager Actual vs. Plan Online FY 02 |
| 363 | 100 | 2548 | 202 | FY 2003 | 1 | | 4 | DOE/ADOE Actual vs. Plan FY 2003 |
| 364 | 101 | 2549 | 203 | FY 2003 | 1 | | 4 | DOE/ADOE Actual versus Plan FY 2003 |
| 365 | 102 | 2550 | 204 | 11/10/00 | 1 | | 4 | Starts by Rep 10/1/00 - 10/31/00 |
| 366 | 103 | 2551 | 205 | 09/12/01 | 1 | | 4 | Enrollments by Rep 8/1/01 - 8/31/01 |
| 367 | 104 | 2552 | 206 | 12/12/00 | 1 | | 4 | Starts by Rep 11/1/00 - 11/30/00 |
| 368 | 105 | 2553 **ek | 207 | 11/10/00 | 1 | | 4 | Starts by Rep 10/1/00 - 10/31/00 |
| 369 | 106 | 2556 | 208 | (ro date) | 2 | 0 | 4 | Walk of Fame |
| 370 | 107 | 2558 | 210 | (no date) | 1 | 0 | 4 | Team Lists |
| 371 | 108 | 2559 | 211 | (no date) | 2 | | 4 | Handwritten notes |
| 372 | 109 | 2560 | 213 | 05/22/03 | 1 | 3 | 4 | email Re: FW: Weekly Recap Spreadsheet |
| 373 | 110 | 2561 | 217 | 06/04/03 | 1 | 3 | 4 | email re: SF May '03 |
| 374 | 111 | 2562 | 221 | 05/16/03 | 1 | | 4 | email re: Phone Count this week |
| 375 | 112 | 2563 | 222 | 06/05/03 | 1 | | 4 | email re: Going for the Gold |
| 376 | 113 | 2564 | 223 | 06/06/03 | 1 | 0 | 4 | email re: FW: June Gloom? No Way!! |
| 377 | 114 | 2565 | 224 | 05/27/03 | 1 | 0 | 4 | re: FW: Hitting the numbers |
| 378 | 115 | 2566 | 225 | 06/06/03 | 1 | 0 | 4 | email re:FW: June Gloom? No Way!!! |

13                    5/3/2005

**OCIO / RIMS**  **Control Log for Delivery of Documents**

Date      04/27/05

CASE 05-00093

| CAT 1 | |
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq # by Category | PO Numbering System or Stacks Bate No. | Page Numbers within the Delivery PDF | Doc Date | No. of Pages | No. of Pages Attachments | Document Category | Description for column |
|---|---|---|---|---|---|---|---|---|
| 379 | 116 | 2567 | 226 | 05/27/03 | 1 | 0 | 4 | email re:FW: Hitting the numbers... |
| 380 | 117 | 2568 | 227 | 05/28/03 | 1 | 0 | 4 | email re: FW: Yesterdays' final numbers |
| 381 | 118 | 2569 | 228 | 05/16/03 | 1 | | 4 | email re: Phone Count this week |
| 382 | 119 | 2572 | 229 | 04/01/02 | 1 | | 4 | Cover Page, New Enrollments Neal, SJ April 2002 |
| 383 | 120 | 2573 | 230 | 06/23/05 | 1 | | 4 | Enrollments: San Jose Campus |
| 384 | 121 | 2574 | 231 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 385 | 122 | 2575 see also: 2494 | 232 | 06/24/05 | 1 | | 4 | Enrollments: San Jose Campus |
| 386 | 123 | 2576 | 233 | 05/07/02 | 1 | | 4 | Enrollments by Rep: 3/1/02 - 3/31/02 |
| 387 | 124 | 2577 | 234 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 388 | 125 | 2578 | 235 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02 - 4/30/02 |
| 389 | 126 | 2579 | 236 | 05/13/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 390 | 127 | 2580 | 237 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 391 | 128 | 2581 | 238 | 06/24/05 | 1 | | 4 | Enrollments: San Jose Campus |
| 392 | 129 | 2582 | 239 | 05/13/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 393 | 130 | 2583 | 240 | 06/06/02 | 1 | | 4 | Enrollments by Rep: 4/1/02-4/30/02 |
| 394 | 131 | 2584 | 241 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus Annual |
| 395 | 132 | 2585 | 242 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 396 | 133 | 3586 | 243 | FY 2001 | 1 | | 4 | Cover Page New Enrollments, July 2001 Neal, SJ |
| 397 | 134 | 2587 | 244 | 09/07/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 398 | 135 | 2588 | 245 | 9/9/2001 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 399 | 136 | 2589 | 246 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 400 | 137 | 2590 | 247 | 09/07/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 401 | 138 | 2591 | 248 | 09/09/01 | 1 | | 4 | Enrollments by Rep: 7/1/01-7/31/01 |
| 402 | 139 | 2592 | 249 | 08/01/01 | 1 | | 4 | Cover Page: New Enrollments, August 2001 Neal, SJ |
| 403 | 140 | 2593 | 250 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 404 | 141 | 2594 | 251 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus Annual |
| 405 | 142 | 2595 | 252 | 10/09/01 | 1 | | 4 | Enrollments by Rep: 8/1/01-8/31/01 |
| 406 | 143 | 2596 | 253 | 09/12/01 | 1 | | 4 | Enrollments by Rep: 8/1/01-8/31/01 |
| 407 | 144 | 2597 | 254 | 06/23/05 | 1 | | 4 | Enrollments: SJ Campus |
| 408 | 145 | 2598 | 255 | 7/7/2001 | 1 | | 4 | Enrollments by Rep: 8/1/01 - 8/31/01 |

OCIO / RIMS                    **Control Log for Delivery of Documents**

Date                04/27/05

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Bates<br>Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 409 | 146 | 2599 | 256 | | 1 | | 4 | Cover Page New Enrollments, June 2002 Neal, SJ |
| 410 | 147 | 2600 | 257 | 12/10/01 | 1 | | 4 | Enrollments by Rep: 11/1/01-11/30/01 |
| 411 | 148 | 2601 | 258 | 7/7/01 | 1 | | 4 | Enrollments by Rep: 10/1/01-10/31/01 |
| 412 | 149 | 2602 | 259 | 11/14/01 | 1 | | 4 | Enrollments by Rep: 10/1/01-10/31/01 |
| 413 | 150 | 2603 | 260 | 7/7/02 | 1 | | 4 | Enrollments by Rep: 3/1/02-3/31/02 |
| 414 | 151 | 2604 | 261 | 05/07/02 | 1 | | 4 | Enrollments by Rep: 3/1/02 - 3/31/02 |
| 415 | 152 | 2605 | 262 | 10/01/02 | 1 | | 4 | Handwritten Notes |
| 416 | 153 | 2606 | 263 | 10/11/02 | 1 | | 4 | Enrollments by Rep: 9/1/02-9/30/02 |
| 417 | 154 | 2607 | 264 | 07/15/02 | 1 | | 4 | Enrollments by Rep: 6/1/02 - 6/30/02 |
| 418 | 155 | 2608 | 265 | 09/12/02 | 1 | | 4 | Enrollments by Rep: 6/1/02 - 6/30/02 |
| 419 | 156 | 2609 | 266 | 06/24/05 | 1 | | 4 | Enrollments: SJ Creeper |
| 420 | 157 | 2610 | 267 | 11/08/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 421 | 158 | 2611 | 268 | 10/10/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 422 | 159 | 2612 | 269 | 7/8/01 | 1 | | 4 | Enrollments by Rep: 9/1/01 - 9/30/01 |
| 423 | 160 | 255 | 270 | 04/14/04 | 7 | 0 | 4 | UOP Exhibit A - Business Travel Expense Policies |
| 424 | 161 | 256 | 277 | 04/14/04 | 1 | 0 | 4 | UOP Exhibit B - Purchasing Contracts Development Procedure |
| 425 | 162 | 257 | 278 | 04/14/04 | 1 | 0 | 4 | UOP Exhibit C - Apollo Group Corporate Purchasing Card Agreement |
| 426 | 163 | 258 | 279 | 04/14/04 | 2 | 0 | 4 | UOP Exhibit D - UOP Policy on Gifts and Gratuities |
| 427 | 164 | 273 | 281 | n/a | 1 | 0 | 4 | BC Performance Expectations |

15                                    5/3/2005

OCIO / RIMS          Control Log for Delivery of Documents

Date          04/27/05

CASE 05-00093

| CAT 1 | |
|-------|--|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attach-ments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 428 | 165 | 278 | 282 | 01/01/02 | 1 | 0 | 4 | annual employee performance evaluation |
| 429 | 166 | 279 | 283 | n/a | 1 | 0 | 4 | EC 1 Ongoing Expectations |
| 430 | 167 | 1382 | 284 | 07/22/03 | 2 | 0 | 4 | Email re: noone information (59) |
| 431 | 168 | 2618 | 286 | 05/22/03 | 10 | 0 | 4 | NCAL OSIRA Meeting Guidelines |
| 432 | 169 | 2619 | 296 | 01/22/02 | 1 | 2 | 4 | Fax re: Qui Tam Case |
| 433 | 170 | 2630 | 299 | 01/09/03 | 22 | | 4 | Disclosure Statement of relators..... |
| 434 | 171 | 2631 | 321 | (no date) | 2 | 0 | 4 | TOC from Disclosure statement of relators |
| 435 | 172 | 2632 | 323 | (no date) | 26 | | 4 | Disclosure Statement of relators |
| 436 | 173 | 2633 | 349 | (no date) | 1 | | 4 | TOC to Exhibits |
| 437 | 174 | 2634 | 350 | (no date) | 4 | | 4 | Exhibit 1 |
| 438 | 175 | 2635 | 354 | (no date) | 2 | | 4 | Exhibit 2 |
| 439 | 176 | 2636 | 356 | (no date) | 6 | | 4 | Exhibit 3 |
| 440 | 177 | 2637 | 362 | (no date) | 10 | | 4 | Exhibit 4 |
| 441 | 178 | 2638 | 372 | (no date) | 3 | | 4 | Exhibit 5 |
| 442 | 179 | 2639 | 375 | (no date) | 7 | | 4 | Exhibit 6 |
| 443 | 180 | 2640 | 382 | (no date) | 2 | | 4 | Exhibit 7 |
| 444 | 181 | 2641 | 384 | (no date) | 2 | | 4 | Exhibit 8 |
| 445 | 182 | 2642 | 386 | (no date) | 2 | | 4 | Exhibit 9 |
| 446 | 183 | 2643 | 388 | (no date) | 18 | | 4 | Exhibit 10 |
| 447 | 184 | 2644 | 406 | (no date) | 14 | | 4 | Exhibit 11 |
| 448 | 185 | 2645 | 420 | (no date) | 16 | 0 | 4 | Exhibit 12 |
| 449 | 186 | 2646 | 436 | (no date) | 2 | | 4 | Exhibit 13 |
| 450 | 187 | 2647 | 438 | (no date) | 18 | | 4 | Exhibit 14 |
| 451 | 188 | 2648 | 456 | (no date) | 3 | | 4 | Exhibit 15 |
| 452 | 189 | 2649 | 459 | (no date) | 3 | | 4 | Exhibit 16 |
| 453 | 190 | 2650 | 462 | (no date) | 2 | 0 | 4 | Exhibit 17 |
| 454 | 191 | 2651 | 464 | (no date) | 2 | 0 | 4 | Exhibit 18 |
| 455 | 192 | 2652 | 466 | (no date) | 3 | 0 | 4 | Exhibit 19 |
| 456 | 193 | 2653 | 469 | (no date) | 9 | 0 | 4 | Exhibit 20 |
| 457 | 194 | 2654 | 478 | (no date) | 11 | 0 | 4 | Exhibit 21 |
| 458 | 195 | 2655 | 489 | (no date) | 10 | 0 | 4 | Exhibit 22 |
| 459 | 196 | 2656 | 499 | (no date) | 6 | 0 | 4 | Exhibit 23 |
| 460 | 197 | 2657 | 505 | (no date) | 3 | 0 | 4 | Exhibit 24 |
| 461 | 198 | 2658 | 508 | (no date) | 2 | 0 | 4 | Exhibit 25 |
| 462 | 199 | 2700 | 510 | (no date) | 2 | 0 | 4 | Expense Report |

OCIO / RIMS                 Control Log for Delivery of Documents

Date                    04/27/05

CASE 05-00098

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches  Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attach-ments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 463 | 200 | 2701 | 512 | (no date) | 2 | 0 | 4 | Expense Report |
| 464 | 201 | 2702 | 514 | 04/30/03 | 2 | 0 | 4 | Expense Report (W790283) |
| 465 | 202 | 2703 | 516 | 06/24/03 | 2 | 0 | 4 | Expense Report (W801757) |
| 466 | 203 | 2704 | 518 | 08/21/03 | 2 | 0 | 4 | Expense Report (W815995) |
| 467 | 204 | 2705 | 520 | 02/15/04 | 2 | 0 | 4 | Expense Report (W759841) |
| 468 | 205 | 2706 | 522 | 01/19/04 | 2 | 0 | 4 | Expense Report (W852028) |
| 469 | 206 | 2707 | 524 | 02/10/04 | 2 | 1 | 4 | Expense Report (W858622) |
| 470 | 207 | 2708 | 527 | 08/28/02 | 2 | 2 | 4 | Expense Report (W741162) |
| 471 | 208 | 533 | 531 | 08/05/04 | 1 | 0 | 4-8 | August 5, 2004 email internal ED re: changes to UOP charts |
| 472 | 209 | 541 | 532 | 08/05/04 | 2 | 0 | 4-8 | August 5, 2004 email internal ED re: UOP Briefing Shell |
| 473 | 210 | 563 | 534 | 08/03/04 | 1 | 0 | 4-8 | August 9, 2004 email internal ED and OGC re: UOP violations chart |
| 474 | 211 | 565 | 535 | 08/10/04 | 1 | 0 | 4-8 | August 10, 2004 email internal ED and OGC re: UOP information |
| 475 | 212 | 567 | 536 | 08/10/04 | 1 | 0 | 4-8 | August 10, 2004 email internal KD |
| 476 | 213 | 1400 | 537 | None | 1 | 0 | 4/MA | OSIRA meeting notes |
| 477 | 214 | 1401 | 538 | 08/21/01 | 8 | 0 | 4/MA | UoP Gross New Enrollments, FY 2001, Ground Admissions Counselors |
| 478 | 215 | 1404 | 546 | 10/13/00 | 2 | 0 | 4/MA | Email re: contest numbers |
| 479 | 216 | 1405 | 548 | 10/17/00 | 1 | 0 | 4/MA | Email re: contest winners (1407) (1406) |
| 480 | 217 | 1406 | 549 | 10/17/00 | 1 | 0 | 4/MA | Email re: job performance for the month |
| 481 | 218 | 1407 | 550 | 10/18/00 | 1 | 0 | 4/MA | Email re: contest winners (1405) |
| 482 | 219 | 1408 | 551 | 10/18/00 | 1 | 0 | 4/MA | Email re: contest winners (1405) |
| 483 | 220 | 1410 | 552 | 03/07/01 | 1 | 0 | 4/MA | Email re: enrollment numbers (1411) |
| 484 | 221 | 1411 | 553 | 03/09/01 | 2 | 0 | 4/MA | Email re: enrollment numbers (1410) |
| 485 | 222 | 1414 | 555 | 05/28/01 | 1 | 0 | 4/MA | Email re: enrollment contests |
| 486 | 223 | 1417 | 556 | 06/09/01 | 1 | 0 | 4/MA | Email re: Stack rankings (1418) |
| 487 | 224 | 1418 | 557 | 06/12/01 | 1 | 0 | 4/MA | Email re: stack rankings (1417) |
| 488 | 225 | 1419 | 558 | 06/12/01 | 1 | 0 | 4/MA | Email to UOP re: enrollment numbers (1420) |
| 489 | 226 | 1420 | 559 | 06/12/01 | 2 | 0 | 4/MA | Email re: enrollment numbers (1419) |
| 490 | 227 | 1421 | 561 | 08/14/02 | 1 | 0 | 4/MA | Email re: enrollment numbers |

17                                          5/3/2005

OCIO / RIMS      **Control Log for Delivery of Documents**

Date      04/27/05

CASE 05-00098

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Batches / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 491 | 228 | 1422 | 562 | 08/22/01 | 1 | 0 | 4/MA | Email re: monthly enrollment numbers |
| 492 | 229 | 1423 | 563 | 09/26/01 | 1 | 0 | 4/MA | Email re: Stack rankings |
| 493 | 230 | 1424 | 564 | 10/19/01 | 1 | 0 | 4/MA | Email re: Stack rankings for FY 01 |
| 494 | 231 | 1426 | 565 | 09/17/02 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 1) |
| 495 | 232 | 1427 | 566 | 09/26/02 | 3 | 0 | 4/MA | Employee statement of annual goals |
| 496 | 233 | 1430 | 569 | 10/14/02 | 1 | 0 | 4/MA | Employee Daily Self Success form |
| 497 | 234 | 1431 | 570 | 10/15/02 | 1 | 0 | 4/MA | Employee Daily Self Success form |
| 498 | 235 | 1432 | 571 | 10/22/02 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 2) |
| 499 | 236 | 1433 | 572 | 10/25/02 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 2) |
| 500 | 237 | 1434 | 573 | September, FY02 | 1 | 0 | 4/MA | Employee OSIRA report |
| 501 | 238 | 1435 | 574 | September, FY02 | 1 | 0 | 4/MA | Employee OSIRA report |
| 475 | 239 | 1436 | 575 | October, 2002 | 1 | 0 | 4/MA | Employee OSIRA report |
| 476 | 240 | 1437 | 576 | October, 2002 | 1 | 0 | 4/MA | Employee OSIRA report |
| 477 | 241 | 1438 | 577 | September, 2002 | 1 | 0 | 4/MA | Employee OSIRA report |
| 478 | 242 | 1439 | 578 | October, FY03 | 1 | 0 | 4/MA | Employee OSIRA report |
| 479 | 243 | 1440 | 579 | October, 2002 | 1 | 0 | 4/MA | Employee OSIRA report |
| 480 | 244 | 1441 | 580 | None | 1 | 0 | 4/MA | Form: EC I Performance Expectations (chart type 1) |
| 481 | 245 | 1442 | 581 | None | 1 | 0 | 4/MA | Form: EC I Expectations (chart type 3) |
| 482 | 246 | 1443 | 582 | None | 2 | 0 | 4/MA | Form: EC I Expectations (chart type 4) |
| 483 | 247 | 1444 | 584 | None | 1 | 0 | 4/MA | Form: EC II Performance Expectations (chart type 1) |
| 484 | 248 | 1445 | 585 | None | 5 | 0 | 4/MA | Form: EC II Performance Expectations (chart type 5) |
| 485 | 249 | 1446 | 590 | None | 1 | 0 | 4/MA | Form: Senior EC Performance Expectations (chart type 1) |
| 486 | 250 | 1447 | 591 | None | 5 | 0 | 4/MA | Form: Senior EC Performance Expectations (chart type 5) |
| 487 | 251 | 1448 | 596 | None | 1 | 0 | 4/MA | Form: Executive EC Performance Expectations (chart type 1) |
| 488 | 252 | 1449 | 597 | None | 5 | 0 | 4/MA | Form: Executive EC Performance Expectations (chart type 5) |
| 489 | 253 | 1450 | 602 | None | 20 | 0 | 4/MA | Packet of all levels of EC Performance Expectations forms |
| 490 | 254 | 1451 | 622 | None | 1 | 0 | 4/MA | Form: Admissions Counselor Daily Self Success Form |
| 491 | 255 | 1452 | 623 | None | 1 | 0 | 4/MA | Form: Monthly Goals |
| 492 | 256 | 1453 | 624 | October, 2002 | 24 | 0 | 4/MA | Admissions Counselor Policy Guide |
| 493 | 257 | 1454 | 648 | October, FY03 | 1 | 0 | 4/MA | Employee OSIRA report |
| 494 | 258 | 1455 | 649 | October, FY03 | 1 | 0 | 4/MA | Employee OSIRA report |
| 495 | 259 | 1456 | 650 | 07/29/02 | 7 | 0 | 4/MA | Lead Source Analysis report |
| 496 | 260 | 1457 | 657 | 07/29/02 | 3 | 0 | 4/MA | Lead Status report |
| 497 | 261 | 1458 | 660 | 07/29/02 | 4 | 0 | 4/MA | Rep Activity report |
| 498 | 262 | 1459 | 664 | 07/29/02 | 3 | 0 | 4/MA | Lead Status report |
| 499 | 263 | 1460 | 667 | 07/29/02 | 6 | 0 | 4/MA | Lead Source Analysis report |
| 500 | 264 | 1461 | 673 | 08/09/02 | 1 | 0 | 4/MA | Completed Tasks report |
| 501 | 265 | 1462 | 674 | 07/29/02 | 3 | 0 | 4/MA | Rep Activity report |
| 502 | 266 | 1463 | 677 | 08/13/02 | 1 | 0 | 4/MA | Employee Performance Expectations (chart type 1) |
| 503 | 267 | 1464 | 678 | 08/13/02 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 1) |

OCIO / RIMS          Control Log for Delivery of Documents
Date              04/27/05

CASE 05-00093

| | CAT 1 | |
|---|---|---|
| | CAT 2 | |
| | CAT 3 | |
| | CAT 4 | |

| Seq. # | Seq # by Category | PO Numbering System or Batch. Doc. No. | Page Number within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attach-ments | Document Category | Description for release |
|---|---|---|---|---|---|---|---|---|
| 504 | 268 | 1465 | 679 | 11/27/02 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 1) |
| 505 | 269 | 1466 | 680 | 01/07/03 | 1 | 0 | 4/MA | Employee Performance Expectation (chart type 1) |
| 506 | 270 | 1467 | 681 | 01/08/03 | 1 | 0 | 4/MA | Employee Next Period Goals |
| 507 | 271 | 1469 | 682 | None | 4 | 0 | 4/MA | UofP Employee Performance Expectations (partial) |
| 508 | 272 | 2227 | 686 | | 1 | | 4/MA | Sporting Club Events List of Dates, Location & Participants |
| 509 | 273 | 2228 | 687 | 04/16/99 | 3 | 0 | 4/MA | Congratulations Sporting Club Winner |
| 510 | 274 | 2229 | 690 | 10/28/98 | 2 | | 4/MA | email re: Sperling 4 Announcement |
| 511 | 275 | 2231 | 692 | 05/17/99 | 1 | 0 | 4/MA | Sporting Club 4 (Seattle May 1999) SHIRTS |
| 512 | 276 | 2232 | 693 | 03/30/99 | 2 | 0 | 4/MA | email re: Sperling 4 is Over |
| 513 | 277 | 2233 | 695 | 04/05/01 | 3 | 0 | 4/MA | email from Western Region re: Winners List for the Golden Nugget Sperling Club |
| 514 | 278 | 2234 | 698 | 02/13/01 | 2 | 0 | 4/MA | email NCAL enrollment re: Viva Las Vegas |
| 515 | 279 | 2236 | 700 | 05/03/03 | 2 | | 4/MA | email re: Sperling Club Announcement |
| 516 | 280 | 2282 | 702 | 10/25/00 | 1 | 0 | 4/MA | email NCAL SJ Enrollment re: SJ's members |
| 517 | 281 | 2283 | 703 | (no date) | 2 | 0 | 4/MA | Expected Funding Source Document |
| 518 | 282 | 2284 | 705 | 07/21/03 | 2 | 0 | 4/MA | Fax of News Clippings re: FBI probe of university Handwritten notes: blue ink on white paper |
| 519 | 283 | 2285 | 707 | 04/29/04 | 6 | 0 | 4/MA | Executed Letter re: Program Review Report |
| 520 | 284 | 2287 | 713 | 08/25/03 | 1 | 0 | 4/MA | email re: Investigation Status |
| 521 | 285 | 2288 | 714 | 08/25/03 | 1 | 0 | 4/MA | email re: More Information |
| 522 | 286 | 2289 | 715 | 08/25/03 | 1 | 0 | 4/MA | email Internal ED re: U of P (con call) |
| 523 | 287 | 2293 | 716 | 08/25/03 | 1 | 2 | 4/MA | email re: FW: July App Total |
| 524 | 288 | 2294 | 719 | 08/25/03 | 2 | 1 | 4/MA | email re: FW: July/Aug AC Stack Ranking |
| 525 | 289 | 2295 | 722 | 08/25/03 | 2 | 0 | 4/MA | email re: FW Top Performers Event |
| 526 | 290 | 2307 | 724 | 02/28/04 | 2 | 0 | 4/MA | email re: Apollo Group Press Release |
| 527 | 291 | 2313 | 726 | 09/13/03 | 1 | 3 | 4/MA | Fax transmission report |
| 528 | 292 | 2314 | 730 | 07/15/02 | 1 | 0 | 4/MA | email to NCAL Enrollment re: July/August Stack Ranking |
| 529 | 293 | 2319 | 731 | 08/12/03 | 1 | 2 | 4/MA | email re: Do you like movies? |
| 530 | 294 | 2323 | 734 | 08/27/03 | 1 | 14 | 4/MA | fax cover re: US ex rel Hendrow vs UofP |
| 531 | 295 | 2324 | 749 | 05/17/04 | 2 | 20 | 4/MA | Docketing Statement for Appeal |
| 532 | 296 | 2325 | 771 | 03/08/04 | 1 | 1 | 4/MA | email re: new piece of information |
| 533 | 297 | 2326 | 773 | (no date) | 7 | | 4/MA | UOP Presentation Briefing Handout (color) |

19                                    5/3/2005

**OCIO / RIMS**   **Control Log for Delivery of Documents**

Date                04/27/06

CASE 05-00093

| CAT 1 | |
|-------|--|
| CAT 2 | |
| CAT 3 | |
| CAT 4 | |

| Seq. # | Seq. # by Category | PO Numbering System or Number / Doc No. | Page Numbers within the Delivery PDF | Doc. Date | No. of Pages | No. of Pages Attachments | Document Category | Description for release |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| 534 | 298 | 2328 | 780 | 01/21/04 | 4 | 0 | 4/MA | Request for Clarification re: Courts 1/8/04 scheduling order |
| 535 | 299 | 2333 | 784 | 10/20/03 | 6 | 2 | 4/MA | Joint Status Report of Relators/Plaintiffs and Defendant, UOP |
| 536 | 300 | 2337 | 792 | 04/15/04 | 6 | | 4/MA | Letter from Apollo re: Response to 3/12/04 letter and prog. Review |
| 537 | 301 | 2671 | 798 | FY 2002 | 1 | 0 | 4/MA | New Enrollments April, 2002 |
| 538 | 302 | 2672 | 799 | (no date) | 1 | 0 | 4/MA | UOP Weekly Meeting Worksheet EC 1 |
| 539 | 303 | 2673 | 800 | (no date) | 1 | 0 | 4/MA | UOP Action Plan For.... |
| 540 | 304 | 2674 | 801 | (no date) | 1 | 0 | 4/MA | UOP EA Daily Self Monitoring Feedback |
| 541 | 305 | 2676 | 802 | (no date) | 1 | 0 | 4/MA | First Night in Seattel Kiana Lodge |
| 542 | 306 | 2681 | 803 | 01/09/03 | 1 | 1 | 4/MA | H&A v. UOP Exhibits to Disclosure Statement |
| 543 | 307 | 2681a | 805 | | | 2 | 4/MA | Enrollment Activities with Corresponding Salary 1994, 1997, 2000 |
| 544 | 308 | 2681b | 807 | | | 1 | 4/MA | Chart "Approval of Deferred Communicable Starts" |
| 545 | 309 | 2681c | 808 | | | 5 | 4/MA | "Stack Ranking" Internal Management Emails |
| 546 | 310 | 2681d | 813 | | | 9 | 4/MA | Stack Ranking, Titled "Gross New Enrollments" |
| 547 | 311 | 2681e | 822 | | | 3 | 4/MA | UOP Enrollment Counselor Merit Increase Policy |
| 548 | 312 | 2681f | 825 | | | 6 | 4/MA | Management E-mails re: Enrollment Based Gifts, Bonuses, Trips |
| 549 | 313 | 2681g | 831 | | | 1 | 4/MA | Daily Enrollment Numbers Chart |
| 550 | 314 | 2681h | 832 | | | 1 | 4/MA | Weekly Enrollment Numbers Chart |
| 551 | 315 | 2681i | 833 | | | 1 | 4/MA | Monthly Enrollment Numbers Chart |
| 552 | 316 | 2681j | 834 | | | 14 | 4/MA | Matrix --Southern California, Northern California, Sacramento, Colorado |
| 553 | 317 | 2681k | 848 | | | 10 | 4/MA | Local Campus Performance Reviews --Relator Albertson |
| 554 | 318 | 2681l | 858 | | | 13 | 4/MA | Corporate Performance Reviews -- Relator Albertson |
| 555 | 319 | 2681m | 871 | | | 1 | 4/MA | Performance Plan |
| 556 | 320 | 2681n | 872 | | | 6 | 4/MA | Articles re: Other Schools Violating HEA Ban |
| | | TOTAL | 878 | | | | | |

20                                                    6/3/2005

**Exhibit No. 6**
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE CHIEF INFORMATION OFFICER

October 31, 2005

Douglas R. Cox, Esq.
Gibson, Dunn and Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306

Dear Mr. Cox:

I am writing in response to your June 15, 2005 letter appealing the Department's May 3, 2005 decision to deny in part the October 25, 2004 request of your clients, Apollo Group, Inc. (Apollo) and its subsidiary, the University of Phoenix (the University), for access to Department records, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. This letter constitutes the Department's final determination on your appeal; as such, <u>it supersedes my letter to you dated August 19, 2005</u>. I sincerely regret the delay in issuing a final determination on your appeal.

### <u>Background</u>

Your October 25, 2004 FOIA request sought access to "all underlying work papers associated with, relating to, or otherwise regarding, [a February 5, 2004 Department Program Review Report bearing Program Review Control Number 200340922254 (the Report)],[1] including, but not limited to, any and all:

- [Item 1] – draft versions of the . . . Report[;]

- [Item 2] – internal notes (including, but not limited to, all notes from interviews conducted with any and all current and former Apollo employees)[;]

---

[1] Your FOIA request described the Report at issue as an "Interim Report." However, the following facts support the conclusion that the Report in question was not a draft document subject to later revision: (1) the title page of the Report contains the notation: "K:\POS\UOP Team\UOP Program Review Report Final.doc-Last printed 1/5/2004 8:45 AM" (emphasis added); and (2) the Department considers Program Review Reports to be public documents available under FOIA, and had in fact so disclosed this Report. The fact that the Department's audit process contemplated issuances and decisions subsequent to the Program Review Report (e.g., a Final Program Review Determination Letter, and, where warranted, a fine notice) in no way alters the final status of the Report. As the parties acknowledged in their September 2004 Settlement Agreement resolving the underlying compliance review, the issuance of the Report was but "one step in an ongoing process designed to foster institutional compliance with the law."

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-4580
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

- [Item 3] – all notes and other documents relating to the debriefing provided to Apollo at the conclusion of the Department's field work in August 2003[;]

- [Item 4] – analyses, statistical or otherwise, performed by or on behalf of the Department involving the documentation and/or records Apollo produced to the Department relating to the number of enrollments achieved by, and the salaries and salary adjustments paid to, Apollo enrollment counselors, including, but not limited to, the analysis described by Ms. Donna Wittman and Ms. Katie Crowley in their discussions with KPMG in August 2004 as well as all work papers generated during and documents used or relied upon in performing such analyses[;]

- [Item 5] – correspondence the Department has had with outside parties, including, but not limited to, correspondence between the Department and any qui tam relators that have filed suit against Apollo, and correspondence relating to the solicitation of witnesses or experts in connection with the preparation, revision, review or defense of the . . . Report[;] . . .

- [Item 6] – all internal guidance, policy memoranda, or other information, whether generic or specific to Apollo, that was used, relied upon, or transmitted in connection with the Interim Report, the Department's examination leading up to the . . . Report, or the sanctions demanded during the negotiation process [; and] . . .

- [Item 7] – any delegation of authority that authorized or purported to authorize Ms. Donna Wittman to issue the . . . Report."

The Department's initial response to Apollo's referenced FOIA request comprised five transmissions in all – four interim responses (dated December 29, 2004 (releasing 45 pages of records and, additionally, providing requested information on regulatory and Department policy guidance); February 18, 2005 (releasing 243 pages of records in whole or in part); February 28, 2005 (releasing 222 pages of records in whole or in part); and April 8, 2005 (releasing an indexed CD producing 2874 pages of records in whole or in part)), and the above-referenced May 3, 2005 final response (releasing 1868 pages of requested records in whole or in part and advising Apollo of its right to file an administrative appeal). The Department denied Apollo access to 2233 pages of records in whole or in part, pursuant to 5 U.S.C. §§ 552(b)(1), (2), (5), (6), and/or 7(C) (FOIA Exemptions 1, 2, 5, 6, and 7(C), respectively). The Department also assessed fees in the aggregate amount of $8,063.05 in connection with the processing of your request.[2]

---

[2]  Between the Department's May 3, 2005 decision on your FOIA request and the submission of your appeal, the parties exchanged correspondence regarding the Department's decision, including a May 13, 2005 letter addressed to Ms. Van Vlandren, in which you raised a number of concerns regarding the legal sufficiency of the decision on your FOIA request, and Ms. Van Vlandren's response to you dated June 10,

Page 3-Mr. Douglas R. Cox, Esq.

Your appeal, challenging the Department's reliance on Exemptions 1, 5, and 7(C), and asserting improper failure to disclose other responsive materials and other deficiencies in the processing of your request, ensued.[3]

---

2005. This discretionary "pre-appeal" exchange of correspondence failed to resolve the parties' disputes regarding to what extent records responsive to your request must be made public.

[3] As your appeal does not challenge the Department's reliance on Exemptions 2 and 6 or its assessment of fees, those matters will not be discussed further herein.

### Determination on Appeal

Based on a careful review of the correspondence between the parties,[4] the records and information at issue in your appeal, and applicable legal precedent, I have determined that your appeal should be granted in part and denied in part. Specifically:

- I am granting your appeal as it pertains to the Department's redactions made pursuant to Exemption 1; however, I am not releasing information previously withheld pursuant to Exemption 1. Such information is exempt from disclosure under one or more other exemptions, as discussed at pages 12-13 below.[5]

- Your appeal raised a number of concerns regarding the completeness of the Department's search for records responsive to your request and its accounting for attachments to such records. Based on such questions, the Department has conducted a supplemental search for responsive records and a review of the records previously identified and/or produced to you. As a result of such efforts, the Department has located 157 additional responsive documents totaling 2246 pages. See enclosed CD entitled: "FOIA Request No. 05-00093-F: New Responsive Documents Identified in October 31, 2005 Appeal Determination."[6] These new documents are categorized into five PDF files, as follows: (1) Internal Notes; (2) Report Documents; (3) Correspondence; (4) Analyses; and (5) Missing Attachments. Id. As to these additional records, I have determined that approximately 185 pages may now be released to you in whole or in part. Id.

- However, as to 2022 pages or portions of pages previously withheld and approximately 2061 pages or portions of pages in the newly located records, I have determined that the Department properly denied, and/or should now deny, your request pursuant to Exemptions 2, 5, 6, and/or 7(C); I must therefore deny your appeal as it pertains to those pages. The reasons for my decision to deny your appeal in part are set forth below.

### Exemption 7(C)

Your appeal makes clear that your request did not seek, and you do not now want, access to identifying information concerning individuals of the type protected under Exemptions 6 and 7(C) (Appeal at 1); thus, such information is technically not responsive to your

---

[4] The correspondence between the parties relative to your appeal includes (in addition to the communications described at Note 2 above): (1) your June 15, 2005 appeal; (2) my August 19, 2005 letter to you concerning the appeal; and (3) your September 16, 2005 letter to me concerning the appeal.

[5] The records originally denied under Exemption 1 were first released to you, annotated to show correct exemption(s), with my letter to you dated August 19, 2005. They are reissued herewith.

[6] The referenced CD contains the new responsive documents (with appropriate redactions) and also includes a "Read Me" file that provides guidance for use of the CD, including a catalog of the new responsive documents.

request. Moreover, you do not question that identifying information in law enforcement records is protected under Exemption 7(C) (or, for that matter, under Exemption 6, in the event Exemption 7 is inapplicable).

Rather, your appeal argues that: (1) the records at issue do not qualify for Exemption 7 protection because they were not "compiled for law enforcement purposes"; (2) the Department's earlier decision to make the Report public compels it to disclose supporting work papers; and (3) even if Exemption 7 applies to these records, the Department has not met the requirement to segregate and release all information in the documents that do not implicate personal privacy. For the reasons stated below, I do not find your arguments persuasive.

Exemption 7(C) protects records or information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). This exemption is the law enforcement counterpart to Exemption 6, the FOIA's fundamental privacy exemption. However, unlike Exemption 6, Exemption 7(C) provides virtually categorical protection for information about specific individuals referenced in law enforcement records. The U.S. Court of Appeals for the District of Columbia held in SafeCard Services v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991), that, based upon the traditional recognition of the strong privacy interests inherent in law enforcement records, the "categorical withholding" of information that identifies third parties in law enforcement records will ordinarily be appropriate under Exemption 7(C) because the identities of individuals who appear in law enforcement files would virtually never be "very probative of an agency's behavior or performance."

The Department compiled the records and information at issue in your appeal during the course of its focused investigation into the University's compliance with section 487(a)(20) of Title IV of the Higher Education Act, as amended (HEA), 20 U.S.C. §1094(a)(20), which prohibits the payment of any commission, bonus, or other incentive based directly or indirectly on success in securing student enrollments, and the ensuing negotiations to resolve the Report's findings that the University had violated the referenced statute. During the investigation, numerous individuals provided information to Department lawyers and program reviewers in the form of sworn testimony, other written statements, and various related documents and materials (e.g., e-mail messages, hand-written notes, etc.).

The records and information denied to you under Exemption 7(C) consist of: (1) statements and other materials obtained from witnesses and their representatives, or portions thereof, that identify third parties (either the witnesses themselves or other referenced individuals); and (2) references to third parties contained in other case materials created or compiled by Department attorneys and program reviewers working at their direction. In instances where it would be impossible to release any portion of a record without compromising personal privacy interests protected under Exemption 7(C) (e.g., as with e-mail communications regarding performance or team actions from UOP

supervisors sent only to their team members, and subsequently forwarded to the Department), the entire record was properly denied under Exemption 7(C).

Your appeal contends that the records and information denied under Exemption 7(C) do not meet the "compiled for law enforcement purposes" threshold and, therefore, do not qualify for Exemption 7 protection, apparently based solely on a statement in Ms. Van Vlandren's August 26, 2004 letter to you that the Department did not consider Exemption 7 to be a bar to public disclosure of the Report. Your position is without legal support.[7] On the contrary, in the Exemption 7 context, the "law" to be enforced within the meaning of the term "law enforcement purposes" includes civil statutes and statutes authorizing administrative (i.e., regulatory) proceedings. See, e.g., Rugiero v. United States Dep't of Justice, 257 F.3d 534, 550 (6th Cir. 2001), cert. denied, 534 U.S. 1134 (2002); Ctr. For Nat'l Policy Review on Race and Urban Issues v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974). You have admitted as much. See note 7 above. Thus, the records responsive to your request – amassed by Department lawyers and program reviewers in the course of investigating alleged violations of the law and negotiating a settlement with the University – were unquestionably compiled for law enforcement purposes under FOIA.

You further argue that the Department's disclosure of the Report to other FOIA requesters compels it to make public the work papers supporting the Report's findings (presumably including the witness statements denied to you in whole or in part under Exemption 7(C)). Your assertion is based on the following language cited out of context from a document entitled "San Francisco Case Team Program Review (draft) Policies and Procedures": "When submitting program review reports, the specialist must include work papers supporting findings for the report." Initially, I note that the authority relied on comprises suggested procedures contained in a draft document. Moreover, a closer reading of the entire document shows that the particular language cited describes the first step in a multi-layered process for the internal clearance of program review reports (i.e., the program review specialist's initial submission of the report for internal review); thus, it has no bearing on what is or is not required to be contained in a final Report. In any

---

[7] In this regard, your appeal asserts that the Department is now bound by Ms. Van Vlandren's referenced "decision," and chides the Department for Ms. Van Vlandren's defense of the Exemption 7 redactions in her letter to you dated June 10, 2005, which you characterize as "a . . . self-serving about-face." The Department would be bound by its previous position only in the event it had released one or more of the records at issue in your appeal to another requester (i.e., disclosure of a record to one requester is generally considered to be a waiver of exemptions or privileges otherwise applicable to that same record vis-à-vis any other requester). Given that Ms. Van Vlandren's "decision" only concerned the Report – a document already disclosed to you in toto, and hence now in the public domain – your waiver argument has no bearing on the outcome of your appeal. Moreover, the position taken on this point in your appeal represents an about-face from your own earlier correct statement of the law in an April 5, 2004 letter to the Department's Deputy General Counsel, Kent D. Talbert, in which you urged the Department to afford Exemption 7 protection to the Report ("Under [the Department's FOIA regulation at 34 C.F.R.] § 5.73(b), the phrase 'enforcement action' has been defined broadly to include any 'possible civil, criminal or administrative sanctions . . . [and] law enforcement purpose(s) under Exemption 7 . . . [include] civil and regulatory proceedings as well as . . . criminal matters'").

event, I understand that FSA customarily makes program review reports public, but that supporting work papers are not made a part of such reports.

Finally, you contend, even assuming arguendo that the records and information at issue in your appeal are Exemption 7 law enforcement records, that the Department has engaged in "wholesale invocation of Exemption 7(C)" to deny access more broadly than is necessary to protect the identities of third parties and has improperly failed to segregate and release information not implicating protectible personal privacy interests. In particular, you assert that the Department's denial of access to entire witness statements was improper. Your September 16, 2005 letter to me states, "In the Department's April 8, 2005 and May 3, 2005 letters to Apollo, the Department explained that it was withholding 'on a categorical basis' witness statements under FOIA Exemption 7(C)." Initially, I note that a review of the referenced letters reveals that they contain no such language. Moreover, the redaction and withholding, on a categorical basis, of all information that could reasonably be expected to constitute an unwarranted invasion of personal privacy – including an entire witness statement where the disclosure of any portion of the statement would reveal the witness's identity to a knowledgeable requester – is entirely consistent with the legal authority cited above and, for that matter, in your appeal and follow-up correspondence. For all of these reasons, I have determined that the Department acted properly in protecting all information withheld pursuant to Exemption 7(C).[8]

<u>Exemption 5</u>

The records to which access is denied in whole or in part pursuant to Exemption 5 include:

<u>Records Related to Deliberations, Legal Advice, and Legal Preparation During Consultations Among Department Lawyers, Attorneys for the Qui Tam Relators, and Department of Justice (DOJ) Attorneys Regarding and Antecedent to Government Decisions on May 5-6, 2003 Not to Intervene in Qui Tam Lawsuit and to Continue to Investigate Allegations as an Administrative Enforcement Matter</u>:

- Communications between attorneys for the <u>qui tam</u> relators and Department lawyers (and their clients) regarding the lawsuit, and sharing with Department lawyers information from informants for use in both the regulatory enforcement action and the <u>qui tam</u> case [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges];

- Documents containing legal analysis and advice among Department, DOJ, and <u>qui tam</u> attorneys, and related notes, regarding and antecedent to the decision on

---

[8]   Moreover, as noted above, and discussed at pages 9 and 11-12 below, the information denied to you under Exemption 7(C) is also exempt <u>in toto</u> under the attorney work-product privilege of Exemption 5.

whether to intervene in the qui tam suit [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges];

- Documents containing legal analysis and advice among Department lawyers, and related notes, regarding and antecedent to the decision on whether to intervene in the qui tam suit [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges]; and

- Drafts of the decision memorandum and letters prepared and/or edited by Department and DOJ lawyers regarding and antecedent to the decisions on whether to intervene in the qui tam suit and/or to investigate allegations as an administrative enforcement matter [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges].

**Records Related to Deliberations, Legal Advice, and Legal Preparation During the Investigation and Antecedent to the Issuance of the Report on February 5, 2004:**

- Investigatory Team (i.e., Federal Student Aid (FSA) program staff and Office of General Counsel (OGC) lawyers) communications and notes concerning investigation strategy (e.g., questions as who to interview, when to interview, order and location of interviews, what kinds of questions to ask, and other general strategy questions) [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges];

- Investigatory Team communications and notes concerning witness statements (i.e., compilations of documents provided by witnesses, summaries of witness testimony, and other documents and notes related to the witness statements).

- Drafts of (1) interview questionnaires, (2) the Report, and (3) program and legal advice memoranda concerning issuance of the Report [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges];

- Communications between Department lawyers and senior officers regarding the analysis in the Report (e.g., discussions and legal advice regarding what was a violation of the regulation; what information justified a finding of violation; and whether the Department, as a policy matter, should seek to enforce this regulation at this time and in this manner) [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges]; and

- Communications from attorneys for the qui tam relators sharing advice and information from informants with Department lawyers [withheld under the deliberative process, attorney work-product, and/or attorney-client privileges].

Page 9-Mr. Douglas R. Cox, Esq.

<u>Records Related to Deliberations, Legal Advice, and Legal Preparation Antecedent to the
September 7, 2004 Settlement Agreement between the Department and the University:</u>

- Analysis created by FSA Institutional Review Specialist Donna Wittman using
  data furnished by the University to identify percentages and frequencies of
  violations of the regulation, considered by the Department in determining the
  number of violations that had occurred, the seriousness of said violations
  (moderate, egregious, etc.), and in projecting the dollar amount of fines
  correlating to the number of violations for the purpose of calculating the amount
  of the final settlement [withheld under the deliberative process, attorney work-
  product, and/or attorney-client privileges];

- Communications and notes among FSA staff and Department lawyers regarding
  information submitted by the University to rebut the findings in the Report PRR,
  in consultations regarding the policy decisions whether to engage in settlement
  negotiations and on what terms to settle [withheld under the deliberative process,
  attorney work-product, and/or attorney-client privileges];

- Drafts of charts and presentations regarding the Department's calculations of the
  number of violations, potential amount of fines, and other supporting evidence of
  violations, prepared and edited by FSA staff and Department lawyers [withheld
  under the deliberative process, attorney work-product, and/or attorney-client
  privileges]; and

- Drafts of the settlement agreement [withheld under the deliberative process,
  attorney work-product, and/or attorney-client privileges].

The documents withheld represent inter- and intra-agency deliberative materials; attorney
work products and advice to clients antecedent to several Department legal and policy
decisions; as such, they are exempt from disclosure under Exemption 5's deliberative
process privilege, attorney work-product privilege, attorney-client privilege, or a
combination of these privileges. 5 U.S.C. § 552(b)(5).

The deliberative process privilege of Exemption 5 protects internal documents that are
both pre-decisional and deliberative, whose disclosure would have a chilling effect on the
free exchange of opinions and ideas in an agency's decision-making process, in order to
"prevent injury to the quality of agency decisions." 5 U.S.C. § 552(b)(5); <u>NLRB v.
Sears, Roebuck and Co.</u>, 421 U.S. 132, 151 (1975). As a rule, the privilege does not
protect purely factual matters or factual portions of otherwise deliberative memoranda.
<u>See, e.g., EPA v. Mink</u>, 410 U.S. 73, 91 (1973). However, an agency may withhold
factual material in an otherwise deliberative document where either: (1) the selection or
distillation of facts constitutes an exercise of judgment by agency personnel such that
disclosure would "permit indirect inquiry into [their] mental processes" (<u>Williams v.
United States Dept. of Justice</u>, 556 F. Supp. 63, 65 (D.D.C. 1982)); or (2) factual

information is so inextricably connected to deliberative material that its disclosure would expose or cause harm to the agency's deliberations (see, e.g., Wolfe v. HHS, 839 F.2d 768, 774-776 (D.C. Cir. 1988) (en banc)). A category of documents particularly likely to be found exempt under the deliberative process privilege is drafts; in this regard, the process by which a draft evolves into a final document can itself constitute a protectible deliberative process. See, e.g., National Wildlife Federation v. U.S. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988).

The second traditional privilege incorporated into Exemption 5 is the attorney work-product privilege, which protects documents and other memoranda prepared by an attorney in contemplation of litigation. See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); Fed. R. Civ. P. 26(b)(3) (codifying this privilege in the Federal Rules of Civil Procedure). The privilege is intended to protect the adversarial trial process by insulating the attorney's preparations from scrutiny. See Jordan v. United States Dep't of Justice, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc). The privilege sweeps broadly in a number of respects, extending, for example, to administrative proceedings as well as judicial litigation (see, e.g., Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 700 (applying privilege to regulatory audits and investigations); records of law enforcement investigations when they are "based upon a specific wrongdoing and represent an attempt to garner evidence and build a case against the suspected wrongdoer" (SafeCard Servs., supra, 926 F.2d at 1202; see also Feshbach v. SEC, 5 F. Supp. 2d 774, 783 (N.D. Cal. 1997)); and documents "relat[ing] to possible settlements" of litigation (United States v. Metro St. Louis Sewer Dist., 952 F.2d 1040, 1044-45 (8th Cir. 1992)). The privilege may also be used to protect documents prepared "by nonattorneys who are supervised by attorneys" (see, e.g., United States v. Nobles, 422 U.S. 225, 238-39 (1975); Diversified Indus. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977)) and documents shared with a party holding a common interest with the agency (see, e.g., Chilivis v. SEC, 673 F.2d 1205, 1211-12 (11th Cir. 1982)). Moreover, factual material is fully entitled to work-product protection. See United States v. Weber Aircraft Corp., 465 U.S. 792 (1984); FTC v. Grolier, Inc., 462 U.S. 19 (1983); Martin v. Office of Special Counsel, 819 F.2d 1181, 1187 (D.C. Cir. 1987); Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997). This rule extends to facts contained in witness statements. See Martin, supra, 819 F.2d at 1187.

The attorney-client privilege of Exemption 5 concerns "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice"; however, unlike the attorney work-product privilege, the attorney-client privilege is not limited to the litigation context. Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 252-53 (D.C. Cir. 1977). The privilege applies both to facts divulged by a client to his attorney and to opinions given by an attorney to his client based upon, and reflecting, such facts (see e.g., Schlefer v. United States, 702 F.2d 233, 244 n.26). The privilege encompasses confidential communications made to attorneys not only by decisionmaking "control group" personnel, but also by lower-echelon employees. See Upjohn Co., et al. v. United States, et al., 449 U.S. 383, 392-97 (1981).

Your appeal argues, relative to the Department's reliance on Exemption 5, that: (1) the deliberative process privilege does not protect communications between the Department and attorneys for the qui tam relators; (2) the deliberative process privilege does not protect work papers supporting the findings in the Report; (3) the Department decisions to which the records at issue relate are not of a type protected by the deliberative process privilege; (4) even if some of the records denied to you are protected by Exemption 5, the Department has improperly failed to release factual information reasonably segregable from such privileged materials; (5) the Department has not articulated the bases for its assertion of the attorney work-product and attorney-client privileges; and (6) the Department has failed sufficiently to describe the documents at issue in your appeal and, as to each such document, to describe which privilege is asserted. For the reasons stated below, I find your arguments to be without merit. I must therefore deny your appeal as it pertains to the records denied under Exemption 5.

A number of courts have construed the scope of Exemption 5 to include various types of advice contained in communications originating with outside consultants. See, e.g., Dunns v. Bureau of Prisons, 804 F.2d 701, 704 n.5 (D.C. Cir. 1986) (employing a "functional rather than a literal test in assessing whether memoranda are 'inter-agency or intra-agency'"), cert. granted, judgment vacated on other grounds and remanded, 486 U.S. 1029 (1988). However, you contend that communications between the Department and the qui tam relators and their attorneys are not entitled to Exemption 5 protection because they do not meet the exemption's "inter-agency or intra-agency" threshold, citing Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 12 (2001), for the proposition that communications from self-interested individuals outside the Government cannot be protected as the advice of consultants. In fact, in Klamath Water Users, the Supreme Court limited its holding only to communications in which an "outside consultant" both has an interest in the outcome of the decisionmaking process and is competing with other existing parties for "[government] benefits inadequate to satisfy everyone[,]" specifically rejecting the broader exclusion for which your appeal cites the case. 532 U.S. at 12, n.4. Thus, Klamath is inapposite to the relationship between the Department and the qui tam relators, who were not competing against others for government benefits but, rather, were cooperating with the Department based on a common interest.

You also argue that Exemption 5 does not protect the work papers supporting the findings in the Report because you believe such materials were required to be made a part of the Report and the Report has been made public. As discussed at page 5 above, your argument in this regard is without merit because your assertion that the Department requires work papers to be included in program review reports is incorrect.

You contend further that the Department decisions to which the records at issue relate are not of a type protected by the deliberative process privilege. Specifically, citing Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429 (D.C. Cir. 1992), you argue that the deliberative process privilege cannot be invoked where "materials could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment," 976 F.2d at 1435, and that the records at issue do not meet

this criterion because they relate to a purely factual investigation. On the contrary, the decisionmaking process which is the subject of your FOIA request – the Department's determination how to investigate, prosecute, and resolve the qui tam relators' allegations that the University had engaged in numerous serious violations of the law – consisted of a sequence of legal and policy judgments (i.e., how to investigate these allegations and prosecute the alleged violations, whether and how to issue the Report and what should be its findings, and whether and on what terms to settle the case). The unique manner in which the Department became aware of the alleged violations (through unsolicited information submitted by the qui tam relators rather than the more customary Department-initiated review of student and school records), the potentially enormous economic and policy implications of the case, the complex nature of the issues involved and the evidentiary analysis required to prove the violations, and the extraordinary cost of the investigation, all represented unprecedented challenges requiring Department lawyers and officials to exercise legal and policy judgment ab initio and at every step of the process. Thus, these decisions and the deliberations preceding them were without question legal or policy considerations of a character qualifying for Exemption 5 protection.

The Department properly denied access under Exemption 5 to the categories of records itemized above because they are reflective of the confidential deliberative processes that produced the Government's decisions regarding whether to intervene in the qui tam lawsuit, whether and in what form to issue the Report, and whether and on what terms to settle the case with the University. Your appeal argues that, even where Exemption 5 protects portions of these records, the Department has failed to release other purely factual portions of such documents that are reasonably segregable. However, I have determined, due to the special character of the documents at issue, that the otherwise releasable factual information withheld is in fact exempt from disclosure, either: (1) because the selection and presentation of such information reflects the mental processes of Department analysts and attorneys and/or is inextricably intertwined with the Department's deliberations (e.g., Ms. Wittman's analysis of the evidence and drafts of the Report and various related documents); or (2) because such information is contained in documents constituting attorney work-product or reflecting facts communicated in confidence by clients to their attorneys, as to which the FOIA does not require segregation and release (e.g., witness statements).

You also argue that the Department has not articulated the bases for its assertion of the attorney work-product and attorney-client privileges.[9] As the above descriptions of categories of documents denied under Exemption 5 and statement of the law demonstrate, the Department has properly invoked the attorney work-product and/or attorney-client privileges to deny access to the majority of the documents withheld under Exemption 5,

---

[9]  You express the opinion that Ms. Van Vlandren's failure to discuss the attorney privileges in her letter to you dated June 10, 2005 calls into question the Department's reliance on those privileges. I note in this regard that, rather than purporting to be an exhaustive discussion of all issues in your appeal, the referenced letter merely addressed the concerns raised in your May 13, 2005 letter to Ms. Van Vlandren (i.e., as your May 13 letter did not raise these issues, Ms. Van Vlandren did not discuss them in her June 10 response).

including: materials prepared by or at the direction of attorneys representing the Department, DOJ, and the qui tam relators, in contemplation of litigation regarding the University violations investigated, found, and ultimately resolved through settlement; related notes and communications that would reveal the referenced attorneys' litigation preparations; law enforcement records amassed for the purpose of investigating specific wrongdoing and building a case against the University, including witness statements;[10] documents relating to settlement negotiations; and confidential communications between Department, DOJ, and qui tam attorneys and their clients (i.e., facts divulged by the clients and attorney advice reflective of those facts).

Your September 16, 2005 letter to me asserts that DOJ's May 2003 decision declining to intervene in the qui tam lawsuit meant that litigation was no longer anticipated. This contention is at odds with the following facts: (1) at the time of the referenced DOJ declination, the Department had substantial evidence that the University had violated section 487(a)(20) of the HEA; (2) the Department advised DOJ, in view of the declination decision, that it was considering what administrative action to take against the University on account of the violation; (3) the purpose of the program review was to quantify the extent of the violation in order to determine an appropriate fine; (4) the University hotly contested the Report's finding of noncompliance with section 487(a)(20) of the HEA; and (5) the parties negotiated and entered into a compromise settlement of the case on terms including, inter alia, the University's payment of $9,800,000.00 to the Department. These facts clearly show that the Department's investigation and related activities were all undertaken by or at the direction of Department lawyers in anticipation of the litigation that in fact ensued.

Finally, your request that the Department state in detail, as to each record denied to you, the precise basis for the denial is, in essence, a demand for a Vaughn Index. The so-called Vaughn Index is a litigation tool designed to facilitate a trial court's rulings regarding whether records are rightly withheld or must be produced. Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). It is well-established that an agency is under no obligation to produce such a detailed accounting in the administrative process. "There is no requirement that administrative responses to FOIA requests contain the same documentation necessary in litigation." Crooker v. Central Intelligence Agency, Civil No. 83-1426, slip op. at 3 (D.D.C. Sept. 28, 1984). I have nevertheless provided the detailed information above regarding the categories of

---

[10]  Your September 16, 2005 letter to me questioned the Department's failure to label the witness statements withheld under Exemption 7(C) and Exemption 5 to show reliance on both Exemptions for the denial. I regret that such re-labeling of the documents themselves is not feasible because the Department's computer FOIA-processing program would require this task to be performed manually and page-by-page. As this letter makes clear that all witness statements are withheld under both exemptions, I have decided that both the expense and the delay that reviewing and relabeling the thousands of pages responsive to your request would entail is unwarranted.

Page 14-Mr. Douglas R. Cox, Esq.

documents at issue in your appeal and, as to each, its role in the Department's deliberations and the bases for the Department's denial determination.[11]

## Procedural Issues

Your appeal also raises a number of questions concerning alleged deficiencies in the Department's processing of your request. They may be summarized as follows: (1) questions regarding the Department's reliance on Exemption 1; (2) concerns regarding the adequacy of the Department's search for records responsive to your request; and (3) concerns regarding the Department's accounting for and redactions made to documents identified as responsive to your request.

## Exemption 1

The Department's assertion of Exemption 1 as the basis for denying access to four records responsive to your request (identified as documents 2007, 2319, 2480, and 2681(f) on the index produced to you) was the result of a typographical error related to the implementation of the Department's new FOIAXpress processing system. As the Department did not, in fact, intend to assert Exemption 1 as the basis for denying access to any records responsive to your request, and as discussed at pages 3-4 above, I am granting your appeal as it pertains to redactions made pursuant to Exemption 1; however, I am not releasing additional information in the referenced documents previously withheld under Exemption 1 to you at this time, because such information is exempt from disclosure under one or more other exemptions, for the reasons stated at pages 3-12 above. The documents in question were released to you with my August 19, 2005 letter, annotated to show the correct exemption(s); they are also reissued herewith. I appreciate your calling this error to our attention and apologize for any confusion caused by the mistake.

## Search, Accounting and Redaction Issues

Your appeal also asserts a number of deficiencies in the Department's processing of your request (i.e., you raise questions regarding the adequacy of the Department's search for responsive records, and our redacting, copying, and accounting for certain of the records produced to you).

First, based on your assertions (1) that the Department's initial search for records responsive to your request had failed to locate all documents responsive to your request and (2) that, as to certain of the documents previously identified as responsive to your request, the Department had failed, where these documents contained icons representing

---

[11]   In this regard, I note further that the Department has furnished indices to the records responsive to your request along with the documents themselves on the CDs produced previously and herewith. Such indices are furnished notwithstanding that the Department is not required to do so during the administrative process.

Page 15-Mr. Douglas R. Cox, Esq.

attachments, to account for such attachments, I initiated a supplemental search to locate additional responsive documents. As discussed at page 3 above, this search located a total of 2246 additional pages of documents deemed to be responsive to your request; the new documents are accounted for on the attached CD. See note 6 above.

Your appeal also raises questions regarding the Department's processing of your request with respect to certain previously identified responsive documents:

Documents Labeled Non-Responsive Rather Than Exemption 6 and/or Exemption 7(C) (Docs. 59, 1017, 1134, 1152, 1159, 2042, 2337, 2450, 2531, 2681)[12] – Your appeal correctly points out that certain previously identified documents labeled non-responsive in whole or in part that are indeed non-responsive (i.e., Docs. 1017, 1134, 1159, and 2450) need not have been accounted for at all; and that other such documents should have been labeled Exemption 6 and/or Exemption 7(C) (where necessary to protect information implicating personal privacy interests in otherwise responsive documents). Please find copies of the latter category of documents (i.e., Docs. 59, 1152, 2042, 2337, 2531, 2681j), annotated to show the correct exemption, attached. I appreciate your calling this error to our attention and apologize for any confusion caused by the mistake.

More Than One Exemption Cited for Redaction of Entire Pages (Docs. 527, 2078, 2313, 2559) – A review of the referenced documents confirms that they are privileged and thus exempt from disclosure in toto pursuant to Exemption 5; Exemptions 6 and/or 7(C) are also cited to show that the documents contain information exempt from disclosure in whole or in part under one or both of the FOIA privacy exemptions as well.

Accounting for Incomplete E-Mails (Docs. 1077, 1095, 513) – A review of the referenced documents reveals that the "missing" attachments were entered into the index of responsive documents in sequence as separate documents (i.e., attachment to Doc. 1077 entered as Doc. 1078; attachment to Doc. 1095 entered as Doc. 1096; attachment to Doc. 513 entered as Doc. 514).

Issues Re: E-Mail "Custodians" (Docs. 1109, 2021, 1191, 1193, 2447, 2639, 2681(f), 2464, 2465, 2466) – Your assertion that some e-mail communications were produced with the name of their "custodian" at the top of the document while others contained no such information reflects a misunderstanding of the referenced information. The name at the top of some of the referenced documents merely identifies the person from whose computer the document was printed in the course of processing your request, who may or may not be the custodian of the

---

[12]  Although your appeal makes reference to "Doc. 2681i" (Appeal at p. 10), the corresponding document at Attachment 16 to your appeal is in fact Doc. 2681j; the confusion is presumably the result of the illegibility of the hand-written label at the bottom of the first page of Doc. 2681j.

Page 16-Mr. Douglas R. Cox, Esq.

document.[13]  The fact that some e-mail communications contain no such information reflects that it is possible to print just the responsive document without adding the name.  With respect to your query concerning the "Main Identity" designation at the top of certain responsive documents (i.e., Docs. 2464, 2465, 2466), a review of the referenced documents reveals that they were received from employees of the University; presumably, "Main Identity" identifies one of the University's MS Outlook accounts.

Redaction of E-mail Transmission Information (Docs. 513, 2021) – A review of the referenced documents reveals, as to Doc. 513, that no transmission information appears to have been redacted, and, as to Doc. 2021, that transmission information was redacted to protect the identity of witnesses, pursuant to Exemption 7(C).

Inaccurate Redactions (Docs. 2541, 2646, 2681k) – Your appeal correctly points out that the referenced documents were redacted inaccurately (apparently due to incorrect orientation of the document during redaction).  Please find copies of the referenced documents, correctly redacted, attached.[14]  I appreciate your calling this error to our attention and apologize for any confusion and inconvenience caused by the mistake.

Right to Judicial Review

This letter constitutes exhaustion of the administrative remedies available to you under FOIA.  You have the right to judicial review of this decision, pursuant to 5 U.S.C.

---

[13]  Of course, in instances where this information would identify a witness or a third party, it was properly redacted under Exemption 6 and/or Exemption 7(C).

[14]  The Department requests that Docs. 2541, 2646, and 2681k previously released to you be returned to the Department at your earliest convenience.  Thank you.

§ 552(a)(4), in the United States District Court for the district in which you reside, in which you have your principal place of business, in which the records are maintained, or for the District of Columbia.

Sincerely,

*Michell Clark*

Michell Clark
Acting Assistant Secretary for Management
and Chief Information Officer

Enclosures

# Exhibit No. 7
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



U.S. Department of Justice

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

June 29, 2006

Via U.S. Mail and
Facsimile – (949) 475-4671

Jared M. Toffer, Esq.
Gibson Dunn and Crutcher LLP
4 Park Plaza
Suite 1400
Irvine, CA 92614

Re:    Subpoena
       In Re: Apollo Securities Litigation
       United States District Court (D. Ariz.)
       Case No: 04-2147-PHX-JAT

Dear Mr. Toffer:

Your subpoena dated June 5, 2006, was forwarded to the Department of Education's Office of the General Counsel on June 8, 2006, and was referred to me in the U.S. Attorney's Office on June 28, 2006, for a response. The referenced subpoena purports to compel the production on June 30, 2006 in connection with the above-referenced lawsuit, of certain Department of Education (Department) records related to an August 2003 program review of the University of Phoenix, a subsidiary of your client, Apollo Group, Inc (Program Review).

Please be advised that neither the custodian of the records requested nor any other officer, agent, or employee of the Department is authorized to produce records pursuant to your subpoena, and that the Department therefore respectfully declines to comply with the demand stated in your subpoena, for the following reasons:

To date, proper service under 34 C.F.R. Part 8 has not been accomplished. Demands made on Department officers, agents or employees for the production of records in a legal proceeding to which the Department is not a party are subject to the requirements of 34 C.F.R. Part 8 with

which it appears your demand fails to comply. Specifically, it appears you have not served the subpoena on the custodian of the records sought, with a copy delivered simultaneously to the Department's General Counsel, as the regulation requires you to do. 34 C.F.R. § 8.3(c). Moreover, the cited regulation requires that demands for the production of records such as your subpoena not only state the nature of the requested records but also explain why the information sought is unavailable by any other means. 34 C.F.R. § 8.3(a)(2).

Finally, the regulation prohibits Department officers, agents and employees from producing Department records in such matters without prior written authorization from the Secretary of Education or her designee, and describes criteria for such authorization.[1] 34 C.F.R. § 8.5.

Where a demand for records does not comport with the requirements of 34 C.F.R. Part 8, the Department considers it to be a request for access to Department records made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. See 34 C.F.R. § 8.5(a)(2). However, I note in this regard that your client has previously sought access to all of the records responsive to your subpoena under the FOIA, and that the Department has produced to your client all responsive records that are not exempt from public disclosure under that statute.[2] Moreover, your subpoena specifically excludes a number of categories of records or information addressed in your FOIA request.

Our analysis of Exhibit A to your subpoena vis-à-vis all records assembled in processing your FOIA request has identified only 165 pages of records, or portions thereof, as responsive to your subpoena.[3] These records comprise internal materials such as correspondence tracking sheets, DUNS numbers, and documents concerning staff travel arrangements and itineraries relative to

---

[1] The Secretary may authorize production of the requested records where the demand: (1) satisfies the Department's procedural requirements, discussed above; (2) would be appropriate under the rules of procedure governing the matter in which the demand arises; and (3) would not be contrary to an interest of the United States. 34 C.F.R. § 8.5(b).

[2] The Department processed your FOIA request dated October 25, 2004 seeking access to all underlying work papers associated with, relating to, or otherwise regarding the Program Review, in a series of initial responses (dated December 29, 2004; February 18, 2005, February 28, 2005, April 8, 2005, and May 3, 2005); and a final determination dated October 31, 2005. See October 31, 2005 Final Decision on FOIA Appeal. The Department produced to you in whole or in part some 5437 pages of records responsive to your FOIA request; and, as discussed below, of the records not produced to you under FOIA, only 165 pages, or portions thereof, are not excluded from your demand under the subpoena.

[3] Per the instructions in your subpoena, the following categories of records or portions of records are deemed not to be within the scope of the subpoena: (1) records or portions of records previously produced pursuant to FOIA; (2) records or portions of records identifying confidential sources and/or otherwise implicating personal privacy interests (previously denied pursuant to 5 U.S.C. §§ 552(b)(6) and/or (7)(C) (FOIA Exemptions 6 and/or 7(C)); and (3) records or portions of records protected by the attorney work product and/or attorney-client privileges (previously denied pursuant to 5 U.S.C. §§ 552(b)(5) (FOIA Exemption 5). Please note additionally that all of the documents listed at ¶¶ III(3)(a)-(i) of Exhibit A to your subpoena fall within one or more of the categories excluded from your demand in the instructions at ¶¶ II(A)-(C) of Exhibit A. See also October 31, 2005 Final Determination on FOIA Appeal.

the program review, communications concerning the processing of FOIA requests related to the Program Review, and miscellaneous other information that is personal in nature or otherwise unrelated to the Program Review. This information was previously denied in whole or in part as "nonresponsive" and/or pursuant to 5 U.S.C. § 552(b)(2) (FOIA Exemption 2). Accordingly, as the Department has previously responded to all aspects of your demand for production of documents under the FOIA, 34 C.F.R. Part 8 does not require us to reprocess your request.

It would be most efficient, should you have questions regarding this letter or wish to discuss this matter further, to direct your inquiries to Joanna Dailey, Office of the General Counsel, U.S. Department of Education at (202) 401-6599. If necessary, I can be reached at (202) 305-1334.

Very truly yours,

Kenneth Wainstein
U.S. Attorney

By: _____

Heather Graham-Oliver
Assistant United States Attorney

cc: Joanna Dailey

**Exhibit No. 8**
**IN RE APOLLO GROUP, INC**
**CIVIL NO. 06-MC-0558 (CKK)**



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE GENERAL COUNSEL

July 13, 2006

Via U.S. Mail and
Facsimile – (949) 451-4220

Kristopher P. Diulio, Esq.
Gibson Dunn and Crutcher LLP
4 Park Plaza
Suite 1400
Irvine, CA  92614

   Re: Amended Subpoena (July 3, 2006)
     In Re: Apollo Securities Litigation
     United States District Court (D. Ariz.)
     Case No: 04-2147-PHX-JAT

Dear Mr. Diulio:

I am responding to your amended subpoena for documents, dated July 3, 2006 and
received by this Office and the Department's custodian of records on July 5, 2006. The
referenced subpoena purports to compel the production on July 19, 2006 in connection
with the above-referenced lawsuit, of certain Department records related to an August
2003 program review of the University of Phoenix, a subsidiary of your client, Apollo
Group, Inc. (Apollo).

Please be advised that neither the custodian of the records requested nor any other officer,
agent, or employee of the Department is authorized to produce records pursuant to your
subpoena, and that the Department objects to and therefore intends respectfully to decline
to comply with the demand stated in your subpoena, for the following reasons:

The Department is not a party to this litigation, which we understand to be a class action
brought by shareholders making securities claims against Apollo. As Assistant United
States Attorney Heather Graham-Oliver advised your colleague Jared M. Toffer, Esq., in
her letter dated June 29, 2006, demands made on Department officers, agents or
employees for the production of records in a legal proceeding to which the Department is
not a party are subject to the requirements of 34 C.F.R. Part 8. The referenced regulation
was promulgated to minimize the disruption of the Department's business that would be
caused by compliance with subpoenas or other demands for testimony, to maintain
control over Department records, and otherwise to protect the interests of the United
States.

Kristopher P. Diulio, Esq.
Page 2.

The regulation prohibits Department officers, agents and employees from, inter alia, producing Department records in such matters without prior written authorization from the Secretary of Education or her designee, and describes criteria for such authorization. 34 C.F.R. § 8.5. Specifically, the Secretary may allow the production of Department records only if she determines that the demand satisfies the requirements of 34 C.F.R. § 8.3 and that disclosure –

> (1) Would be appropriate under the rules of procedure governing the matter in which the demand arises and other applicable laws, rules, and regulations; and

> (2) Would not be contrary to an interest of the United States, which includes furthering a public interest of the Department and protecting the human and financial resources of the United States.

34 C.F.R § 8.5(c).

A review of your demand under the standards in 34 C.F.R. § 8.5 makes clear that authorizing production of the documents sought would be contrary to the interests of the United States. Your client has previously sought access to all of the records responsive to your subpoena under the FOIA, and the Department has produced to you all responsive records that are not exempt from public disclosure under that statute.[1] Moreover, your subpoena specifically excludes a number of categories of records or information addressed in your FOIA request. As noted in my June 29, 2006 letter to Mr. Toffer, our analysis of Exhibit A to your subpoena[2] vis-à-vis all records assembled in processing your client's FOIA request has identified only 165 pages of records, or portions thereof, as responsive to your subpoena.[3] These records comprise internal materials such as

---

[1] The Department processed your FOIA request dated October 25, 2004 seeking access to all underlying work papers associated with, relating to, or otherwise regarding the Program Review, in a series of initial responses (dated December 29, 2004; February 18, 2005, February 28, 2005, April 8, 2005, and May 3, 2005); and a final determination dated October 31, 2005. See October 31, 2005 Final Decision on FOIA Appeal. The Department produced to you in whole or in part some 5437 pages of records responsive to your FOIA request; and, as discussed below, of the records not produced to you under FOIA, only 165 pages, or portions thereof, are not excluded from your demand under the subpoena.

[2] Your June 5 and July 3 subpoenas seek the production of identical documents. See June 5 subpoena at Exhibit A, and July 3, 2006 subpoena at Exhibit A.

[3] Per the instructions in your subpoena, the following categories of records or portions of records are deemed not to be within the scope of the subpoena: (1) records or portions of records previously produced pursuant to FOIA; (2) records or portions of records identifying confidential sources and/or otherwise implicating personal privacy interests (previously denied pursuant to 5 U.S.C. §§ 552(b)(6) and/or (7)(C) (FOIA Exemptions 6 and/or 7(C)); and (3) records or portions of records protected by the attorney work product and/or attorney-client privileges (previously denied pursuant to 5 U.S.C. §§ 552(b)(5) (FOIA Exemption 5). Please note additionally that all of the documents listed at ¶¶ III(3)(a)-(i) of Exhibit A to

Kristopher P. Diulio, Esq.
Page 3.

correspondence tracking sheets, DUNS numbers, and documents concerning staff travel arrangements and itineraries relative to the Program Review, communications concerning the processing of FOIA requests related to the Program Review, and miscellaneous other information that is personal in nature or otherwise unrelated to the Program Review, previously denied in whole or in part as "nonresponsive" and/or pursuant to 5 U.S.C. § 552(b)(2) (FOIA Exemption 2).[4] Allowing the production in response to your subpoena of documents previously determined to be exempt from public disclosure under FOIA would circumvent the statutory scheme created by the Congress when it enacted the FOIA for protecting privileged and otherwise sensitive government records, and would result in unnecessary duplication of the work the Department has already performed, contrary to the Department's interest in protecting the human and financial resources of the United States.

While the Department considers a demand for records that does not comport with the requirements of 34 C.F.R. Part 8 to be a request for access to Department records made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (see 34 C.F.R. § 8.5(a)(2)), it is our position, inasmuch as the Department has previously responded to all aspects of your demand for production of documents, that 34 C.F.R. Part 8 does not require us to reprocess your subpoena as a request made under FOIA.

Should you have questions regarding this letter or wish to discuss this matter further, I can be reached at (202) 401-6599.

Sincerely,

Joanna Dailey
General Attorney
Division of Business and
Administrative Law

---

your subpoena fall within one or more of the categories excluded from your demand in the instructions at ¶ II(A)-(C) of Exhibit A.  See also October 31, 2005 Final Determination on FOIA Appeal.
    I note that your client's June 15, 2005 FOIA appeal did not challenge any aspect of the Department's initial FOIA determination as it pertained to the 165 pages identified as responsive to your subpoena and previously denied in whole or in part under FOIA.  See June 15, 2005 FOIA Appeal from Douglas R. Cox, Esq.