# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APOLLO GROUP, INC. SECURITIES LITIGATION | ) ) ) ) |
| | )     **06-MC-0558 (CKK)** |
| | ) ) ) |
| **This Document Relates To: Subpoena Action** **(D. Ariz., Case No. CV-04-2147-PHX-JAT)** | ) ) ) |

### Respondent's Opposition to Petitioner's Motion to Strike the Declaration Of Jennifer L. Woodward and Portions Of the Declaration Of Kent D. Talbert

Respondent, the United States Department of the Education (DOE) opposes the Petitioner's[1] motion to strike the Declaration of Jennifer L. Woodward (Woodward Decl. II) and portions of the Declaration of Kent D. Talbert (Talbert Decl). On or about January 26, 2007, the Petitioner moved to strike the Declaration of Jennifer L. Woodward arguing that because Apollo was blocked, in a January 26, 2007, deposition from questioning Ms. Woodward's former superior, Brian Jones, about statements made by Ms. Woodward in a prior-but similar-affidavit (the Woodward I affidavit), that the Woodward II affidavit [filed in this proceeding] should be stricken.[2] This argument is incredulous. Petitioner also argues that portions of declarant Kent

---

[1] Petitioner, the Apollo Group (Apollo), Inc., brought a subpoena matter in this Court seeking to compel a plethora of information from the DOE to use in an underlying matter filed in the U.S. District Court for the District of Arizona. In support of its Opposition to Petitioner's Motion to Compel and its Cross-Motion to Quash, Respondent filed the Declarations of Jennifer Woodward and Kent Talbert. Petitioner now seeks to quash the entire Declaration of Jennifer Woodward [which is also referred to as Woodward Decl., II] and paragraphs 5, 8, 10-16 of the Declaration of Kent Talbert, the General Counsel of the DOE.

[2] Mr. Jones was subpoenaed to testify in the aforementioned underlying matter. Mr. Jones is the former General Counsel of the Department of Education and was asked various questions about his conversations with Apollo.

Talbert's Declaration should be stricken because: 1) paragraph 5 relies solely on the Woodward Decl., and 2) paragraphs 8, 10-16 are impermissible legal arguments. Petitioner's contentions are misdirected and contrary to the current status of the law.

## ARGUMENT

Generally, motions to strike, which are disfavored, are reserved for objectionable or scandalous arguments. Compare 5A C. Wright & A. Miller, Federal Practice and Procedure § 1380, at 647-49 (1990)(motions to strike under Fed. R. Civ. P. 12(f) "are viewed with disfavor and are infrequently granted"), with id. § 1382, at 714 ("disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type. . .."); see e.g., Williams v. IRS, 745 F.2d 702, 705 n. 3 (D.C. Cir. 1984); Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty, Ltd., 647 F.2d 200, 201 (D.C. Cir. 1981).

Not only are they disfavored but they are applicable to pleadings and certainly not Declarations that were filed in good faith and based upon first hand knowledge. See International Longshoremen's Ass'n  v. Virginia Int'l Terminals, Inc., 904 F. Supp. 500, 504 (E.D. Va. 1995) (denying motion to strike affidavits as well as defendants' reply brief); Lowery v. Hoffman, 188 F.R.D. 651, 652-53 (M.D. Ala. 1999)(terms of Rule 12(f) make it clear that only material included in pleading may be subject of motion to strike, and briefs and memoranda may not be attacked by motion to strike).

Respondent has properly relied upon both Declarations in supporting its arguments in its memoranda and Petitioner has articulated no proper basis upon which to strike the them. Cf. Abrams v. Commc'ns Workers of Am., Civ. No. 87-2816(RCL), 1991 WL 247792, at 1 (D.D.C. Nov. 8, 1991) (noting that instead of a Rule 12 motion to strike a Declaration, the "proper course of action for plaintiffs is to argue that defendant is relying on irrelevant information when they

2

file their opposition to defendant's motion"). <u>See</u> <u>Law Office of Azita Mojarad v. Aguirre</u> 2006 WL 785415, 11 (D.D.C. 2006).

Although Federal Rule of Civil Procedure 12(f) allows the Court to strike from a "pleading" any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter in order to avoid the time, effort, and expense necessary to litigate spurious issues, Rule 7(a) clarifies that a "pleading" encompasses a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, or third-party answer. <u>See</u> Fed.R.Civ.P. 12(f); Fed. R. Civ. P. 7(a).   That is clearly not the case here.  As such, the petitioner's motion to strike should be denied.  <u>See</u> <u>Law Office of Azita Mojarad v. Aguirre</u> 2006 WL 785415, 9 (D.D.C. 2006), citing ( <u>Aftergood v. CIA</u>, 355 F.Supp.2d 557, 564-65 (D.D.C.2005) ( Rule 12 cannot be used to strike a Declaration); <u>Transam. Leasing, Inc. v. La Republica de Venezuela</u>, 21 F.Supp.2d 47, 55-56 (D.D.C.1998) (stating that Declarations "are not pleadings subject to a motion to strike pursuant to Rule 12(f)"); <u>see also</u> <u>Pilgrim v. Trustees of Tufts College</u>, 118 F.3d 864, 868 (1st Cir.1997) (noting that Rule 12(f) has "no applicability" to affidavits)).  In general, affidavits are to be accorded a presumption of good faith, which cannot be rebutted by pure speculation.  See e.g. <u>Safecard Services, Inc. v. S.E.C.</u>, 926 F.2d 1197 (1991).

Further, mere inconsistency and contradiction is insufficient to support a motion to strike a document from the record, particularly where the document sought to be stricken is a sworn Declaration signed under penalty of perjury. <u>Lohrenz v. Donnelly</u>, 223 F.Supp.2d 25, 39 (D.D.C. 2002).

Ms. Woodward's Declaration submitted in support of Respondent's memoranda is made from first hand knowledge.  She speaks <u>inter</u> <u>alia</u> of the history of the Apollo program review report, i.e., how the program review report was initiated as well as the procedural process that

3

follows the issuance of such a report.  <u>See</u> Woodward Declaration I, ¶¶ 5-10, attached hereto as

Exhibit 1.  The rationale for requesting the exclusion of Ms. Woodward's Declaration is not

within established precedential grounds for striking pleadings from the record.  Ms. Woodward's

Declaration is neither redundant, immaterial, impertinent, nor scandalous.

Petitioner argues that paragraph 5 of Mr. Talbert's Declaration should be deleted.

Paragraph 5 states:

> "This declaration supplements and hereby incorporates the
> declaration of Jennifer Woodward, dated January 19, 2007
> (Woodward Declaration), which contains information concerning
> the Department's investigation and program review of the
> University, together with a description of the resulting Report and
> settlement with the University."

This again is not the type of information that is subject to being stricken.  Petitioner also

maintains that paragraphs 8 and *10 - 18* should be stricken.  However, Kent Talbert's

Declaration has *16* paragraphs, not *18*.  <u>See</u> attached Declaration of Kent Talbert.  Paragraphs 8,

10-16 should not be stricken.  Kent Talbert is the General Counsel for the DOE and as such has

first hand knowledge of the Freedom Of Information Act, 5 U.S.C. § 552(b), as well as

Exemption 5 in particular.  <u>See</u> Talbert Decl. ¶¶ 1, 3.  As the General Counsel, he has "been

delegated the authority by the Secretary of the Department <u>to assert the deliberative process</u>

<u>privilege</u> with respect to documents and statements created, maintained or related to those

Departmental functions for which [he] hold[s] delegated authority."  <u>Id.</u>, at ¶ 2.  He is the official

that, in this case, has the authority to assert Exemption 5 and the reasons behind it.  <u>See</u> Talbert

Decl. ¶¶ 10 - 16.

Thus, Petitioner's reasoning for striking these Declarations, in whole or part, is flawed in

addition to the fact that the Declarations are not pleadings under the meaning of Rule 7.

CONCLUSION

For all of the foregoing reasons, the respondent respectfully requests that the petitioner's

motion to strike be denied.


Respectfully submitted,


_____

JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____

RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW
Washington, DC 20530
Tel: (202) 305-1334

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE APOLLO GROUP, INC.
SECURITIES LITIGATION,

    Civil Action No. _____ . _____|

## DECLARATION OF JENNIFER L. WOODWARD

I,    Jennifer L. Woodward, declare as follows:

1.    I am an attorney with the United States Department of Education's (Department's) Office of the General Counsel (OGC) in the Postsecondary Education Division. I have been an attorney in that division since September 1992.

2.    The statements contained in this declaration are based upon my personal knowledge, and conclusions and determinations reached and made in accordance therewith.

3.    Through my position as an attorney with the Department, I have personal knowledge concerning the Department's 2003-04 program review of the University of Phoenix (University), owned by Defendant Apollo Group, Inc. (Apollo). Due to the nature of my official duties, I am familiar with the procedures followed by the Department when performing an institutional program review.

4.    The purpose of this declaration is to provide the Court and Apollo with facts leading to the Department's decision to withhold documents concerning the program review that had been requested by Apollo under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), and subsequent subpoenas. Such documents were withheld pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5) (deliberative process privilege, attorney work product privilege, and attorney

1

client communications privilege) and FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C) (identities of third party witnesses in the law enforcement records of the program review).

5.      Program review reports typically follow a site visit to a school during which Institutional Review Specialists perform a program review of a school's participation in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq. See generally 20 U.S.C. § 1099c-1; 34 C.F.R. § 668.112(b).   The report sets forth the findings made by the Institutional Review Specialists and usually requests further information from the school in order to make a final determination as to whether the school owes monetary liabilities and/or fines as a result of the findings.

6.      Following the issuance of the report, the next step in the program review process involves an opportunity for the school to provide the Department with information responding to the report. The Department then issues a Final Program Review Determination letter, which sets forth any liabilities to the Department for misspent program funds and provides the school an opportunity to appeal the determination.

7.      Sometimes program reviews result in findings that warrant a fine or other penal sanction in addition to or in lieu of repayment of misspent program funds. One type of finding which can result in a fine rather than imposition of compensatory liabilities is payment by the school of improper incentives for recruitment of students. See 34 C.F.R. § 668.14(b)(22).   If the Department proposes to impose a fine, a third document is generally issued, called a fine notice.

8.      The University program review was unusual in that its genesis was a qui tam False Claims Act complaint. While the government on May 6, 2003 declined to intervene in the qui tam case, the Department advised the Department of Justice that the Department had

2

substantial evidence that the University had violated section 487(a)(20) of the Higher Education Act; and that, in view of the declination decision, the Department was considering what administrative action to take against the University on account of the violation.

9.      In August 2003, the Department conducted an on-site program review at the University. The purpose of the review was to substantiate the allegations, and, if appropriate, quantify the extent of the violation, in order to set an appropriate fine amount, which the Department anticipated the University would contest.

10.     Thus, the entire program review process was conducted with an eye towards the administrative litigation the Department anticipated would follow (and that, indeed, would have followed in the absence of settlement).

11.     The team that performed the program review consisted of four Institutional Review Specialists from the Department's Federal Student Aid (FSA) office, who received legal assistance from two attorneys from OGC, including myself. During the program review, the investigative team interviewed over 90 witnesses and collected substantial evidence to support the findings in the program review report (Report). Because many of the witnesses interviewed by the team still worked for the University, the team assured the witnesses that all efforts would be made by the Department to keep the personal identities of the witnesses confidential.

12.     The team collaborated to complete the Report. Together, the attorneys and Institutional Review Specialists collected supporting evidence, compiled witness interview statements, and communicated virtually on a daily basis during the conduct of the program review and the subsequent writing of the Report.

13.     Prior to the issuance of the Report, the team shared many drafts and presented the analysis to their superiors and other Department officials before final clearance was given by the Department to issue the Report.

14.     On February 5, 2004, the Department issued the Report to the University identifying a violation of the Higher Education Act's prohibition on incentive compensation to recruiters, 20 U.S.C. § 1094(a)(20).

15.     From March 2004 through August 2004, the University responded orally and in writing to findings in the Report. As a result, many deliberations and communications occurred within the Department to discuss the University's response, and whether, and on what terms, to settle with the University.

16.     On September 7, 2004, prior to the issuance of a Final Program Review Determination, and a fine notice, the University paid the Department $9.8 million to settle the case.

17.     Beginning in October 2004, Apollo filed the first of a series of FOIA requests, followed by subpoenas, seeking information about the program review and the settlement. I reviewed all of the documents in possession of OGC and FSA that were located in response to the FOIA requests and relevant to the program review process and resulting settlement. I considered whether each document was exempt from production under the FOIA statute, including Exemption 5, pertaining to privileges, and other exemptions under 5 U.S.C. § 552.

18.     During the course of my review of the responsive documents, I observed that a significant number of the documents reflected communications between other OGC attorneys, program clients, third party informants, and me, for the purpose of providing legal advice. On this basis, I designated the documents in question as exempt from disclosure based on the

attorney-client privilege. These documents are among the documents Apollo seeks in its motion to compel.

19.    During my review of the responsive documents, I observed that many of the documents were prepared in anticipation of litigation by Department attorneys and program staff. On this basis, I designated these documents as exempt from disclosure based on the work product privilege. These documents are among the documents Apollo seeks in its motion to compel.

20.    During my review of the responsive documents, I observed that many of the documents were deliberative and pre-decisional. To the best of my knowledge, Apollo had not, and has not, asserted any need for these documents outweighing the importance of protecting the values covered by that privilege. The documents in question included communications among lawyers for the qui tam relators, OGC attorneys, Department of Justice attorneys, third party informants, and/or program clients. On the foregoing basis, I designated these documents as exempt from disclosure based on the deliberative process privilege. These documents constitute the remainder of the documents Apollo seeks in its motion to compel.

21.    The program review, program review report, and the settlement negotiation process consisted of a sequence of legal and policy judgments (i.e., how to investigate the allegations and prosecute the alleged violations, whether and how to issue the Report and the nature of its findings, and whether and on what terms to settle the case). The unusual manner in which the Department became aware of the alleged violations (through unsolicited information submitted by qui tam relators rather than the more customary Department-initiated review of student and school records), the potentially enormous economic and policy implications of the case, the complex nature of the issues involved, the evidentiary analysis required to prove the

violation, and the extraordinary cost of the investigation, all represented highly unprecedented challenges requiring Department lawyers and officials to exercise legal and policy judgment <u>ab initio</u> and at every step of the process.

22.    The integrity of the program review process requires that the documents requested by Apollo remain protected from disclosure under the deliberative process, attorney work product, and/or attorney client privileges.  The documents are reflective of the confidential deliberative processes and attorney work product of the investigative team that produced the Department's decisions regarding whether, and in what form, to issue the Report, and whether, and on what terms to settle the case with the University.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 19th day of January 2007.

Jennifer L. Woodward
General Attorney
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE APOLLO GROUP, INC.      |
SECURITIES LITIGATION,       |
                             |
                             |      Civil Action No. _____
                             |

**DECLARATION OF KENT D. TALBERT**

I,     Kent D. Talbert, declare as follows:

1.     I am the General Counsel of the United States Department of Education (Department), and I have been employed at the Department since August 20, 2001. Prior to becoming the General Counsel, I was the Deputy General Counsel for Departmental and Legislative Service from August 2001 through May 2006. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") implementation, procedures, appeals and litigation for the Office of the General Counsel. I have been licensed to practice law in the state of South Carolina since 1985.

2.     In my official capacity as General Counsel of the Department, I supervise approximately 100 employees who staff a total of seven (7) legal divisions whose collective mission is to provide legal assistance to the Secretary concerning the programs and policies of the Department. Under 20 U.S.C. § 3472, I, as General Counsel, have been delegated the authority by the Secretary of the Department to assert the deliberative process privilege with respect to documents and statements created, maintained or related to those Departmental

1

functions for which I hold delegated authority. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.    Due to the nature of my official duties, I am familiar with the procedures followed by the Department in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. §552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am aware, through direct involvement and through information provided to me by subordinates, of the treatment that has been afforded the FOIA requests of Defendant Apollo Group Inc. ("Apollo"), to the Department for records concerning the Department's program review investigation, program review report ("Report") of the University of Phoenix ("University"), a subsidiary of Apollo, and the resulting settlement between the University and the Department.

4.    The purpose of this declaration is to provide the Court and Apollo with the Department's justification of its decisions to withhold information, otherwise responsive to Apollo's FOIA request, pursuant to FOIA Exemption 5, deliberative process privilege.

5.    This declaration supplements and hereby incorporates the declaration of Jennifer Woodward, dated January 19, 2007 ("Woodward Declaration"), which contains information concerning the Department's investigation and program review of the University, together with a description of the resulting Report and settlement with the University.

2

## DESCRIPTION OF THE RECORDS

6.    According to the December 15, 2006 declaration of counsel for Apollo, Apollo's

July 3, 2006 Notice of Third Party Subpoena includes a request for three categories of

documents:

> (1) Unredacted versions of any redacted documents the DOE produced pursuant
> to the FOIA request;
>
> (2)  The 4,083 pages of documents that the DOE withheld from its FOIA
> production; and
>
> (3)  Various documents pertaining to the Program Review, the Report, or the <u>qui</u>
> <u>tam</u> action, to the extent they are not covered by categories 1 and 2.

7.    The documents withheld based on the deliberative process privilege consist of

materials that are both predecisional and deliberative and include:

> a.   <u>Records Related to Deliberations, Legal Advice, and Legal Preparation During</u>
>
> <u>the  Investigation and Antecedent to the Issuance of the Report on February 5,</u>
>
> <u>2004</u>:
>
> > i.   Communications and notes among members of the investigatory team
> >
> > (<u>i.e.</u>, Federal Student Aid program staff and Office of General Counsel
> >
> > lawyers)) concerning investigation strategy (<u>e.g.</u>, questions as who to
> >
> > interview, when to interview, order and location of interviews, what
> >
> > kinds of questions to ask, and other general strategy questions);
> >
> > ii.  Investigatory Team communications and notes concerning witness
> >
> > statements (<u>i.e.</u>, compilations of documents provided by witnesses,

3

summaries of witness testimony, and other documents and notes
related to the witness statements);

iii. Drafts of (1) interview questionnaires, (2) the Report, and (3) program
and legal advice memoranda concerning issuance of the Report;

iv. Communications between Department lawyers and senior officers
regarding the analysis in the Report (e.g., discussions and legal advice
regarding what was a violation of the Higher Education Act and the
Department's regulations; what information justified a finding of
violation; and whether the Department, as a policy matter, should seek
to enforce the regulation at this time and in this manner); and

v. Communications from attorneys for the qui tam relators sharing advice
and information from informants with Department lawyers.

b. Records Related to Deliberations, Legal Advice, and Legal Preparation
Antecedent to the September 7, 2004 Settlement Agreement between the
Department and the University:

i. Analysis created by FSA Institutional Review Specialist, Donna
Wittman, using data furnished by the University to identify
percentages and frequencies of violations of the Higher Education Act,
considered by the Department in determining the number of violations
that had occurred, the seriousness of said violations (moderate,
egregious, etc.), and in projecting the dollar amount of fines correlating
to the number of violations for the purpose of calculating the amount

4

of the final settlement;

ii.  Communications and notes among FSA staff and Department lawyers

regarding information submitted by the University to rebut the findings

in the Report, in consultations regarding the policy decisions whether

to engage in settlement negotiations, and on what terms to settle;

iii. Drafts of charts and presentations regarding the Department's

calculations of the number of violations, potential amounts of any

fines, and other supporting evidence of violations, prepared and edited

by FSA staff and Department lawyers; and

iv.  Drafts of the settlement agreement.

8.  Many of the above documents are also protected by the attorney-client and work

product privileges, as I understand the Department to have consistently maintained and preserved

such privileges in response to all FOIA requests and subpoenas.  Nothing in this Declaration

waives either of those privileges.

9.  The above documents withheld are voluminous, numbering over 4000 pages.


**DELIBERATIVE PROCESS PRIVILEGE**


10.  Exemption 5 of the FOIA, 5 U.S.C. §552(b)(5), was created to incorporate the

same common law privilege of deliberative process utilized in the civil discovery context.  Fed.

Open Mkt. Comm. v. Merrill, 443 U.S. 340, 354 (1979); Martin v. Office of Special Counsel,

819 F. 2d 1181, 1184 (D.C. Cir. 1987).  The exemption protects from mandatory disclosure inter-

agency or intra-agency records that would not be available by law to a party other than an agency in litigation with the Department.

11.     The deliberative process privilege is designed to protect documents and communications which reflect the decision-making processes of government agencies where exposure of that process would result in harm and discourage open and frank discussions on matters of policy between and among decision makers.

12.     Without waiving the other privileges to which these documents are entitled, I assert the deliberative process privilege with respect to all documents related to this litigation that are currently withheld from Apollo on that basis in the course of responding to Apollo's FOIA requests and subpoenas.

13.     Since the program review of the University came to the Department's attention through a qui tam False Claims Act complaint, the investigatory team was lead by Jennifer Woodward and Russell Wolff in the Office of the General Counsel (OGC).  While it is true that, on May 6, 2003, the government declined to intervene in the qui tam case, the Department advised the Department of Justice that the Department had substantial evidence that the University had violated section 487(a)(20) of the Higher Education Act; and that, in view of the declination decision, the Department was considering what administrative action to take against the University on account of the violations.  Therefore, OGC was involved in the program review from its inception and the right to assert the deliberative process privilege for the documents and communications related to the Report and resulting settlement is within the authority of this office.

14.     In asserting this exemption, I note that the predecisional and deliberative nature

6

of the documents has been carefully reviewed and examined by attorneys in the Office of the

General Counsel. Specifically, the documents are reflective of the confidential deliberative

processes that produced the Government's decisions regarding whether and in what form to issue

the Report, and whether and on what terms to settle the case with the University.

15.     In addition, in withholding each document, the Department's interest and the

interest of the public in protecting the decision-making process have been balanced against

Apollo's need for the information requested.  In making this analysis, the specific information

withheld has been determined to reveal the internal decision making processes of the Department

throughout the program review and settlement negotiations.  Apollo has not explained any need

for these documents that outweighs the Department's interest in nondisclosure.  Indeed, while

Apollo has asserted it needs these documents to discredit the Report and to cross-examine

Department witnesses, I note that Apollo chose to settle the program review with the

Department, thereby foregoing its opportunity to pursue its criticisms of the Report to judgment.

 In addition, Apollo has not demonstrated that any Department witnesses will appear at trial,

negating Apollo's claims of need for these documents for use in cross-examination.  If such an

appearance were in the offing, the employee would need to obtain permission from the

Department to appear.  34 C.F.R. Part 8.  The Department will not make these witnesses

available to testify at trial or deposition and will contest any effort by either party to compel any

appearance by these witnesses.

16.     Due to the special character of the documents at issue, information has been

withheld, either: (1) because the selection and presentation of such information reflects the

mental processes of Department analysts and attorneys, and/or is inextricably intertwined with

the Department's deliberations (e.g., Department analysis of the evidence and drafts of the

Report and various related documents); or (2) because such information is contained in

documents constituting attorney work-product or reflecting facts communicated in confidence by

clients to their attorneys, as to which neither FOIA nor common law privileges require

segregation and release (e.g., witness statements).


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information and belief.

Executed this 19th day of January, 2007.

Kent D. Talbert
General Counsel
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202